IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK J. BRANDNER, M.D. | | |
| Plaintiff, | | |
| v. | | Case No. 10-cv-8161 |
| AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS and AMERICAN ASSOCIATION OF ORTHOPAEDIC SURGEONS, | | Hon. Dist. J. Ronald Guzman |
| Defendants. | | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants American Academy of Orthopaedic Surgeons and American Association of Orthopaedic Surgeons (collectively, the "Association" or the "AAOS"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, respectfully submit the following Memorandum of Law in support of their Motion for Summary Judgment.

## I.    INTRODUCTION

This lawsuit arises out of a dispute between a voluntary, not-for-profit professional association and one of its members.  In October 2008, Dr. Kipling P. Sharpe, a member of the AAOS, instituted an internal grievance against a fellow member, Plaintiff Patrick J. Brandner, M.D., alleging that Dr. Brandner violated the AAOS's Standards of Professionalism on Orthopaedic Expert Witness Testimony (the "Orthopaedic Expert Witness SOPs").  At the conclusion of the grievance process, the AAOS Board of Directors found that Dr. Brandner violated certain of the Orthopaedic Expert Witness SOPs and ██████████ ████████████.  Seeking to revisit the merits of the AAOS's decision, Plaintiff then

filed this diversity lawsuit seeking, among other things, to permanently enjoin the AAOS from ███████████████████████ or taking any other action regarding the internal grievance.

Plaintiff asserts that the AAOS failed to afford him due process, violated its Bylaws and Grievance Procedures, and was influenced by bias and bad faith in its handling of the grievance. The record, however, provides scant support for these bald assertions. Instead, the facts demonstrate that the AAOS afforded Dr. Brandner with far more than rudimentary due process and, further, that the AAOS substantially complied with its Bylaws and Grievance Procedures. At best, Plaintiff can point to trivial procedural violations that had absolutely no impact on the AAOS's ultimate finding that Dr. Brandner violated the Orthopaedic Expert Witness SOPs.

Moreover, Plaintiff's allegation that the AAOS ignored the allegations leveled by Dr. Sharpe and repeatedly recast the grievance finds zero support in the record. Dr. Brandner's expert testimony as to the standard of care for informed consent in connection with a tibial osteotomy was the central issue scrutinized at each and every level of the grievance proceeding. That the AAOS Judiciary Committee's final finding on that issue did not literally parrot the reasoning set forth in Dr. Sharpe's initial grievance letter cannot detract from an unalterable truth – since the day he received the grievance, Plaintiff has always been on notice of the precise charges against him, and he was given more than ample opportunity to defend against such charges. The fact that he was ultimately unsuccessful does not, as he seems to suggest, demonstrate that the grievance process was rigged against him.

Finally, Plaintiff's allegations that the AAOS uses its Professional Conduct Program (the "Program") and the Orthopaedic Expert SOPs as a guise to "dissuade its members from testifying in medical malpractice lawsuits filed against other AAOS members" and to narrow "the pool of physicians available to testify as experts against its members" are completely devoid

of any factual support. Plaintiff's allegations in this regard ring particularly hollow in light of the fact that he was given an opportunity to and did, in fact, vote on whether to adopt the Program and the Orthopaedic Expert SOPs in 2005. Of those Fellows voting, 98% voted in support of the creation of the Program and the adoption of the Orthopaedic Expert SOPs. (Defendants' Statement of Undisputed Material Facts ("SOF") at ¶ 12.)

In sum, Plaintiff's claims are an attempt to disguise his desire for a different result as an alleged due process violation, bylaws violation, and/or evidence of bad faith or bias on the part of the AAOS. As shall be demonstrated below and in the supporting materials, the facts do not support Dr. Brandner's allegations. That he disagrees with the ultimate findings of the AAOS regarding his testimony in the underlying malpractice action does not provide a basis for judicial intervention in the internal affairs of a private association. Given the absence of any issue of material fact, the AAOS respectfully submits that it is entitled to judgment as a matter of law.

### III. FACTUAL BACKGROUND

#### A. The Underlying Medical Malpractice Action.

The grievance that Dr. Sharpe instituted against Plaintiff with the AAOS arose out of expert testimony that Plaintiff gave in a malpractice action in which Dr. Sharpe was a named defendant. The malpractice action revolved around a tibial osteotomy that Dr. Sharpe performed on the underlying plaintiff in June 2002. (SOF at ¶¶ 18-22.) Following surgery, the patient developed "foot drop" due to a peroneal nerve injury. (SOF at ¶ 22.) During the course of the underlying malpractice action, the patient and his mother were both deposed in January 2004. In these initial depositions, both the patient and his mother testified that prior to surgery, Dr. Sharpe had identified foot drop due to nerve injury as a possible surgical complication. (SOF at ¶¶ 24-25.) In May 2004, Dr. Sharpe confirmed their account at his own deposition and testified that he

specifically discussed the risk of peroneal nerve injury with the patient and his mother. (SOF at ¶ 26.) Dr. Sharpe's medical notes from his pre-operative visits with the patient and his mother in April 2002 and June 2002 also documented two separate discussions of nerve injury complications. (SOF at ¶ 22.)

The lawyer for Dr. Sharpe's patient subsequently consulted with Plaintiff and Dr. Sharpe was added as a defendant in the underlying malpractice action. Notwithstanding the January 2004 deposition testimony of the patient and his mother, and Dr. Sharpe's May 2004 deposition testimony, Plaintiff concluded that Dr. Sharpe had not met the standard of care because he failed to specifically advise the patient of the risk of injury to the peroneal nerve. (SOF at ¶¶ 23, 28.)

Subsequent to Plaintiff's engagement as an expert on behalf of the patient, the patient and his mother sat for a second round of depositions. In those depositions, the patient and his mother both recanted their prior testimony and stated that they never had a pre-operative discussion with Dr. Sharpe in which he disclosed the risk of post-surgical foot drop. (SOF at ¶ 27.) At his own August 2005 deposition, Plaintiff testified that he had reviewed both sets of competing depositions and concluded that Dr. Sharpe did not meet the standard of care for informed consent. (SOF at ¶ 23.)

The matter was tried in April 2008. The patient and his mother stuck to their revised account of the pre-operative discussions. (SOF at ¶ 27.) In his trial testimony, Plaintiff first claimed that he had no opinion on the "he-said, she-said" dispute between Dr. Sharpe and his patient on whether a discussion of peroneal nerve injury had occurred. When he was later cross-examined with the mother's earlier, January 2004 deposition testimony, Plaintiff argued to the jury that in her January 2004 deposition testimony, the patient's mother had meant to refer to

post-surgical, rather than pre-operative discussions with Dr. Sharpe. (SOF at ¶ 28.) The jury returned a verdict in favor of Dr. Sharpe. (SOF at ¶ 29.)

**B.      Dr. Sharpe's AAOS Grievance Against Plaintiff.**

Upon the conclusion of the malpractice action, Dr. Sharpe exercised his right under the AAOS Bylaws and submitted a grievance against Plaintiff in which he alleged violations of the Orthopaedic Expert SOPs, Mandatory Standard Nos. 3, 4, 6, 7 and 8. (SOF at ¶ 30.) Following a two year administrative proceeding that entailed four separate hearings, the AAOS adjudged Dr. Brandner to have violated Mandatory Standard Nos. 3 and 4 of the Orthopaedic Expert SOPs. The AAOS rejected Dr. Sharpe's claim that Plaintiff had also violated Mandatory Standard Nos. 6, 7 and 8. (SOF at ¶¶ 51, 60, 69.) Distilled to their essence, Dr. Sharpe's allegations and the AAOS's subsequent findings with respect to Mandatory Standard Nos. 3 and 4 focused on one central issue: whether Dr. Brandner's opinion testimony that Dr. Sharpe had failed to meet the standard of care for obtaining informed consent in connection with a corrective tibial osteotomy was proper. (SOF at ¶¶ 53, 62 and 69.)

The facts demonstrate that the grievance process was fair and provided Dr. Brandner with a meaningful opportunity to defend against the charges brought by Dr. Sharpe, as evidenced by the following:

* Plaintiff was provided with a copy of Dr. Sharpe's grievance and supporting materials. (SOF at ¶¶ 34-35.)

* Plaintiff prepared and submitted a written response and other evidentiary materials for consideration by the COP Hearing Panel in advance of the initial *prima facie* determination. (SOF at ¶ 36.)

* Plaintiff appeared at the COP Hearing and made a thirty minute presentation in which he opposed Dr. Sharpe's grievance and presented the testimony of a fellow AAOS member. (SOF at ¶¶ 43-44.)

-5-

* Plaintiff appealed the COP Hearing Panel's Report and Recommendation to the Judiciary Committee with an appellate statement prepared by counsel and supported by additional deposition transcripts that Plaintiff had not submitted in advance of the COP Hearing. (SOF at ¶¶ 55-56.)

* Plaintiff's lawyer presented this new evidence at the Judiciary Committee hearing, which Dr. Sharpe agreed the Judiciary Committee should consider. (SOF at ¶ 57-58.)

* Plaintiff again appealed the report of the Judiciary Committee to the AAOS's Board of Directors, which held two further hearings in which Plaintiff took the opportunity to respond the charges levied against him. (SOF at ¶¶ 63-69.)

In sum, the facts demonstrate that the AAOS's findings were the product of a fair and comprehensive administrative review.

## II. ARGUMENT

### A. Applicable Legal Standards.

#### 1. Summary Judgment.

Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005). Factual disputes are material only if they might affect the disposition of the claims under applicable law. *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 610 (7th Cir. 2001). Summary judgment is "a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 846 (7th Cir. 1996).

#### 2. The Scope of Judicial Intervention in the Internal Affairs of a Private Association is Exceedingly Narrow.

Under Illinois law, private associations have great discretion when conducting their internal affairs, especially when the conduct relates to the interpretation and enforcement of the association's rules and regulations. *Austin v. Am. Assoc. Neurological Surgeons*, 120 F. Supp.

2d 1151, 1152-53 (N.D. Ill. 2000), *aff'd*, 253 F.3d 967 (7th Cir. 2001).[1] *See also Engel v. Walsh*, 101 N.E. 222, 223-24 (Ill. 1913); *Finn v. Beverly Country Club*, 683 N.E.2d 1191, 1193 (Ill. App. Ct. 1997); *Lee v. Snyder*, 673 N.E.2d 1136, 1139 (Ill. App. Ct. 1996); *Butler v. USA Volleyball*, 673 N.E.2d 1063, 1066 (Ill. App. Ct. 1996). Notably, courts applying Illinois law refuse to investigate the merits of an association's decision to expel a member, even if the association's decision is factually wrong. *Dannhausen v. Bus. Publ'ns Audit of Circulation, Inc.*, 797 F.2d 548, 551 (7th Cir. 1986).

Judicial intervention in the internal affairs of a voluntary association is only appropriate in those instances where: (1) the association's rules and proceedings failed to afford the member rudimentary due process; (2) the association violated its own constitution or bylaws; or (3) the association's action was motivated by prejudice, bias or bad faith. *Butler*, 673 N.E.2d at 1066; *Finn*, 683 N.E.2d at 1193; *Nat'l Assoc. of Sporting Goods Wholesalers, Inc. v. F.T.L. Mktg. Corp.*, 779 F.2d 1281, 1285 (7th Cir. 1985). Moreover, the Seventh Circuit Court of Appeals has recognized that courts "must refrain from interpreting the affairs of a private association absent a showing of economic necessity." *Nat'l Assoc. of Sporting Goods Wholesalers, Inc.*, 779 F.2d at 1285 (quoting *Treister v. Am. Acad. Of Orthopaedic Surgeons*, 396 N.E.2d 1225, 1232 (Ill. App. Ct. 1979).) The facts in this matter do not justify a departure from the general rule of judicial non-intervention in the internal affairs of a private association.

**B.    The Undisputed Material Facts Demonstrate that Dr. Brandner Cannot Establish Deprivation of Due Process.**

The Seventh Circuit has recognized that due process is a flexible concept that varies substantially depending on the nature of the proceedings and the alleged right involved. *Duby v. Am. Coll. Of Surgeons*, 468 F.2d 364, 368 (7th Cir. 1972). The essence of due process is the

---

[1] The AAOS Bylaws provide that questions regarding membership status are governed by the law of the State of Illinois. (SOF ¶¶ 1, 3.)

opportunity to be heard at a meaningful time and in a meaningful manner. *N. Ill. Home Builders Ass'n v. County of DuPage*, 649 N.E.2d 384, 395 (Ill. 1995). Voluntary associations are not required under Illinois law to conduct disciplinary proceedings in strict compliance with judicial standards of due process. *Van Daele v. Vinci*, 282 N.E.2d 728, 732 (Ill. 1972); *Butler*, 673 N.E.2d at 1066. Instead, a voluntary association must afford an accused member with those basic rights that will give the member an opportunity to defend himself against any charges made, including reasonable notice of the charges and the opportunity to be present at a hearing and confront his accuser. *Duby*, 468 F.2d at 369; *Butler*, 673 N.E.2d at 1067; *Virgin v. Am. Coll. of Surgeons*, 192 N.E.2d 414, 423 (Ill. App. Ct. 1963).

The district court's decision in *Austin* is particularly instructive on the issue of due process. *See Austin*, 120 F. Supp. 2d 1151 (N.D. Ill. 2000), *aff'd*, 253 F.3d 967 (7th Cir. 2001). In *Austin*, the plaintiff brought suit against a professional association of neurosurgeons after the association suspended his membership for violating its rules governing medical expert witness testimony. 253 F.3d at 968. The court entered summary judgment for the association and found that the grievance proceedings clearly satisfied the elements of due process. 120 F. Supp. 2d at 1154. The court noted that Dr. Austin "received written notice of the charges, with prior disclosure of all documents considered in the case." *Id.* The court further observed that Dr. Austin was allowed to present his argument before an association committee, cross-examine witnesses and appear before two levels of appeal while allowed representation by counsel at all stages of the grievance. *Id.* Based on these facts, the court concluded that Dr. Austin "received as much due process as anyone might hope for." *Id.*

Pursuant to the principles enumerated in *Austin*, the AAOS clearly afforded Dr. Brandner adequate due process in this matter. The AAOS provided Dr. Brandner with a copy of Dr.

Sharpe's grievance report, as well as copies of all documents Dr. Sharpe submitted to the AAOS. (SOF ¶¶ 34-35.) Dr. Brandner had the opportunity to submit a written response and evidentiary materials to the AAOS before the COP made its prima facie determination. He presented a thorough argument before the COP, where he called a witness to testify on his behalf and was given the right to confront and cross-examine Dr. Sharpe. (SOF ¶¶ 36-39, 43-44.) Additionally, Dr. Brandner exercised two levels of appeal, before the Judiciary Committee and the Board of Directors. (SOF ¶¶ 55-58, 60, 63-65, 67-69.) Dr. Brandner was represented by counsel at each stage of the appellate proceedings. (SOF ¶¶ 56, 58, 64, 68.) Much like the plaintiff in *Austin*, Dr. Brandner received "as much due process as anyone might hope for."

Dr. Brandner's attempt to concoct a due process violation through his allegations that the AAOS continually recast Dr. Sharpe's grievance finds no support in the record. Dr. Sharpe accused Dr. Brandner of violating Mandatory Standard Nos. 3 and 4 by testifying in the underlying malpractice action that Dr. Sharpe had fallen below the pre-operative standard of care in failing to discuss the risk of peroneal nerve injury. (SOF at ¶¶ 18-20, 30.) The AAOS's findings with respect to Mandatory Standard Nos. 3 and 4 were based on its determination that the record in the underlying malpractice action showed that Dr. Sharpe had discussed the risk of peroneal nerve injury with the patient and his mother prior to surgery. (SOF at ¶¶ 53, 62, 65 and 69.) Plaintiff has been on notice of this issue since the day he received notice of Dr. Sharpe's grievance and this issue has been the central focus at each stage of the grievance proceedings.

**C.     The Undisputed Material Facts Demonstrate that the AAOS Substantially Complied with its Bylaws and Grievance Procedures.**

When determining whether a voluntary association acted in accord with its bylaws and internal rules, substantial compliance with the association's bylaws and/or rules is generally deemed sufficient. *Hawkins v. Aid Assoc. for Lutherans*, 338 F.3d 801, 808 (7th Cir. 2003). "It

is assumed that the administrative decision makers will serve with fairness and integrity while performing their functions." *Adkins v. Lincoln Health Ctr.*, 129 Ill.2d 497, 511 (1989). The AAOS's Statement of Fact and the supporting Affidavit of Melissa A. Young provide a point-by-point refutation of each and every violation alleged in Plaintiff's Amended Complaint. (SOF at ___; Young Aff. at ___.) Even in those instances where the AAOS departed from the Grievance Procedures, such departures were trivial and had no impact on the AAOS's ultimate findings. As demonstrated below, and in the AAOS's supporting materials, the AAOS more than substantially complied with its Bylaws and Grievance Procedures.

### 1. The AAOS did not violate Sections VI(C) or VII(A)(5) of the Grievance Procedures.

Plaintiff alleges that, because Dr. Sharpe failed to submit copies of the June 2005 deposition testimony and June 2008 trial testimony of the patient and his mother, the COP Hearing Panel made its ruling without a complete evidentiary record. (Am. Compl. at ¶¶ 90, 93, 117.) Section VI(C) of the Grievance Procedures provides that "[e]ach party to a grievance is responsible for obtaining and providing all written material, such as transcripts and medical records, for consideration by the AAOS." (SOF at ¶ 47.) Pursuant to the plain language of this section, it is the responsibility of each party, rather than that of the AAOS, to provide written material for the COP Hearing Panel's review.

Plaintiff urges this court to construe Section VI(C) so as to require a grievant to produce "all" written material for consideration by the AAOS – regardless of whether it supports or undercuts the charges in the grievance. The AAOS grievance report however directs the grievant to attach complete copies of any documents he or she relies upon as evidence. (SOF at ¶ 46.) Accordingly, Dr. Sharpe satisfied his burden of production when he provided the materials he believed were necessary to support the allegations set forth in his grievance. It was Dr.

Brandner's responsibility, not that of the AAOS, or even Dr. Sharpe, to provide the COP Hearing Panel with the transcripts he believed were pertinent to his defense.

Plaintiff further contends that the AAOS violated Sections VI(C) and VII(A)(5) of the Grievance Procedures when the COP Hearing Panel only asked questions of Dr. Brandner, and when it specifically inquired as to why Dr. Brandner failed to submit copies of the transcripts from the patient and his mother that he claimed were missing. As stated above, Section VI(C) obligates each party to a grievance to obtain and provide written material for consideration by the AAOS. Thus, the COP Hearing Panel appropriately questioned Dr. Brandner on (a) what specific transcripts he believed were missing and (b) why he had failed to obtain the transcripts that he believed were necessary for his defense.[2]

Perhaps most importantly, the Judiciary Committee permitted Dr. Brandner to supplement the record on appeal with the later deposition and trial testimony from the patient and his mother. (SOF at ¶¶ 56-57.) The Judiciary Committee's Report and Recommendation gave due consideration to the later testimony, thereby eliminating any potential prejudice to Dr. Brandner arising from Dr. Sharpe's failure to provide the additional testimony to the COP Hearing Panel. Thus, when considered in light of the accommodation afforded by the AAOS to Plaintiff on appeal – its consideration of new evidence that Plaintiff was not able to obtain prior to the COP Hearing but was able to locate afterward – Plaintiff's claims of burden-shifting and that the AAOS made its findings based on an incomplete evidentiary record are entirely lacking in factual support.

---

[2] Notably, when asked by the COP Hearing Panel to identify the specific transcripts he believed were missing, Dr. Brandner was unable to do so. (SOF at ¶¶ 48-49.)

## 2. The AAOS did not recast the allegations of the Grievance.

Plaintiff alleges that the AAOS's continuous recasting of the grievance violated Section VI(B)(3) of the Grievance Procedures, which provides each party with the right to know the specific allegations made in the grievance. (Am. Compl. at ¶¶ 104, 205.) As discussed in greater detail above, the ultimate findings of the AAOS as to Mandatory Standard Nos. 3 and 4 tracked the allegations set forth in Dr. Sharpe's October 13, 2008 grievance letter – they were based entirely on whether it was proper for Dr. Brandner to opine in his testimony that Dr. Sharpe fell below the standard of care in obtaining informed consent. (SOF at ¶ 35.) Plaintiff urges this court to require that the findings of the Judiciary Committee entirely mirror the arguments made by Dr. Sharpe two years earlier in his grievance report and letter. Neither the Grievance Procedures nor any pertinent case law support Plaintiff's assertion.

## 3. Any purported violations of the Grievance Procedures were trivial.

Plaintiff contends that the AAOS violated Section VII(E) of the Grievance Procedures when the members of the Judiciary Committee asked questions of the parties during the appeal hearing. Section VII(E) does not preclude the Judiciary Committee from asking questions of the parties during the hearing – it is silent on this issue. (SOF at ¶ 59.) Since the inception of the Program, the practice of the Judiciary Committee members has been to ask clarifying questions of the parties in order to better understand their respective positions. (SOF at ¶ 59.) In the instant matter, neither Dr. Brandner nor his legal counsel raised an objection to these questions at any point during the hearing. (SOF at ¶ 59.)

Further, in the initial hearing before the Board of Directors, a representative of the COP Hearing Panel was mistakenly allowed to make a presentation of the Hearing Panel's findings. (SOF at ¶¶ 66-67.) The prior set of Grievance Procedures authorized the COP Hearing Panel

representative to make such a presentation. (SOF at ¶ 66.) However, the Grievance Procedures applicable to Dr. Sharpe's grievance against Dr. Brandner only call for the COP Hearing Panel representative to be present at the Board meeting to respond to any questions. (SOF at ¶ 66.) Upon discovering this departure from the Grievance Procedures, the AAOS declared the initial Board finding to be null and void and granted Plaintiff a new hearing before the Board. (SOF at ¶ 67.)

As demonstrated above, to the extent the AAOS deviated from its internal rules in certain instances, these purported deviations either served to Dr. Brandner's benefit – the AAOS allowed the Judiciary Committee to consider new evidence that had not been produced to the COP—or they constitute trivial deviations that do not change the fact that the AAOS substantially complied with its Bylaws and Grievance Procedures. There is no basis for judicial intervention in this matter.

**D.      The Actions by AAOS Were Not Motivated by Prejudice, Bias or Bad Faith.**

Even where an association makes a "factually wrong decision," a supportable inference of bad faith cannot be found unless the decision is "so utterly wrong and completely unsupported that no fair and rational person viewing the evidence could have come to that conclusion." *Austin.* 120 F. Supp. 2d at 1154.

Here, the facts fail to demonstrate that the AAOS's decision was so "utterly wrong and completely unsupported that no fair and rational person viewing the evidence could have come to that conclusion." Instead, the facts demonstrate that the patient and his mother offered conflicting testimony about their pre-operative discussions with Dr. Sharpe concerning risk of injury to the peroneal nerve. (SOF at ¶¶ 24-25, 27.) The AAOS Judiciary Committee ultimately placed greater weight on the initial deposition testimony of the patient and his mother due to the fact that (a) it was closest  in time to the pre-operative discussions and surgery and (b) the

testimony was given prior to Dr. Sharpe being named as a defendant in the underlying malpractice action. (SOF at ¶¶ 60-62.) Although he may disagree with this decision, Dr. Brandner cannot credibly argue that the Judiciary Committee's conclusion is so completely unsupported as to support an inference of bad faith. Moreover, Plaintiff's claims of bias and bad faith are severely undercut by the fact that the AAOS ultimately ruled in Dr. Brandner's favor with respect to three of the five Mandatory Standard violations alleged by Dr. Sharpe. (SOF at ¶¶ 51, 60, 65, 69.) The facts simply do not support an inference of bad faith or prejudice and the general rule of judicial non-intervention is applicable.

**E.** **Dr. Brandner Has Failed to Establish that Membership in the AAOS is an Economic Necessity.**

Finally, Dr. Brandner cannot show that ████████████████ will compromise an important economic interest. It is not sufficient to simply classify an injury as "economic." *Van Daele*, 51 Ill.2d at 394. Instead, "economic necessity" means the "opportunity [to earn] a livelihood." *Id.* Importantly, the Seventh Circuit has held that, "[w]here membership is optional, expulsion (or suspension, or denial of admission) is not deemed the invasion of an important economic interest." *Austin*, 253 F.3d at 972.

In *Austin*, the Seventh Circuit determined that "no important economic interest" had been violated simply by Dr. Austin's suspension from the association. 253 F.3d at 971-972. The Court reasoned that membership in the association was optional and not a precondition to the plaintiff's practice of neurosurgery. *Id.* at 971. Instead, membership was simply a professional honor which assisted the plaintiff in his work as a medical malpractice expert. *Id.* at 972. The Seventh Circuit further explained that, even if the plaintiff's income from expert testimony dropped by 35% after his expulsion, the decrease in his income was immaterial because the plaintiff's expert work was not necessary to his practice as a neurosurgeon. *Id.*

-14-

The analysis in *Austin* is on all fours with this case. Here, Dr. Brandner continues to generate, on average, approximately $200,000 on an annual basis from his orthopaedic practice. (SOF at ¶ 72.) Although he generates significantly more income from his medical-legal support practice (over $1.6 million over the past three years), he cannot demonstrate that continued membership in good standing violates an important economic interest. (SOF at ¶72.) Even if Dr. Brandner had proven that ██████████ would decimate his medical-legal support income, which he has not, the facts fail to demonstrate that he is precluded from earning a livelihood through his orthopaedic practice. His membership in the AAOS is purely voluntary on his part and, further, is not a precondition to his practice of orthopaedic surgery. Moreover, the AAOS is but one of several medical associations to which Dr. Brandner belongs. (SOF at ¶ 6.)

### III.  CONCLUSION

The undisputed facts demonstrate that the AAOS afforded Plaintiff due process and that it substantially complied with its Bylaws and Grievance Procedures. The record further reflects that the AAOS's ultimate findings are based on the evidentiary record and are not the product of bad faith or bias. Accordingly, the AAOS respectfully requests that this Court enter summary judgment in its favor on all of Plaintiff's claims.

Dated:  November 22, 2011

Respectfully submitted,

AMERICAN ACADEMY OF ORTHOPAEDIC
SURGEONS and AMERICAN ASSOCIATION
OF ORTHOPAEDIC SURGEONS

By:_____ s/ Michael A. Chabraja _____
One of Their Attorneys

Michael A. Chabraja
Vedder Price P.C.
222 North LaSalle, Suite 2300
Chicago, Illinois 60601
Telephone:  (312) 609-7500
Facsimile:  (312) 609-5005

CHICAGO/#2264970.1