# EXHIBIT "5"

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PATRICK J. BRANDNER, M.D.,  )
                            )
       Plaintiff,           )
                            )
                            )   Case No. 10-cv-8161
                            )
AMERICAN ACADEMY OF         )
ORTHOPAEDIC SUREGEONS and   )
AMERICAN ASSOCIATION OF     )
ORTHOPAEDIC SURGEONS,       )
                            )
       Defendants.          )
                            )

## PLAINTIFF'S ANSWERS TO DEFENDANTS' COMBINED FIRST SET OF INTERROGATORIES AND REQUESTS FOR THE PRODUCTION OF DOCUMENTS

TO:   AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS AND AMERICAN
      ASSOCIATION OF ORTHOPAEDIC SURGEONS; and

TO:   MCGUIRE WOODS, LLP, their attorneys

COMES NOW, Plaintiff, Patrick J. Brandner, M.D., by and through his attorneys of record, the law firms of Stephan Zouras, LLP and Woods Erickson Whitaker & Maurice LLP, and responds to Defendants' Combined First Set of Interrogatories and Requests for the Production of Documents as follows:

**Interrogatory No. 1:** In Paragraphs 9 and 200 of the Amended Complaint, you allege that:

[T]he AAOS failed to act in accordance with its own constitution and bylaws . . .

(Amend. Compl. at ¶¶ 9 and 200). In your January 14, 2011 Affidavit submitted in support of Plaintiff's emergency motion for temporary restraining order, you attest to the truth of this factual allegation.

   i.   State in full detail the factual basis for the foregoing assertion;

Page 1 of 52

ii.    Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

iii.    Identify each and every instance in which the AAOS failed to act in accordance with its own constitution and bylaws when adjudicating Grievance 2008-23, and for each such instance, describe how Plaintiff was harmed by the AAOS's alleged violation;

iv.    Identify all expert witnesses that will offer opinions on topics related to this assertion and the subject of their opinions; and

v.    Identify all documents that support, contradict, or tend to contradict the foregoing assertion.

**Answer to Interrogatory No. 1:**

OBJECTION. The Interrogatory contains discrete subparts. Without waiving said objection, Plaintiff responds as follows:

i.    State in full detail the factual basis for the foregoing assertion;

Article 14.2 of the Bylaws for the American Academy of Orthopaedic Surgeons ("Academy") provides that the American Association of Orthopaedic Surgeons ("Association") shall adopt Standards of Professionalism. Article 3.1 of the Academy's Bylaws provides that fellowship and membership in the Academy are dependent upon compliance with the Standards of Professionalism adopted by the Academy and the Association. Article 7 of the Association's Bylaws establishes a Professional Compliance Program for the Academy and the Association. Article 8.2(b) of the Association's Bylaws provides that a fellow or member may face professional compliance action for failing to comply with the Standards of Professionalism. Pursuant to Article 8 of the Association's Bylaws, the Association has adopted Professional

Compliance Program Grievance Procedures. Section 2 of the Professional Compliance Program Grievance Procedures provides that the Professional Compliance Program Grievance Procedures supplement Article 8 of the Association's Bylaws. Accordingly, every time the Academy violates the Professional Compliance Program Grievance Procedures (which it did on multiple occasions in its handling of Grievance 2008-23 ("Grievance")), it also violates the Association's Bylaws.

    ii.     Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

See witnesses identified in Plaintiff's Rule 26 Disclosure and all supplements thereto. As discovery is continuing, Plaintiff reserves the right to supplement this response.

    iii.     Identify each and every instance in which the AAOS failed to act in accordance with its own constitution and bylaws when adjudicating Grievance 2008-23, and for each such instance, describe how Plaintiff was harmed by the AAOS's alleged violation;

The AAOS failed to act in accordance with its own constitution and bylaws on no fewer than 34 times in its handling of Grievance 2008-23. Specifically:

- The AAOS failed to act in accordance with its bylaws when it accepted the Grievance filed by Kipling G. Sharpe, MD ("Dr. Sharpe") despite the fact that Dr. Sharpe had failed to follow HIPAA guidelines for de-identifying patient information. It was the general disregard of the Professional Compliance Grievance Procedures shown by the AAOS from the outset of the Grievance process that set the stage for its sloppy handling of the Grievance. Had the AAOS rejected the Grievance at the outset (as was required by its own Professional

Compliance Grievance Procedures) for Dr. Sharpe's failure to follow HIPAA Guidelines for de-identifying patient information, this entire debacle may have been avoided.

- The AAOS failed to act in accordance with its bylaws when it failed to conduct a preliminary administrative evaluation of the Grievance within sixty days of receipt of the Grievance. From the records produced thus far, it appears likely that someone at the AAOS worked with Dr. Sharpe to prepare the Grievance. Such participation in the process by the AAOS cannot be characterized as a "preliminary administrative evaluation." In any event, the process was not completed within sixty days. It was the general disregard of the Professional Compliance Grievance Procedures shown by the AAOS from the outset of the Grievance process that set the stage for its sloppy handling of the Grievance. Had the AAOS performed its "preliminary administrative evaluation" in a timely manner (instead of working with Dr. Sharpe to try and concoct the basis for a grievance), the Grievance would have been rejected at the outset (as was required by its own Professional Compliance Grievance Procedures) and this entire debacle may have been avoided.

- The AAOS failed to act in accordance with its bylaws when it failed to advise Plaintiff within thirty days of determining that the Grievant's materials had passed the preliminary administrative evaluation. Again, it was the general disregard of the Professional Compliance Grievance Procedures shown by the AAOS that set the stage for its sloppy handling of the Grievance. Had the AAOS strictly

Page 4 of 52

followed its own rules, the Grievance submitted by Dr. Sharpe would have never made it past the screening process.

- The AAOS failed to act in accordance with its bylaws when it failed to timely communicate with Plaintiff regarding the status of the Grievance submitted by Dr. Sharpe. Again, the AAOS made no effort to comply with its own Professional Compliance Grievance Procedures. This was but one of many instances in which the AAOS ignored its responsibility to timely communicate with Plaintiff. Telephone records are expected to reveal that communications between the AAOS and Dr. Sharpe were on-going throughout the Grievance process. Had the AAOS strictly followed its own rules, the Grievance submitted by Dr. Sharpe would have never made it past the screening process.

- The AAOS failed to act in accordance with its bylaws when, after receiving Plaintiff's written response to the Grievance filed by Dr. Sharpe, it allowed Dr. Sharpe to submit his own written response. This essentially gave Dr. Sharpe two bites at the apple. Nothing in the Professional Compliance Grievance Procedures provides the Grievant with the opportunity to submit a response to the written response provided by the Respondent.

- The AAOS failed to act in accordance with its bylaws when, after receiving Dr. Sharpe's response, it failed to send a copy of the response to Plaintiff. If the AAOS was not going to reject the response submitted by Dr. Sharpe, at a bare minimum it had an obligation to provide a copy of the response to Plaintiff for review and consideration. The failure of the AAOS to do so was one of a number

of procedural missteps by the AAOS which deprived Plaintiff of a meaningful opportunity to defend himself against the charges leveled by Dr. Shrarpe.

- The AAOS failed to act in accordance with its bylaws when it failed to "advise the Grievant and the Respondent of the specific Mandatory Standard(s) of the AAOS Standards of Professionalism that [were] alleged to have been violated and that [would] be considered at the grievance hearing" in the letter advising Plaintiff that the Grievance had been accepted for review. The failure of the AAOS to do so set the stage for the recasting of the Grievance by the COP Hearing Panel and the Judiciary Committee. The ever-changing allegations deprived Plaintiff of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS failed to act in accordance with its bylaws when it waited until after Plaintiff had submitted his grievance materials to the COP Hearing Panel to forward Dr. Sharpe's response (received by the AAOS almost five months earlier) to Plaintiff. Again, if the AAOS was not going to reject the response submitted by Dr. Sharpe, at a bare minimum it had an obligation to provide a copy of the response to Plaintiff for review and consideration. The failure of the AAOS to do so deprived Plaintiff of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS failed to act in accordance with its bylaws when it failed to timely communicate with Plaintiff regarding the correspondence received by the AAOS from Dr. Sharpe. Again, if the AAOS was not going to reject the response submitted by Dr. Sharpe, at a bare minimum it had an obligation to provide a copy of the response to Plaintiff for review and consideration. The failure of the

AAOS to do so deprived Plaintiff of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS failed to act in accordance with its bylaws when it chose to liberally interpret and apply the Professional Compliance Grievance Procedures with respect to Dr. Sharpe while strictly construing and applying them with respect to Plaintiff. The AAOS repeatedly ignored Dr. Sharpe's procedural non-compliance while, at the same time, requiring Plaintiff to strictly comply with the Professional Compliance Program Grievance Procedures. Such an inequitable application of the Professional Compliance Program Grievance Procedures deprived Plaintiff of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS failed to act in accordance with its bylaws when it imposed the burden of production on Plaintiff (as opposed to Dr. Sharpe). Dr. Sharpe – as a party to the underlying litigation – was in possession of all of the relevant transcripts. Dr. Sharpe chose not to produce the transcripts because he knew they showed his Grievance to be without merit. Plaintiff – who was not a party to the underlying litigation – had no access to the relevant transcripts and repeatedly advised the AAOS as such. Despite this fact, the COP Hearing Panel took no steps to request the transcripts from Dr. Sharpe and, instead, questioned Plaintiff at length regarding his inability to produce the transcripts. The COP Hearing was tainted by Dr. Sharpe's non-disclosure and neither the Judiciary Committee nor the Board of Directors did anything about it. As a result, Plaintiff was deprived of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS failed to act in accordance with its bylaws when it imposed the burden of proof on Plaintiff (as opposed to Dr. Sharpe). The transcripts from the COP Hearing and the hearing before the Judiciary Committee are telling as the members of both (even when they had no authority to do so) asked questions of Plaintiff and Dr. Sharpe. The questions (in terms of their number and content) demonstrate that Dr. Brandner was called upon to prove his innocence in a complete misapplication of the burden of proof. Again, as a result, Plaintiff was deprived of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS failed to act in accordance with its bylaws when it failed to request that Dr. Sharpe provide transcripts from the depositions taken of the plaintiffs in the underlying malpractice action. Dr. Sharpe – as a party to the underlying litigation – was in possession of all of the relevant transcripts. Dr. Sharpe chose not to produce the transcripts because he knew they showed his Grievance to be without merit. Plaintiff – who was not a party to the underlying litigation – had no access to the relevant transcripts and repeatedly advised the AAOS as such. Despite this fact, the COP Hearing Panel took no steps to request the transcripts from Dr. Sharpe and, instead, questioned Plaintiff at length regarding his inability to produce the transcripts. The COP Hearing was tainted by Dr. Sharpe's non-disclosure and neither the Judiciary Committee nor the Board of Directors did anything about it. As a result, Plaintiff was deprived of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS failed to act in accordance with its bylaws when it failed to request that Dr. Sharpe provide a copy of the transcript from the trial reflecting the testimony provided by the plaintiffs in the underlying malpractice action. Dr. Sharpe – as a party to the underlying litigation – was in possession of all of the relevant transcripts. Dr. Sharpe chose not to produce the transcripts because he knew they showed his Grievance to be without merit. Plaintiff – who was not a party to the underlying litigation – had no access to the relevant transcripts and repeatedly advised the AAOS as such. Despite this fact, the COP Hearing Panel took no steps to request the transcripts from Dr. Sharpe and, instead, questioned Plaintiff at length regarding his inability to produce the transcripts. The COP Hearing was tainted by Dr. Sharpe's non-disclosure and neither the Judiciary Committee nor the Board of Directors did anything about it. Again, Plaintiff was deprived of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS failed to act in accordance with its bylaws when the COP Hearing Panel issued its Report and Recommendations without first obtaining and reviewing the transcripts Dr. Sharpe had intentionally failed to produce to the AAOS. Dr. Sharpe – as a party to the underlying litigation – was in possession of all of the relevant transcripts. Dr. Sharpe chose not to produce the transcripts because he knew they showed his Grievance to be without merit. Plaintiff – who was not a party to the underlying litigation – had no access to the relevant transcripts and repeatedly advised the AAOS as such. Despite this fact, the COP Hearing Panel took no steps to request the transcripts from Dr. Sharpe and,

instead, questioned Plaintiff at length regarding his inability to produce the transcripts. The COP Hearing was tainted by Dr. Sharpe's non-disclosure and neither the Judiciary Committee nor the Board of Directors did anything about it. Again, Plaintiff was deprived of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS failed to act in accordance with its bylaws when the COP Hearing Panel failed to issue its Report and Recommendations within sixty days from the conclusion of the COP Hearing. Plaintiff took steps to ensure that he was prepared to appeal any adverse Report and Recommendations issued by the COP Hearing Panel (based on the questions asked by the COP Hearing Panel, it was not difficult to predict the result of the hearing). In this regard, Plaintiff retained counsel to prepare the appeal. Plaintiff, however, intended to work closely with the attorney in the preparation of the appeal. The untimely issuance of the Report and Recommendation made the deadline for the submission of the appeal December 30, 2009. Because Plaintiff was traveling for the holidays, Plaintiff was unable to assist in the preparation of the appeal. Had the AAOS issued the Report & Recommendation in a timely fashion, the appeal-period would not have conflicted with Plaintiff's holiday travel plans.

- The AAOS failed to act in accordance with its bylaws when it failed to timely communicate with Plaintiff regarding the results of the COP Hearing. Plaintiff took steps to ensure that he was prepared to appeal any adverse Report and Recommendations issued by the COP Hearing Panel (based on the questions asked by the COP Hearing Panel, it was not difficult to predict the result of the

hearing). In this regard, Plaintiff retained counsel to prepare the appeal. Plaintiff, however, intended to work closely with the attorney in the preparation of the appeal. The untimely issuance of the Report and Recommendation made the deadline for the submission of the appeal December 30, 2009. Because Plaintiff was traveling for the holidays, Plaintiff was unable to assist in the preparation of the appeal. Had the AAOS issued the Report & Recommendation in a timely fashion, the appeal-period would not have conflicted with Plaintiff's holiday travel plans.

- The AAOS failed to act in accordance with its bylaws when it ignored the allegations leveled by Dr. Sharpe and recast the Grievance. Plaintiff had a right to know the charges made against him and the factual basis for each. When Plaintiff appeared at the COP Hearing, he addressed each of the allegations made by Dr. Sharpe and explained why they were factually and legally flawed. Recognizing the validity of the arguments advanced by Plaintiff, the COP Hearing Panel did not find Dr. Brandner to have violated the Standards of Professionalism for Orthopaedic Expert Witness Testimony as adopted April 18, 2005 ("Original Mandatory Standards of Professionalism") for any of the reasons cited by Dr. Sharpe in support thereof. Rather, the COP Hearing Panel essentially re-drafted Dr. Sharpe' Grievance, finding that Plaintiff had violated the Original Mandatory Standards identified by Dr. Sharpe, but for different reasons than those alleged by Dr. Sharpe. The recasting of the Grievance deprived Plaintiff of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe (it is difficult to defend against charges that are constantly changing).

- The AAOS failed to act in accordance with its bylaws when the COP Hearing Panel recommended sanctions against Plaintiff despite the absence of any violation of the Original Standards of Professionalism. Had the COP Hearing Panel followed the Professional Compliance Grievance Procedures and considered the Grievance submitted by Dr. Sharpe in light of the evidence and argument presented (as opposed to recasting it completely), the only possible result would have been the rejection of Dr. Sharpe's Grievance. Plaintiff never should have had to defend himself beyond the COP Hearing.

- The AAOS failed to act in accordance with its bylaws when, after allowing the COP Hearing Panel to recast the Grievance, Plaintiff's presentation before the Judiciary Committee was nonetheless limited to ten minutes. Ten minutes was insufficient to respond to a new set of allegations -- and that is what Plaintiff was presented with at the hearing before the Judiciary Committee (a new set of allegations as drafted by the COP Hearing Panel).

- The AAOS failed to act in accordance with its bylaws when, after refusing to consider an objection lodged by counsel for Plaintiff, counsel for the Judiciary Committee sustained an objection lodged by counsel for Dr. Sharpe (effectively ending to the questioning of Dr. Sharpe regarding his misrepresentation to the COP Hearing Panel). This is another example of the inequitable application of the Professional Compliance Program Grievance Procedures. Again, such inequitable treatment deprived Plaintiff of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS failed to act in accordance with its bylaws when members of the Judiciary Committee were permitted to ask questions of the Grievant and the Respondent. Nothing in the Professional Compliance Grievance Procedures provides that the Judiciary Committee is permitted to ask questions of the Grievant or Respondent either during or after their presentations. Accordingly, Plaintiff spent no time preparing for such questioning prior to the hearing.

- The AAOS failed to act in accordance with its bylaws when the Judiciary Committee failed to reject the recommendation of the COP Hearing Panel despite the obvious lack of due process at the COP Hearing and the fact that the Report and Recommendations issued by the COP Hearing Panel was contrary to the clear weight of the evidence. Had the Judiciary Committee followed the Professional Compliance Grievance Procedures and considered the Report and Recommendations issued by the COP Hearing Panel in light of the evidence and argument presented (as opposed to recasting it), the only possible result would have been the rejection of the Report and Recommendations issued by the COP Hearing Panel. Plaintiff never should have had to defend himself beyond the COP Hearing but, at a minimum, the farce should have come to an end at the Judiciary Committee level.

- The AAOS failed to act in accordance with its bylaws when it ignored the plain language of Professional Compliance Grievance Procedure VI(C) and accepted the subjective relevance standard advocated by Dr. Sharpe's counsel. Dr. Sharpe was caught (clear and simple). He had intentionally withheld documents from the AAOS and then lied to the COP Hearing Panel (claiming that he had produced the

Page 13 of 52

documents). Worse yet, the COP Hearing Panel based its opinion entirely on the deposition transcripts. In this regard, Dr. Sharpe's selective document production and his misrepresentation to the COP Hearing Panel undermined the entirety of the COP Hearing Panel process. Dr. Sharpe's attorney had no choice but to argue that Professional Compliance Grievance Procedure VI(C) did not mean what it said but, instead, provided for a subjective relevance standard. The fact that the Judiciary Committee ignored the plain language of the Professional Compliance Grievance Procedures and adopted the standard advanced by Dr. Sharpe's counsel says volumes about the "due process" afforded Plaintiff by the AAOS. Again, the Judiciary Committee should have put an end to the farce. Instead, it only made matters worse.

- The AAOS failed to act in accordance with its bylaws when the Judiciary Committee ignored the Report and Recommendations of the COP Hearing Panel and once again recast the Grievance. Had the Judiciary Committee followed the Professional Compliance Grievance Procedures and considered the Report and Recommendations issued by the COP Hearing Panel in light of the evidence and argument presented (as opposed to recasting it), the only possible result would have been the rejection of the Report and Recommendations issued by the COP Hearing Panel. Instead, the Judiciary Committee elected to recast the Grievance in an attempt to save Dr. Sharpe's fatally flawed allegations. At that point the Judiciary Committee was anything but an impartial appellate body.

- The AAOS failed to act in accordance with its bylaws when the Judiciary Committee recommended sanctions against Plaintiff despite the absence of any

violation of the Original Standards of Professionalism. Had the Judiciary Committee followed the Professional Compliance Grievance Procedures and considered the Report and Recommendations issued by the COP Hearing Panel in light of the evidence and argument presented, the only possible result would have been the rejection of the Report and Recommendations issued by the COP Hearing Panel.

- The AAOS failed to act in accordance with its bylaws when it failed to include a copy of the recommendations of the Committee on Professionalism and the Judiciary Committee with its notice of the Board Meeting scheduled for June 19, 2010. General disregard by the AAOS of its own bylaws permeated the Grievance process. It was that disregard that allowed the perversion of the process (by Dr. Sharpe at first and then, ultimately, by the AAOS).

- The AAOS failed to act in accordance with its bylaws when, after allowing the Judiciary Committee to recast the Grievance, Plaintiff's presentation at the June 19, 2010 hearing before the Board of Directors was nonetheless limited to ten minutes. Ten minutes was insufficient to respond to a new set of allegations – and that is what Plaintiff was presented with at the June 19, 2009 Board Meeting (a new set of allegations as drafted by the Judiciary Committee).

- The AAOS failed to act in accordance with its bylaws when it allowed Dr. Sharpe's multiple statements (which exceeded two pages) to be read into the record during the June 19, 2010 hearing before the Board of Directors. This was another example of the willingness of the AAOS to disregard its Professional Compliance Grievance Procedures when it came to accommodating Dr. Sharpe.

- The AAOS failed to act in accordance with its bylaws when it allowed a representative of the COP Hearing Panel to make a presentation at the June 19, 2010 hearing before the Board of Directors. By allowing a representative of the COP Hearing Panel to make a presentation, the Board heard three presentations advocating for the suspension of Plaintiff (each arguing in favor of such based on different factual allegations) and one (offered by Plaintiff's counsel) advocating for rejection of Judiciary Committee's recommendation of suspension. The ten minutes allotted to Plaintiff was insufficient to respond to the points raised by each of the presentations. Similarly, in terms of sheer "stage time", Plaintiff was disadvantaged by the Board's decision to ignore its own Professional Compliance Grievance Procedures.

- The AAOS failed to act in accordance with its bylaws when the Board of Directors failed to reject the recommendation of the Judiciary Committee following the hearing conducted on June 19, 2010, despite the obvious lack of due process at the COP and Judiciary Committee hearings and the fact that the Reports and Recommendations issued by both bodies were contrary to the clear weight of the evidence. Had the Board of Directors followed the Professional Compliance Grievance Procedures and considered the Report and Recommendations issued by the Judiciary Committee in light of the evidence and argument presented, the only possible result would have been the rejection of the Report and Recommendations issued by the Judiciary Committee.

- The AAOS failed to act in accordance with its bylaws when it failed to include a copy of the recommendations of the Committee on Professionalism and the

Page 16 of 52

Judiciary Committee with its notice of the Board Meeting scheduled for December 4, 2010. Again, general disregard by the AAOS of its own bylaws permeated the Grievance process. It was that disregard that allowed the perversion of the process (by Dr. Sharpe at first and then, ultimately, by the AAOS).

- The AAOS failed to act in accordance with its bylaws when, after allowing the Judiciary Committee to recast the Grievance, Plaintiff's presentation at the December 4, 2010 hearing before the Board of Directors was nonetheless limited to ten minutes. Ten minutes was insufficient to respond to a new set of allegations – and that is what Plaintiff was presented with at the December 4, 2009 Board Meeting (a new set of allegations as drafted by the Judiciary Committee).

- The AAOS failed to act in accordance with its bylaws when the Board of Directors failed to reject the recommendation of the Judiciary Committee following the hearing conducted on December 4, 2010, despite the obvious lack of due process at the COP and Judiciary Committee hearings and the fact that the Reports and Recommendations issued by both bodies were contrary to the clear weight of the evidence. Had the Board of Directors followed the Professional Compliance Grievance Procedures and considered the Report and Recommendations issued by the Judiciary Committee in light of the evidence and argument presented, the only possible result would have been the rejection of the Report and Recommendations issued by the Judiciary Committee.

As discovery is continuing, Plaintiff reserves the right to supplement this response.

iv.  Identify all expert witnesses that will offer opinions on topics related to this assertion and the subject of their opinions; and

Plaintiff has not yet retained an expert witness in this matter. As discovery is continuing, Plaintiff reserves the right to supplement this response.

v.  Identify all documents that support, contradict, or tend to contradict the foregoing assertion.

See documents identified in Plaintiff's Rule 26 Disclosure and all supplements thereto. As discovery is continuing, Plaintiff reserves the right to supplement this response.

**Interrogatory No. 2:**  In paragraphs 9 and 200 of the Amended Complaint you allege that:

> [T]he AAOS...was influenced by bias, prejudice, or lacked good faith [when adjudicating Grievance 2008-23.]

(Amend. Compl. at ¶¶ 9 and 200). In your January 14, 2011 Affidavit submitted in support of Plaintiff's emergency motion for temporary restraining order, you attest to the truth of this factual allegation.

i.  State in full detail the factual basis for the foregoing assertion;

ii.  Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

iii.  Identify each and every instance in which the AAOS failed to act in accordance with its own constitution and bylaws when adjudicating Grievance 2008-23, and for each such instance, describe how Plaintiff was harmed by the AAOS's alleged violation;

iv.  Identify all expert witnesses that will offer opinions on topics related to this assertion and the subject of their opinions; and

Page 18 of 52

v.      Identify all documents that support, contradict, or tend to contradict the foregoing assertion.

**Answer to Interrogatory No. 2:**

OBJECTION.  The Interrogatory contains discrete subparts.  Without waiving said objection, Plaintiff responds as follows:

i.      State in full detail the factual basis for the foregoing assertion;

The AAOS was influenced by bias, prejudice, or lacked good faith when adjudicating Grievance 2008-23 thereby denying Dr. Brandner due process.  Specifically:

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when it chose to liberally interpret and apply the Professional Compliance Grievance Procedures with respect to Dr. Sharpe while strictly construing and applying them with respect to Plaintiff.  The AAOS repeatedly ignored Dr. Sharpe's procedural non-compliance while, at the same time, requiring Plaintiff to strictly comply with the Professional Compliance Program Grievance Procedures.  Such an inequitable application of the Professional Compliance Program Grievance Procedures deprived Plaintiff of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe and deprived Plaintiff of his right to due process.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when it imposed the burden of production on Plaintiff (as opposed to Dr. Sharpe).  Dr. Sharpe – as a party to the underlying litigation – was in possession of all of the relevant transcripts.  Dr. Sharpe chose not to produce the transcripts because he knew they showed his Grievance to be without merit.

Page 19 of 52

Plaintiff – who was not a party to the underlying litigation – had no access to the relevant transcripts and repeatedly advised the AAOS as such. Despite this fact, the COP Hearing Panel took no steps to request the transcripts from Dr. Sharpe and, instead, questioned Plaintiff at length regarding his inability to produce the transcripts. The COP Hearing was tainted by Dr. Sharpe's non-disclosure and neither the Judiciary Committee nor the Board of Directors did anything about it. Again, Plaintiff was deprived of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when it imposed the burden of proof on Plaintiff (as opposed to Dr. Sharpe). The transcripts from the COP Hearing and the hearing before the Judiciary Committee are telling as the members of both (even when they had no authority to do so) asked questions of Plaintiff and Dr. Sharpe. The questions (in terms of their number and content) demonstrate that Plaintiff was called upon to prove his innocence in a complete misapplication of the burden of proof. Again, Plaintiff was deprived of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when it failed to request that Dr. Sharpe provide transcripts from the depositions taken of the plaintiffs in the underlying malpractice action. Dr. Sharpe – as a party to the underlying litigation – was in possession of all of the relevant transcripts. Dr. Sharpe chose not to produce the transcripts because he knew they showed his Grievance to be without merit. Plaintiff – who was not

Page 20 of 52

a party to the underlying litigation – had no access to the relevant transcripts and repeatedly advised the AAOS as such. Despite this fact, the COP Hearing Panel took no steps to request the transcripts from Dr. Sharpe and, instead, questioned Plaintiff at length regarding his inability to produce the transcripts. The COP Hearing was tainted by Dr. Sharpe's non-disclosure and neither the Judiciary Committee nor the Board of Directors did anything about it. Again, Plaintiff was deprived of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when it failed to request that Dr. Sharpe provide a transcript from the trial reflecting the testimony provided by the plaintiffs in the underlying malpractice action. Dr. Sharpe – as a party to the underlying litigation – was in possession of all of the relevant transcripts. Dr. Sharpe chose not to produce the transcripts because he knew they showed his Grievance to be without merit. Plaintiff – who was not a party to the underlying litigation – had no access to the relevant transcripts and repeatedly advised the AAOS as such. Despite this fact, the COP Hearing Panel took no steps to request the transcripts from Dr. Sharpe and, instead, questioned Plaintiff at length regarding his inability to produce the transcripts. The COP Hearing was tainted by Dr. Sharpe's non-disclosure and neither the Judiciary Committee nor the Board of Directors did anything about it. Again, Plaintiff was deprived of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when the COP Hearing Panel issued its Report and Recommendations without first obtaining and reviewing the transcripts Dr. Sharpe had intentionally failed to produce to the AAOS. Dr. Sharpe – as a party to the underlying litigation – was in possession of all of the relevant transcripts. Dr. Sharpe chose not to produce the transcripts because he knew they showed his Grievance to be without merit. Plaintiff – who was not a party to the underlying litigation – had no access to the relevant transcripts and repeatedly advised the AAOS as such. Despite this fact, the COP Hearing Panel took no steps to request the transcripts from Dr. Sharpe and, instead, questioned Plaintiff at length regarding his inability to produce the transcripts. The COP Hearing was tainted by Dr. Sharpe's non-disclosure and neither the Judiciary Committee nor the Board of Directors did anything about it. Again, Plaintiff was deprived of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when it ignored the allegations leveled by Dr. Sharpe and recast the Grievance. Plaintiff had a right to know the charges made against him and the factual basis for each. When Plaintiff appeared at the COP Hearing, he addressed each of the allegations made by Dr. Sharpe and explained why they were factually and legally flawed. Recognizing the validity of the arguments advanced by Plaintiff, the COP Hearing Panel did not find Dr. Brandner to have violated the Original Mandatory Standards of Professionalism for any of the reasons cited by Dr. Sharpe in support thereof. Rather, the COP Hearing Panel

essentially re-drafted Dr. Sharpe' Grievance, finding that Plaintiff had violated the Original Mandatory Standards identified by Dr. Sharpe, but for different reasons than those alleged by Dr. Sharpe. The recasting of the Grievance deprived Plaintiff of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe (it's difficult to defend against charges that are constantly changing).

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when the COP Hearing Panel recommended sanctions against Plaintiff despite the absence of any violation of the Original Standards of Professionalism. Had the COP Hearing Panel followed the Professional Compliance Grievance Procedures and considered the Grievance submitted by Dr. Sharpe in light of the evidence and argument presented (as opposed to recasting it), the only possible result would have been the rejection of Dr. Sharpe's Grievance. Plaintiff never should have had to defend himself beyond the COP Hearing.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when, after refusing to consider an objection lodged by counsel for Plaintiff, counsel for the Judiciary Committee sustained an objection lodged by counsel for Dr. Sharpe (effectively ending to the questioning of Dr. Sharpe regarding his misrepresentation to the COP Hearing Panel). This is another example of the inequitable application of the Professional Compliance Program Grievance Procedures. Again, such inequitable treatment deprived Plaintiff of a meaningful opportunity to defend against the charges leveled by Dr. Sharpe.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when it ignored the plain language of Professional Compliance Grievance Procedure VI(C) and accepted the subjective relevance standard advocated by Dr. Sharpe's counsel. Dr. Sharpe was caught (clear and simple). He had intentionally withheld documents from the AAOS and then lied to the COP Hearing Panel (claiming that he had produced the documents). Worse yet, the COP Hearing Panel's opinion was based entirely on the deposition transcripts. In this regard, Dr. Sharpe's selective document production and his misrepresentation to the COP Hearing Panel undermined the entirety of the COP Hearing Panel process. Dr. Sharpe's attorney had no choice but to argue that Professional Compliance Grievance Procedure VI(C) did not mean what it said but, instead, provided for a subjective relevance standard. The fact that the Judiciary Committee ignored the plain language of the Professional Compliance Grievance Procedures and adopted the standard advanced by Dr. Sharpe's counsel says volumes about the "due process" afforded Plaintiff by the AAOS. Again, the Judiciary Committee should have put an end to the farce. Instead, it only made it worse.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when the Judiciary Committee ignored the Report and Recommendations of the COP Hearing Panel and once again recast the Grievance. Had the Judiciary Committee followed the Professional Compliance Grievance Procedures and considered the Report and Recommendations issued by the COP Hearing Panel in light of the evidence and argument presented (as

opposed to recasting it), the only possible result would have been the rejection of the Report and Recommendations issued by the COP Hearing Panel. Instead, the Judiciary Committee elected to recast the Grievance in an attempt to save Dr. Sharpe's fatally flawed allegations. At that point the Judiciary Committee was anything but an impartial appellate body.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when the Judiciary Committee recommended sanctions against Plaintiff despite the absence of any violation of the Original Standards of Professionalism. Had the Judiciary Committee followed the Professional Compliance Grievance Procedures and considered the Report and Recommendations issued by the COP Hearing Panel in light of the evidence and argument presented, the only possible result would have been the rejection of the Report and Recommendations issued by the COP Hearing Panel.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when it allowed Dr. Sharpe's multiple statements (which exceeded two pages) to be read into the record during the June 19, 2010 hearing before the Board of Directors. This was another example of the willingness of the AAOS to disregard its Professional Compliance Grievance Procedures when it came to accommodating Dr. Sharpe.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when it allowed a representative of the COP Hearing Panel to make a presentation at the June 19, 2010 hearing before the Board of Directors. By allowing a representative of the COP Hearing Panel to make a presentation,

the Board heard three presentations advocating for the suspension of Plaintiff (each arguing in favor of such based on different factual allegations) and one (by Plaintiff's counsel) advocating for rejection of Judiciary Committee's recommendation of suspension. The ten minutes allotted to Plaintiff was insufficient to respond to the points raised by each of the presentations. Similarly, in terms of sheer "stage time", Plaintiff was disadvantaged by the Board's decision to ignore its own Professional Compliance Grievance Procedures.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when the Board of Directors failed to reject the recommendation of the Judiciary Committee following the hearing conducted on June 19, 2010, despite the obvious lack of due process at the COP and Judiciary Committee and the fact that the Reports and Recommendations issued by both bodies were contrary to the clear weight of the evidence. Had the Board of Directors followed the Professional Compliance Grievance Procedures and considered the Report and Recommendations issued by the Judiciary Committee in light of the evidence and argument presented, the only possible result would have been the rejection of the Report and Recommendations issued by the Judiciary Committee.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when the COP Hearing Panel prepared written comments to the Judiciary Committee attempting to explain how it could have found that Plaintiff violated Original Mandatory Standard No. 7 when he testified that the

fracture had some remodeling potential (a conclusion that, according to the physician notes, was shared by one of the doctors in Dr. Sharpe's practice group who had reviewed the same set of X-rays) despite having never reviewed the X-rays upon which Plaintiff based his testimony. Worse yet, the COP Hearing panel's "comments" incorporated Dr. Sharpe's improper characterization of Plaintiff's testimony – the characterization of which was clearly belied by the deposition and trial transcripts.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when the Board of Directors failed to reject the recommendation of the Judiciary Committee following the hearing conducted on December 4, 2010, despite the obvious lack of due process at the COP and the Judiciary Committee hearings and the fact that the Reports and Recommendations issued by both bodies were contrary to the clear weight of the evidence. Had the Board of Directors followed the Professional Compliance Grievance Procedures and considered the Report and Recommendations issued by the Judiciary Committee in light of the evidence and argument presented, the only possible result would have been the rejection of the Report and Recommendations issued by the Judiciary Committee.

- The AAOS was influenced by bias, prejudice, or lacked good faith in its handing of Grievance 2008-23 when it refused Plaintiff's counsel's request to withhold publication of the Board of Director's decision until the court had an opportunity to rule on the merits of the case.

As discovery is continuing, Plaintiff reserves the right to supplement this response. Plaintiff believes that discovery will reveal that the AAOS has a history of sanctioning those members who testify against other members (regardless of how innocuous the testimony might be) to deter its members from testifying against other members and fellows. Plaintiff believes that discovery with further reveal that the AAOS assisted Dr. Sharpe in his witch hunt against Plaintiff by helping him craft his grievance to avoid an outright rejection of his grievance at the preliminary administrative evaluation. Clear bias permeated the entire grievance process. The AAOS had a predetermined outcome that it sought to achieve.

ii. Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

See witnesses identified in Plaintiff's Rule 26 Disclosure and all supplements thereto. As discovery is continuing, Plaintiff reserves the right to supplement this response.

iii. Identify each and every action taken by the AAOS in the course of adjudicating Grievance 2008-23 which was influenced by bias, prejudice, or lack of good faith, and for each such instance, describe how Plaintiff was harmed by the AAOS's alleged action;

See response to subpart 2(i) above. As discovery is continuing, Plaintiff reserves the right to supplement this response.

iv. Identify all expert witnesses that will offer opinions on topics related to this assertion and the subject of their opinions; and

Plaintiff has not yet retained an expert witness in this matter. As discovery is continuing, Plaintiff reserves the right to supplement this response.

v.      Identify all documents that support, contradict, or tend to contradict the foregoing assertion.

See documents identified in Plaintiff's Rule 26 Disclosure and all supplements thereto. As discovery is continuing, Plaintiff reserves the right to supplement this response.

**Interrogatory No. 3:** In paragraphs 9 and 200 of the Amended Complaint you allege that:

[T]he AAOS…violated due process in its handling of Grievance 2008-23.]

(Amend. Compl. at ¶¶ 9 and 200). In your January 14, 2011 Affidavit submitted in support of Plaintiff's emergency motion for temporary restraining order, you attest to the truth of this factual allegation.

i.      State in full detail the factual basis for the foregoing assertion;

ii.      Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

iii.      Identify each and every instance in which the AAOS violated due process in its handling of Grievance 2008-23, and for each such instance, describe how Plaintiff was harmed by the AAOS's alleged violation;

iv.      Identify all expert witnesses that will offer opinions on topics related to this assertion and the subject of their opinions; and

vi.      Identify all documents that support, contradict, or tend to contradict the foregoing assertion.

**Answer to Interrogatory No. 3:**

OBJECTION. The Interrogatory contains discrete subparts. Without waiving said objection, Plaintiff responds as follows:

i.      State in full detail the factual basis for the foregoing assertion;

See response to Interrogatories 1(i), 1(iii) and 2(i) above. As discovery is continuing, Plaintiff reserves the right to supplement this response.

    ii.    Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

See witnesses identified in Plaintiff's Rule 26 Disclosure and all supplements thereto. As discovery is continuing, Plaintiff reserves the right to supplement this response.

    iii.    Identify each and every instance in which the AAOS violated due process in its handling of Grievance 2008-23, and for each such instance, describe how Plaintiff was harmed by the AAOS's alleged violation;

See response to Interrogatories 1(i), 1(iii) and 2(i) above. As discovery is continuing, Plaintiff reserves the right to supplement this response.

    iv.    Identify all expert witnesses that will offer opinions on topics related to this assertion and the subject of their opinions; and

Plaintiff has not yet retained an expert witness in this matter. As discovery is continuing, Plaintiff reserves the right to supplement this response.

    ii.    Identify all documents that support, contradict, or tend to contradict the foregoing assertion.

See documents identified in Plaintiff's Rule 26 Disclosure and all supplements thereto. As discovery is continuing, Plaintiff reserves the right to supplement this response.

**Interrogatory No. 4:** In Paragraph 10 of the Amended Complaint, you allege that:

In Excess of fifty percent of Dr. Brandner's revenue is derived from medical-legal support (independent medical examinations, records reviews, expert testimony).

(Amend. Compl. at ¶ 10). In your January 14, 2011 Affidavit submitted in support of Plaintiff's emergency motion for temporary restraining order, you attest to the truth of this factual allegation.

    i.    State in full detail the factual basis for the foregoing assertion;

    ii.    State on an annual basis and for each year in which Dr. Brandner performed "medical-legal support" services: (a) the percentage of his revenue that was derived from "medical legal-support" work; and (b) the amount of revenue earned by Dr. Brandner for his "medical-legal support" work;

    iii.    Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

    iv.    Define the term, "revenue," as it is used by the foregoing allegation;

    iii.    Identify all expert witnesses that will offer opinions on topics related to this assertion and the subject of their opinions; and

    vi.    Identify all documents that support, contradict, or tend to contradict the foregoing assertion.

**Answer to Interrogatory No. 4:**

OBJECTION. The Interrogatory contains discrete subparts. Further, this request is overly broad in that it is unlikely to lead to discoverable evidence, unduly burdensome and vague in that it requests information "for each year in which Dr. Brandner performed 'medical-legal support' services" without limiting or defining the years requested. In addition, the request seeks information that is privileged and cannot be produced under HIPAA guidelines. Without waiving said objection, Plaintiff responds as follows:

    i.    State in full detail the factual basis for the foregoing assertion;

Dr. Brandner's professional corporation, Patrick J. Brandner, M.D., P.C. is a shareholder of Desert Orthopaedic Center, an orthopaedic medical facility located in Las Vegas, Nevada. The average gross receipts Patrick J. Brandner, M.D., P.C. received for in-patient care performed at Desert Orthopaedic Center during the years 2008, 2009 and 2010 accounted for 26.7% of Patrick J. Brandner, M.D., P.C.'s gross receipts. The average gross receipts Patrick J. Brandner, M.D., P.C., received for medical legal support was 72.2% of his P.C.'s gross receipts during that same time period. Thus, his medical legal support practice generated in excess of 50% of his revenue for the past three years.

ii.     State on an annual basis and for each year in which Dr. Brandner performed "medical-legal support" services: (a) the percentage of his revenue that was derived from "medical legal-support" work; and (b) the amount of revenue earned by Dr. Brandner for his "medical-legal support" work;

(a)     the percentage of his revenue that was derived from "medical legal-support" work:

2008 – 73.8%

2009 – 71.9%

2010 – 70.2%

(b)     the amount of revenue earned by Dr. Brandner for his "medical-legal support" work:

2008 - $ 703,105.77

2009 - $485,086.39

2010 - $472,758.11

iii.     Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

Patrick J. Brandner, M.D.
c/o Aaron R. Maurice, Esq.

WOODS ERICKSON WHITAKER
& MAURICE LLP
1349 West Galleria Drive, Suite 200
Henderson, Nevada 89014
(702) 433-9696

Kelly Brandner
c/o Aaron R. Maurice, Esq.
WOODS ERICKSON WHITAKER
& MAURICE LLP
1349 West Galleria Drive, Suite 200
Henderson, Nevada 89014
(702) 433-9696

Sandra Duggan
1792 Puerto Way
Henderson, NV 89012
(702) 263-9122

iv.     Define the term, "revenue," as it is used by the foregoing allegation;

Gross Receipts deposited during the year in question to Patrick J. Brandner, M.D., P.C.

v.      Identify all expert witnesses that will offer opinions on topics related to this

assertion and the subject of their opinions; and

Plaintiff has not yet retained an expert witness in this matter. As discovery is continuing,

Plaintiff reserves the right to supplement this response.

vi.     Identify all documents that support, contradict, or tend to contradict the foregoing

assertion.

See responses to requests for production of documents, response 13 and 15.

**Interrogatory No. 5:**   In Paragraph 10 and 25 of the Amended Complaint, you allege that:

Public disclosure of Dr. Brandner's suspension…would significantly damage Dr.
Brandner's Professional reputation.

(Amend. Compl. at ¶¶ 10, 25). In your January 14, 2011 Affidavit submitted in support of Plaintiff's emergency motion for temporary restraining order, you attest to the truth of this factual allegation.

      i.     State in full detail the factual basis for the foregoing assertion;

      ii.     State whether the Complaint, Amended Complaint, and temporary restraining order papers filed by Plaintiff in this case publicly disclosed Dr. Brandner's suspension from the AAOS;

      iii.     Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

      iv.     Identify all expert witnesses that will offer opinions on topic related to this assertion and the subject of their opinions; and

      v.     Identify all documents that support, contradict, or tend to contradict the foregoing assertion.

**Answer to Interrogatory No. 5:**

OBJECTION. The Interrogatory contains discrete subparts. Without waiving said objection, Plaintiff responds as follows:

      i.     State in full detail the factual basis for the foregoing assertion;

As a professional, Dr. Brandner relies on his reputation in the community to maintain his practice, garner new business and promote himself and his profession. He has been licensed as a doctor since 1973, is authorized to practice medicine in the states of Arizona, California, Louisiana and Nevada and maintains an impeccable reputation. Due to a degenerative spinal condition, Dr. Brandner is no longer able to perform surgeries. To supplement his lost income resulting from his disability, Dr. Brandner has used his expertise and good standing in the

community to provide medical support to the legal community (medical-legal support work is far less physically demanding than performing surgical procedures). In both his continued practice as a doctor (through his office work performed at Desert Orthopaedic Center) and his developing practice of providing medical-legal support, Dr. Brandner relies on his good name, reputation and upstanding position within the medical community.

The point was not lost on the Court as Judge Guzman noted in his order granting Plaintiff's Motion for Preliminary Injunction that "Dr. Brandner has successfully shown that his profession relies on his impeccable reputation and that a one-year suspension of his membership in the AAOS would tarnish that reputation . . . Dr. Brandner faces a striking blow to his professional reputation and the likely loss of fifty percent of his medical-legal support income. After all, who is going to hire an expert who is not a member in good standing of the organizations that govern his behavior?" Accordingly, the suspension from the AAOS would "strik[e] a blow to his professional reputation." Additionally, in the event that the AAOS were allowed to publish the results of its predetermined and procedurally deficient decision without being forced to acknowledge the striking evidence demonstrating its blatant disregard of the facts surrounding Dr. Brandner's testimony, Dr. Brandner's professional reputation (and his practice which relies on the same) would be irreparably damaged.

ii. State whether the Complaint, Amended Complaint, and temporary restraining order papers filed by Plaintiff in this case publicly disclosed Dr. Brandner's suspension from the AAOS;

The Complaint, Amended Complaint and "temporary restraining order papers" filed by Plaintiff (as well as Judge Guzman's order granting Plaintiff's Motion) publicly disclosed that the AAOS' handling of Grievance 2008-23 was a farce. Each document details the bias that

permeated the process and sets forth the necessary details and evidence to demonstrate that Dr. Brandner's testimony was truthful, scientifically correct and in accordance with the merits of the underlying case. Anyone reading said filings would have no choice but to conclude that the AAOS' decision to suspend Dr. Brandner was contrary to the overwhelming evidence and made in bad faith.

      iii.    Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

<u>See</u> witnesses identified in Plaintiff's Rule 26 Disclosure and all supplements thereto. As discovery is continuing, Plaintiff reserves the right to supplement this response.

      iv.    Identify all expert witnesses that will offer opinions on topics related to this assertion and the subject of their opinions; and

Plaintiff has not yet retained an expert witness in this matter. As discovery is continuing, Plaintiff reserves the right to supplement this response.

      v.    Identify all documents that support, contradict, or tend to contradict the foregoing assertion.

<u>See</u> documents identified in Plaintiff's Rule 26 Disclosure and all supplements thereto. As discovery is continuing, Plaintiff reserves the right to supplement this response.

**Interrogatory No. 6:** In Paragraph 23 of the Amended Complaint, you allege that:

> Dr. Brandner's medical legal practice...currently comprises in excess of twenty percent (20%) of Dr. Brandner's practice and accounts for in excess of fifty percent (50%) of his revenue.

(Amend. Compl. ¶ at 23). In your January 14, 2011 Affidavit submitted in support of Plaintiff's emergency motion for temporary restraining order, you attest to the truth of this factual allegation.

i.    State in full detail the factual basis for the foregoing assertion;

ii.   Describe "Dr. Brandner's practice," and in particular, the 80% of his practice that does not comprise Dr. Brandner's medical- legal support practice;

iii.  Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

iv.   State on an annual basis and for each year in which Dr. Brandner performed "medical-legal support" services: (a) the amount of revenue earned by Dr. Brandner from his medical practice that did not pertain to his "medical legal-support" work; and (b) the amount of revenue that is attributable to earned by "Dr. Brandner's medical-legal support practice";

v.    Define the term, "revenue," as it is used by the forgoing allegation;

vi.   Identify all expert witnesses that will offer opinions on topics related to this assertion and the subject of their opinions; and

vii.  Identify all documents that support, contradict, or tend to contradict the foregoing assertion.

**Answer to Interrogatory No. 6:**

OBJECTION. The Interrogatory contains discrete subparts. Further, this request is overly broad in that it is unlikely to lead to discoverable evidence, unduly burdensome and vague in that it requests information "for each year in which Dr. Brandner performed 'medical-legal support' services" without limiting or defining the years requested. In addition, the request seeks information that is privileged and cannot be produced under HIPAA guidelines. Without waiving said objection, Plaintiff responds as follows:

i.    State in full detail the factual basis for the foregoing assertion;

Page 37 of 52

Dr. Brandner's professional corporation, Patrick J. Brandner, M.D., P.C. is a shareholder of Desert Orthopaedic Center, an orthopaedic medical facility located in Las Vegas, Nevada. The average gross receipts Patrick J. Brandner, M.D., P.C. received for in-patient care performed at Desert Orthopaedic Center during the years 2008, 2009 and 2010 accounted for 26.7% of Patrick J. Brandner, M.D., P.C.'s "gross receipts." The average gross receipts Patrick J. Brandner, M.D., P.C., received for medical legal support was 72.2% of his P.C.'s gross receipts during that same time period. Thus, his medical legal support practice generated in excess of 50% of his revenue for the past three years.

    ii.    Describe "Dr. Brandner's practice," and in particular, the 80% of his practice that does not comprise Dr. Brandner's medical- legal support practice;

Dr. Brandner's professional corporation, Patrick J. Brandner, M.D., P.C. is a shareholder of Desert Orthopaedic Center an orthopaedic medical facility in located Las Vegas, Nevada. Through his P.C., Dr. Brandner performs in-patient treatment at Desert Orthopaedic Center related to arthritis and joint treatment, foot and hand problems, musculoskeletal treatment, spine and sports medicine treatment and general orthopaedics.

    ii.    Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

Patrick J. Brandner, M.D.
c/o Aaron R. Maurice, Esq.
WOODS ERICKSON WHITAKER
& MAURICE LLP
1349 West Galleria Drive, Suite 200
Henderson, Nevada 89014
(702) 433-9696

Kelly Brandner
c/o Aaron R. Maurice, Esq.
WOODS ERICKSON WHITAKER
& MAURICE LLP

1349 West Galleria Drive, Suite 200
Henderson, Nevada 89014
(702) 433-9696

PMK
Desert Orthopaedic Center
2800 E. Desert Inn Road Ste. 100
Las Vegas, Nevada 89121
(702) 731-1616

Sandra Duggan
1792 Puerto Way
Henderson, NV 89012
(702) 263-9122

iv. State on an annual basis and for each year in which Dr. Brandner performed "medical-legal support" services: (a) the amount of revenue earned by Dr. Brandner from his medical practice that did not pertain to his "medical legal-support" work; and (b) the amount of revenue that is attributable to earned by "Dr. Brandner's medical-legal support practice";

(a) Medical practice "revenue" unrelated to medical legal support

2008: $238,981.00

2009: $178,230.45

2010: $197,582.55

Total of Three Years Gross Receipts: $614,794.00

(b) Total of revenue attributable to medical-legal support

2008: $703,105.77

2009: $485,086.39

2010: $472,758.11

Total of Three Years Gross Receipts: $1,660,950.27

vi. Define the term, "revenue," as it is used by the forgoing allegation;

Gross Receipts deposited during the year in question to Patrick J. Brandner, M.D., P.C.

vi.   Identify all expert witnesses that will offer opinions on topics related to this assertion and the subject of their opinions; and

Plaintiff has not yet retained an expert witness in this matter. As discovery is continuing, Plaintiff reserves the right to supplement this response.

vii.  Identify all documents that support, contradict, or tend to contradict the foregoing assertion.

See response to requests for production of documents, response 13 and 15.

**Interrogatory No. 7:** Plaintiff's Rule 26(a)(1)(A)(iii) disclosure states that he is seeking attorneys' fees and costs.

i.   State in full detail all the facts supporting Plaintiff's entitlement to recovery of all attorneys' fees and costs;

ii.  State in full detail the legal basis for Plaintiff's request for attorneys' fees and costs;

iii. Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict the facts identified in your response to Interrogatory No. 7(i);

iv.  Identify all expert witnesses that will offer opinions on topic related to this facts identified in your response to Interrogatory No. 7(i) and the subject of their opinions; and

vi.  Identify all documents that support, contradict, or tend to contradict the facts identified in your response to Interrogatory No. 7(i).

**Answer to Interrogatory No. 7:**

OBJECTION. The Interrogatory contains discrete subparts. Without waiving said objection, Plaintiff responds as follows:

    i.    State in full detail all the facts supporting Plaintiff's entitlement to recovery of all attorneys' fees and costs;

See Plaintiff's Amended complaint and responses to interrogatories number 1, 2 and 3. As discovery is ongoing Plaintiff reserves the right to supplement this response and amend his Complaint should additional claims be discovered during discovery.

    ii.    State in full detail the legal basis for Plaintiff's request for attorneys' fees and costs;

OBJECTION. This question is seeking a legal conclusion outside the scope of discovery. As discovery is ongoing Plaintiff reserves the right to supplement this response and amend his Complaint should additional claims be discovered during discovery.

    iii.    Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict the facts identified in your response to Interrogatory No. 7(i);

See witnesses identified in Plaintiff's Rule 26 Disclosure and all supplements thereto. As discovery is continuing, Plaintiff reserves the right to supplement this response.

    iv.    Identify all expert witnesses that will offer opinions on topic related to this facts identified in your response to Interrogatory No. 7(i) and the subject of their opinions; and

Plaintiff has not yet retained an expert witness in this matter. As discovery is continuing, Plaintiff reserves the right to supplement this response.

vii.     Identify all documents that support, contradict, or tend to contradict the facts identified in your response to Interrogatory No. 7(i).

See documents identified in Plaintiff's Rule 26 Disclosure and all supplements thereto. As discovery is continuing, Plaintiff reserves the right to supplement this response.

**Interrogatory No. 8:**  Provide a statement of the compensation paid or to be paid for Dr. Brandner's medical-legal support practice medical-legal support services and:

i.     List all cases in which Plaintiff has testified as an expert at trial or by deposition, and provide amounts of compensation; and

ii.     List all cases in which Plaintiff conducted an independent medical exam, or conducted a record review, and provide amounts of compensation.

**Answer to Interrogatory No. 8:**

OBJECTION.  The Interrogatory contains discrete subparts.  Further, this request is overly broad in that it is unlikely to lead to discoverable evidence, unduly burdensome and vague in that it requests information for "all cases in which Plaintiff has testified as an expert at trial or by deposition" and for "all cases in which Plaintiff conducted an independent medical exam, or conducted a record review" without limiting or defining the years requested.  In addition, the request seeks information that is privileged and cannot be produced under HIPAA guidelines. Without waiving said objection, Plaintiff responds as follows:

i.     List all cases in which Plaintiff has testified as an expert at trial or by deposition, and provide amounts of compensation; and

Total of revenue attributable to medical-legal support for the three years prior to this action are:

2008: $703,105.77

2009: $485,086.39

2010: $472,758.11

Plaintiff's response to Defendants' requests for production of documents includes redacted Quick Report Summaries of income for Patrick J. Brandner M.D., P.C. for the years 2008, 2009 and 2010. To comply with HIPAA, the documents have been produced in redacted form to de-identify patient information. The subcategories of items contained on the reports are:

Arbitration

Assment Rec (Assessment of Records)

Depo (Deposition)

Depo – Canceled (Cancelled depositions)

Depo - Pre (Pre-deposition meetings)

Depo Addtl Chgs (Additional charges for deposition services)

Depo preparation (Preparation for deposition)

Depo Rev (Review of depositions)

Dict (Dictation)

Dict prolonged complex (Prolonged dictations complex case)

Dict prolonged excess (Prolonged dictations excessive records)

DOC (Desert Orthopaedic Center)

Extensive Int/Exam (Extensive interview/examination)

IME (Independent Medical Examinations)

IME – NO SHOW (Independent Medical Examinations, patient did not appear)

Lit Rev (Literature review)

Med Rec Copy (Medical records copies)

Mtg Attny (Meeting with attorneys)

Paid – (Partial Payments)

Phone Conf (Phone Conferences)

Pre-payment (prepayment for services)

Print Charge (printing charges)

Prolonged Exam (prolonged examination complex case)

Rev Depo (Review of depositions)

Rev of Insurance (Review of insurance)

Review of Legal (Review of legal documents)

Review of outside films (Review of outside films (i.e., x-rays, MRIs etc.))

RR Abstract (Review of records creation of abstract)

RR Excess (Review of records creation of abstract excessive records)

Sort/Org (Sorting and organization of medical records)

Sort/Org excess (Sorting and organization of medical records excessive records)

Stat Fee (rushed service fees)

Trans (transcription fee)

Travel (travel costs)

Trial (trial testimony)

Trial Pre (pre-trial meetings)

Trial Prep (trial preparation)

Video Rev (video review)

Write Off (written off invoice)

X-ray (x-rays)

Subject to the above, the documents speak for themselves. As discovery is ongoing, Plaintiff reserves the right to supplement this response.

    ii.    List all cases in which Plaintiff conducted an independent medical exam, or conducted a record review, and provide amounts of compensation.

See response to Interrogatory 8(i) above.

**Interrogatory No. 9:** In Plaintiff's Reply in Support of its Motion for Temporary Restraining Order and Injunctive Relief, you assert that:

> If the AAOS ruling is published, regardless of the outcome of this litigation Dr. Brandner's ability to provide medical-legal support will be destroyed.

(Doc, 12 at p. 13)

    i.    State in full detail the factual basis for the foregoing assertion;

    ii.    Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

    iii.    Identify all expert witnesses that will offer opinions on topics related to this assertion and the subject of their opinions; and

    iii.    Identify all documents that support, contradict, or tent to contradict the foregoing assertion.

**Answer to Interrogatory No. 9:**

OBJECTION. The Interrogatory contains discrete subparts. Without waiving said objection, Plaintiff responds as follows:

    i.    State in full detail the factual basis for the foregoing assertion;

    See response to interrogatory 5(i) above.

    ii.    Identify all persons who have, or claim to have, knowledge which supports, contradicts, or tends to contradict this assertion;

See witnesses identified in Plaintiff's Rule 26 Disclosure and all supplements thereto. As discovery is continuing, Plaintiff reserves the right to supplement this response.

iv.    Identify all expert witnesses that will offer opinions on topics related to this assertion and the subject of their opinions; and

Plaintiff has not yet retained an expert witness in this matter. As discovery is continuing, Plaintiff reserves the right to supplement this response.

v.    Identify all documents that support, contradict, or tent to contradict the foregoing assertion.

See documents identified in Plaintiff's Rule 26 Disclosure and all supplements thereto. As discovery is continuing, Plaintiff reserves the right to supplement this response.

## DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION

**Request for Production No. 1:** Produce all documents relied upon or referred to in preparing your answers to Defendants' First Set of Interrogatories.

**Answer to Request for Production No. 1:**

See Response to Request for Production of Documents Bates Number Brandner 00001 - 01003. As discovery is ongoing Plaintiff reserves the right to supplement this response.

**Request for Production No. 2:** Produce all documents relied upon or referred to in preparing your answers to Defendants' First Set of Requests for Admission.

**Answer to Request for Production No. 2:**

See Response to Request for Production of Documents Bates Number Brandner 00001 - 01003. As discovery is ongoing Plaintiff reserves the right to supplement this response.

**Request for Production No. 3:** Produce all documents identified by your answers to Defendants; First Set of Interrogatories.

**Answer to Request for Production No. 3:**

See Response to Request for Production of Documents Bates Number Brandner 00001 - 01003. As discovery is ongoing Plaintiff reserves the right to supplement this response.

**Request for Production No. 4:** Produce all documents identified by your answers to Defendants' First Set of Request for Admission.

**Answer to Request for Production No. 4:**

See Response to Request for Production of Documents Bates Number Brandner 00001 - 01003. As discovery is ongoing Plaintiff reserves the right to supplement this response.

**Request for Production No. 5:** Produce all documents relied upon or referred to in preparing Plaintiff's Rule 26(a)(1) initial Disclosure.

**Answer to Request for Production No. 5:**

See Response to Request for Production of Documents Bates Number Brandner 00001 - 00776. As discovery is ongoing Plaintiff reserves the right to supplement this response.

**Request for Production No. 6:** Produce all documents identified in Plaintiff's Rule 26(a)(1) initial disclosure.

**Answer to Request for Production No. 6:**

See Response to Request for Production of Documents Bates Number Brandner 00001 - 00776. As discovery is ongoing Plaintiff reserves the right to supplement this response.

**Request for Production No. 7:** Produce all documents relating to the allegations of the Amended Complaint.

**Answer to Request for Production No. 7:**

See Response to Request for Production of Documents Bates Number Brandner 00001 - 00776. As discovery is ongoing Plaintiff reserves the right to supplement this response.

**Request for Production No. 8:** Produce all documents relating to Plaintiff's "medical-legal practice," including, but not limited to: communications between Plaintiff and any current, former, or potential clients of his "medical-legal practice"; bills, invoices, timekeeping records, and other documents relating to revenue billed and/or received by Plaintiff in the course of his "medical-legal practice"; all transcripts of deposition, trial, or any other sworn testimony given by Plaintiff in the course of his "medical-legal practice"; and all written decisions, orders, rulings, or memoranda relating to the admissibility of any expert testimony provided by Plaintiff during the course of his "medical-legal practice."

**Answer to Request for Production No. 8:**

OBJECTION. The request for production is overly broad in that it is unlikely to lead to discoverable evidence, unduly burdensome and vague in that it requests information for any past, current or future potential client of Plaintiff's medical-legal without limiting or defining the years requested. In addition, the request seeks information that is privileged and cannot be produced under HIPAA guidelines. Without waiving said objection, Plaintiff responds as follows: See Response to Request for Production of Documents Bates Number Brandner 00777 and 00848 – 01003.

**Request for Production No. 9:** Produce Plaintiff's federal and state tax returns for each year in which he engaged in his "medical-legal practice."

**Answer to Request for Production No. 9:**

OBJECTION. The request for production is overly broad in that it is unlikely to lead to discoverable evidence, unduly burdensome and vague in that it requests information without limiting or defining the years requested. Without waiving said objection, Plaintiff responds as

follows: <u>See</u> Response to Request for Production of Documents Bates Number Brandner 00778–00847.

**Request for Production No. 10:** Produce all documents relating to Plaintiff's allegation that the AAOS failed to act in accordance with its own constitution and bylaws in connections with Grievance 2008-23.

**Answer to Request for Production No. 10:**

    <u>See</u> Response to Request for Production of Documents Bates Number Brandner 00001 - 00776. As discovery is ongoing Plaintiff reserves the right to supplement this response.

**Request for Production No. 11:** Produce all documents relating to Plaintiff's allegation that the AAOS was influenced by bias, prejudice, or lacked good faith in connection with Grievance 2008-23.

**Answer to Request for Production No. 11:**

    <u>See</u> Response to Request for Production of Documents Bates Number Brandner 00001 - 00776. As discovery is ongoing Plaintiff reserves the right to supplement this response.

**Request for Production No. 12:** Produce all documents relating to Plaintiff's allegation that the AAOS violated due process in its handling of Grievance 2008-23

**Answer to Request for Production No. 12:**

    <u>See</u> Response to Request for Production of Documents Bates Number Brandner 00001 - 00776. As discovery is ongoing Plaintiff reserves the right to supplement this response.

**Request for Production No. 13:** Produce all documents relating to Plaintiff's allegations that in excess of fifty percent of Dr. Brandner's revenue is derived from medical-legal support (independent medical examinations, records reviews, expert testimony).

**Answer to Request for Production No. 13:**

OBJECTION. The request for production is overly broad in that it is unlikely to leade to discoverable evidence, unduly burdensome and vague in that it requests information without limiting or defining the years requested. In addition, the request seeks information that is privileged and cannot be produced under HIPAA guidelines. Without waiving said objection, Plaintiff responds as follows: See Response to Request for Production of Documents Bates Number Brandner 00777 and 00848 – 01003.

**Request for Production No. 14:** Produce all documents relating to Plaintiff's allegation that the public disclosure of Dr. Brandner's suspension would significantly damage Dr. Brandner's professional reputation.

**Answer to Request for Production No. 14:**

See Response to Request for Production of Documents Bates Number Brandner 00001 – 00776. As discovery is ongoing, Plaintiff reserves the right to supplement this response.

**Request for Production No. 15:** Produce all documents relating to Plaintiff's allegation that Dr. Brandner's medical-legal practice currently comprises in excess of twenty percent (20%) of Dr. Brandner's practice and accounts for in excess of fifty percent (50%) of his revenue.

**Answer to Request for Production No. 15:**

See Response to Request for Production of Documents Bates Number Brandner 00777 and 00848 – 01003. As discovery is ongoing Plaintiff reserves the right to supplement this response.

**Request for Production No. 16:** Produce all written statements given by you, another party to this litigation, a witness, or anyone else relating to the allegations in your complaint.

**Answer to Request for Production No. 16:**

See Response to Request for Production of Documents Bates Number Brandner 00001 - 00776. As discovery is ongoing Plaintiff reserves the right to supplement this response.

**Request for Production No. 17:** Produce all tangible materials you intend to introduce into evidence at the trial of this matter.

**Answer to Request for Production No. 17:**

See Response to Request for Production of Documents Bates Number Brandner 00001 - 00776. As discovery is ongoing Plaintiff reserves the right to supplement this response.

Dated: April 25, 2011                              Respectfully Submitted,


/s/ Aaron R. Maurice
Ryan F. Stephan, Esq.
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
312-233-1550
www.stephanzouras.com

Aaron R. Maurice, Esq.
WOODS ERICKSON WHITAKER
& MAURICE LLP
1349 West Galleria Drive, Suite 200
Henderson, Nevada 89014
www.woodserickson.com
**ATTORNEYS FOR PLAINTIFFS**

**VERIFICATION**

STATE OF NEVADA    )
                      ) ss:
COUNTY OF CLARK    )

Patrick J. Brandner, M.D., being duly sworn according to law, deposes and says:

That I am the Plaintiff in the above-captioned litigation; I have read the foregoing; PLAINTIFF'S ANSWERS TO DEFENDANTS' COMBINED FIRST SET OF INTERROGATORIES AND REQUESTS FOR THE PRODUCTION OF DOCUMENTS, I know the contents thereof and that the same are true to the best of my knowledge, except as to the matters therein set forth upon information and belief or identified as being "likely" true, and as to those matters, I believe them to be true.

                                           _(see verification attached)_____
                                           Patrick J. Brandner, M.D.

SUBSCRIBED AND SWORN TO before me
this _____ day of _____, 2011.

_____
NOTARY PUBLIC in and
for said County and State

Objections submitted by:
/s/ Aaron R. Maurice
Ryan F. Stephan, Esq.
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
312-233-1550
www.stephanzouras.com
Aaron R. Maurice, Esq.
WOODS ERICKSON WHITAKER
& MAURICE LLP
1349 West Galleria Drive, Suite 200
Henderson, Nevada 89014
www.woodserickson.com
**ATTORNEYS FOR PLAINTIFFS**

## VERIFICATION

STATE OF NEVADA          )
                         ) ss:
COUNTY OF CLARK          )

Patrick J. Brandner, M.D., being duly sworn according to law, deposes and says:

That I am the Plaintiff in the above-captioned litigation; I have read the foregoing; PLAINTIFF'S ANSWERS TO DEFENDANTS' COMBINED FIRST SET OF INTERROGATORIES AND REQUESTS FOR THE PRODUCTION OF DOCUMENTS, I know the contents thereof and that the same are true to the best of my knowledge, except as to the matters therein set forth upon information and belief or identified as being "likely" true, and as to those matters, I believe them to be true.

_Patrick Brandner MD_

Patrick J. Brandner, M.D.

SUBSCRIBED AND SWORN TO before me this _25_ day of _April_, 2011.

_Isabel Grijalva_

NOTARY PUBLIC in and for said County and State  NV / Clark

ISABEL GRIJALVA
Notary Public State of Nevada
No. 02-75239-1
My appl. exp. April 24, 2014

Objections submitted by:

Ryan F. Stephan, Esq.
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
312-233-1550
www.stephanzouras.com
Aaron R. Maurice, Esq.
WOODS ERICKSON WHITAKER
& MAURICE LLP
1349 West Galleria Drive, Suite 200
Henderson, Nevada 89014
www.woodserickson.com
ATTORNEYS FOR PLAINTIFFS