# EXHIBIT "37"

Multi-Page™

AMERICAN ASSOCIATION OF ORTHOPAEDIC SURGEONS
BOARD OF DIRECTORS MEETING
AAOS PROFESSIONAL COMPLIANCE PROGRAM
GRIEVANCE HEARING

IN RE THE MATTER OF:  )
                      )
KIPLING P. SHARPE, M.D.,  )
                      )
        Grievant,     )
                      )
    and               )    2008-23
                      )
PATRICK J. BRANDNER, M.D.,  )
                      )
        Respondent.   )

Report of Proceedings, taken before
Patricia S. Mann, CSR, RPR, License No. 084-001853,
a notary public in and for the County of Cook and
State of Illinois, at O'Hare Hyatt Hotel, 9300 West
Bryn Mawr, O'Hare Ballroom, Rosemont, Illinois, on
Saturday, June 19, 2010, at the hour of 10:25
o'clock a.m.

Reported for
LAKE SHORE REPORTING SERVICE, by:
Patricia S. Mann, CSR, RPR.
License No. 084-001853

Page 1

AAOS STAFF:

        Karen L. Hackett, CAE, RACHE, CEO
        Richard N. Peterson, J.D., General
        Counsel
        Melissa Young, J.D., Assistant
        General Counsel

COMMITTEE MEMBERS:

        Murray J. Goodman, M.D.,
            Committee on Professionalism
        Richard D. Schmidt, M.D., Judiciary
            Committee

RESPONDENT:

        Patrick J. Brandner, M.D.
        Aaron R. Maurice, J.D.

RECUSED:

        Fred C. Redfern, M.D.

AAOS OUTSIDE COUNSEL:

        Russell M. Pelton, J.D.

NOT IN ATTENDANCE:

        Daniel W. White, M.D.
        Frederick M. Azar, M.D.

        * * * * *

Page 2

AAOS BOARD OF DIRECTORS:

        John J. Callaghan, M.D., President

        Daniel J. Berry, M.D., First Vice
            President

        John R. Tongue, M.D., Second Vice
            President

        Richard J. Barry, M.D., BOC Chair

        David D. Teuscher, M.D., BOC
            Chair-Elect

        M. Bradford Henley, M.D., BOS Chair

        Jeffrey O. Anglen, M.D., BOS Chair-
            Elect

        Gregory A. Mencio, M.D., BOS
            Secretary

        Joseph D. Zuckerman, M.D., Past
            President

        Michael L. Parks, M.D., Member-at-
            Large

        Kevin P. Black, M.D., Member-at-
            Large

        Paul Tornetta, III, M.D., Member-
            at-Large

        Zachary Wilhoit, M.S., MBA, Lay
            Member

Page 2

MR. PELTON: Let the record reflect that this is a meeting of the Board of Directors of the American Association of Orthopaedic Surgeons in Rosemont, Illinois, to hear recommendations regarding charges of unprofessional conduct brought by Dr. Kipling Sharpe against Dr. Patrick Brandner. Specifically, Dr. Sharpe alleged that Dr. Brandner violated Mandatory Standards 3, 4, 6, 7 and 8 of the Standards of Professionalism on Orthopaedic Expert Witness Testimony, case number 2008-23.

I remind all present that these discussions, Board deliberations and votes in this matter are confidential matters.

Several months ago, the AAOS' Office of General Counsel sent each voting member of the Board a potential conflict of interest memo regarding this case, citing the names of the individuals involved, their respective locations, medical schools, residencies, fellowships and years of admission to the American Board and the AAOS. Dr. Fred Redfern contacted the AAOS to indicate a potential conflict of interest and is recused from this matter. Neither party objects to the

Page 4

Multi-Page™

participation of any other member of the Board.

Upon further review, are there any additional potential conflicts to be noted at this time by any other member of the Board? Hearing none, thank you.

Let the record reflect that Dr. Redfern as well as Dr. Daniel White and Fred Azar will not be participating in these proceedings and that there will be thirteen voting members of the Board present.

In addition to the members of the Board present today also is Dr. Richard Schmidt, representing the Judiciary Committee; Dr. Murray Goodman, representing the Committee on Professionalism; Karen Hackett, Chief Executive Officer of the AAOS; Richard Peterson, General Counsel; Melissa Young, Assistant General Counsel; and Rosalind Giulietti, Professional Compliance Program Coordinator. I'm Russell Pelton, outside counsel for the AAOS. Our Court Reporter today is Patricia Mann of Lake Shore Reporting Service, a copy of the official transcript of this proceeding will be retained in the Office of General Counsel.

Neither Dr. Sharpe nor his attorney are

Page 5

here today, but they have submitted a written statement in lieu of personal appearance which will be read into the record by Rosalind Giulietti of the AAOS -- I stand corrected, it will be read into the record by Melissa Young. Dr. Brandner is here today along with his attorney, Aaron Maurice. They will be given the opportunity to address the Board in due course.

Let me summarize the case of Sharpe versus Brandner. On October 21, 2008, Dr. Kipling Sharpe of Gilbert, Arizona, filed a grievance alleging violations of Mandatory Standards 3, 4, 6, 7 and 8 of the Standards of Professionalism on Orthopaedics Expert Witness Testimony against Dr. Patrick Brandner of Las Vegas, Nevada. Dr. Brandner responded to and denied those allegations.

The Committee on Professionalism made a prima facie preliminary determination that a hearing was warranted on Dr. Sharpe's charges and conducted a grievance hearing on October 2, 2009, at which Dr. Sharpe, Dr. Brandner and a witness on behalf of Dr. Brandner were present. At the conclusion of the hearing, the COP Hearing Panel issued its report and recommendation that Dr.

Page 6

Brandner had violated Standards 3, 4 and 7, but not Standards 6, 4 or 8. The Committee recommended that Dr. Brandner be suspended from the AAOS for one year.

Dr. Brandner filed an appeal with the AAOS Judiciary Committee which heard the matter on March 12, 2010, in New Orleans, Louisiana. Dr. Brandner and his attorney as well as Dr. Sharpe and his attorney were present for the appeal hearing. At the conclusion of the hearing, the Judiciary Committee issued its report in which it concluded that the COP Hearing Panel had followed due process in this grievance, an issue raised by Dr. Brandner. Furthermore, the Judiciary Committee unanimously agreed with the COP that Dr. Brandner had violated Standards 3 and 7, but by majority vote, did not find him in violation of Standard Number 7 -- I misstated, they voted he had violated Standards 3 and 4, but by majority vote, found that he did not violate the Standard 7. Nonetheless, the Judiciary Committee unanimously concurred with the COP's recommendation that Dr. Brandner be suspended for one year.

Dr. Goodman, Chair of the Committee

Page 7

on Professionalism, will summarize the COP's recommendation, followed by Dr. Schmidt, Chair of the Judiciary Committee who will summarize the Judiciary Committee's findings and conclusions. Dr. Brandner and his attorney will then be given ten minutes to address the Board, followed by Miss Young reading Dr. Sharpe's written submission.

At the conclusion of all presentations, the Board members will have the opportunity to ask any clarifying questions of any of the speakers. So that the Court Reporter may accurately reflect this part of the proceeding, we request that you clearly state your name before asking your questions. After the presentations, any clarifying questions, the Board will go into closed Executive Session. Dr. Goodman.

DR. GOODMAN: Thank you. Kipling P. Sharpe, M.D., an AAOS fellow filed a grievance against Patrick J. Brandner, M.D., also an AAOS fellow, on October 21, 2008, as a result of statements made by Dr. Brandner during deposition testimony on August 5th, 2005, as well as trial testimony on April 29, 2008.

Page 8

Multi-Page™

The statements were made in reference to a medical liability lawsuit filed alleging that the defendant orthopaedist, Dr. Sharpe, was negligent in his performance of an unnecessary right tibial corrective osteotomy and that he failed to adequately advise the patient of potential risks and complications from the surgical procedure.

The jury returned a defense verdict, finding that Dr. Sharpe was not negligent in his care of the plaintiff, and on December 3rd, 2008, the court entered judgment in favor of the defendant and ordered all claims dismissed with prejudice.

The grievance report filed by Dr. Sharpe alleged violations by Dr. Brandner of AAOS Standards of Professionalism on Expert Witness Testimony. Following a prima facie hearing, the Committee on Professionalism determined that there were potential violations of the SOP.

The Committee on Professionalism met at the Hyatt Rosemont on October 2nd, 2009, to hear both parties' arguments. Both Dr. Sharpe and Dr. Brandner were present for the hearing, Dr.

Page 9

treating with Dr. Sharpe until May of 2004, almost two years after the surgery. The patient continued to demonstrate a foot drop, but returned to a number of vigorous activities.

According to the medical record, Dr. Sharpe had specifically warned about the risk of nerve injury and the patient confirmed in deposition that Dr. Sharpe had discussed with him that he might end up with a foot drop and that both the patient and his mother understood the specific possibility and cause of that potential complication.

Nevertheless, in his deposition testimony, Dr. Brandner stated that not specifically mentioning the words, quote, peroneal nerve, end quote, was a departure from the standard of care. Dr. Brandner also testified that the fracture had a potential to remodel and that it was Dr. Sharpe's responsibility to discuss this with the patient as part of the informed consent process.

At the COP hearing, Dr. Sharpe maintained that the possibility of nerve damage was adequately disclosed as shown by his office notes and the depositions of the patient and his mother.

Page 1:

Brandner was accompanied by Dr. James Greenwald as his witness. I was a member of that hearing panel which was chaired by Dr. Richard E. Strain, Jr.

The written grievance report claimed violations of Mandatory Standards Number 3, 4, 6, 7 and 8 of the expert witness SOP. This orthopaedic case involved a fifteen-year-old skeletally mature male who developed a peroneal nerve palsy following a corrective osteotomy for a 39-degree deformity of the tibia following a fracture. The patient had been treated nonoperatively by another orthopaedic surgeon for six months prior to presenting to Dr. Sharpe.

The surgery was performed three months after the initial presentation to Dr. Sharpe. Prior to the surgery, two other orthopaedic surgeons agreed that osteotomy was necessary, although the original treating surgeon continued to recommend nonoperative treatment.

The operation was performed in June, 2002. It was complicated by a peroneal nerve palsy and a draining hematoma. A foot drop was evident on the first post-operative day. The patient continued

Page 10

The notes he stated are a summary and not a verbatim transcription of everything that transpired in the visit. Dr. Sharpe also stated that Dr. Brandner testified that there was a possibility that this young man with closed physes could remodel this significant deformity and he testified that the growth plates were open. Dr. Brandner, however, could not recall specifically the dates of the X-rays which he had reviewed.

The COP Hearing Panel unanimously found that Dr. Brandner did not testify about the care rendered in light of generally accepted standards and because he condemned performance that fell within the generally accepted practice standards, Dr. Brandner was in violation of Mandatory Standards Number 3 and 4.

The COP Hearing Panel also found that Dr. Brandner was in violation of Mandatory Standard Number 7 because his testimony that the fracture had the potential to remodel was not scientifically correct. For these violations, the Committee on Professionalism recommended that Dr. Brandner have his fellowship in the AAOS suspended for one year.

Page 1:

BRANDNER 00620

Multi-Page™

The recommendation of this COP Hearing Panel was appealed to the Judiciary Committee on the basis of lack of due process by the COP and the findings were contrary -- and that the findings were contrary to the clear weight of the evidence.

The Judiciary Committee found no lack of due process and felt that the clear weight of the evidence supported the disciplinary recommendations of the Committee on Professionalism against Dr. Brandner. Thank you.

MR. PELTON: Dr. Schmidt.

DR. SCHMIDT: The Judiciary Committee met on March 12th, 2010, in New Orleans. I was chair of that meeting and appeal.

The results of the appeal, the Committee unanimously agreed that the AAOS Committee on Professionalism and the grievance panel hearing in all respects adhered to the AAOS Professional Compliance Program procedures and afforded both parties due process.

The Judiciary Committee acknowledged the delay in the issuance of the Committee on Professionalism report and recommendation. However,

Page 13

pursuant to Section 3D of the AAOS Professional Compliance Program Grievance Procedures, the AAOS has sole discretion to extend the time limitation; therefore, the Judiciary Committee acknowledged that there were -- that there were materials, specifically a second set of depositions of the plaintiff and his mother, that were not submitted by the grievant. These documents have been reviewed by the Judiciary Committee and found to be irrelevant as they do not remove the basis for the findings by the Committee on Professionalism.

Number two, unanimously affirmed that the COP Hearing Panel's findings that Dr. Brandner violated Mandatory Standards 3 and 4, the Judiciary Committee acknowledged that there is a discrepancy between the initial and second set of depositions of the patient and the mother. The Judiciary Committee, however, was not persuaded that the change in testimony given in these later depositions is evidence that Dr. Sharpe failed to inform the patient of peroneal nerve injury. Moreover, the question of whether a violation of the Standards of Professionalism exist is not that he chose to base his opinion on contradictory

Page 14

evidence from the patient and treating physician, but the fact that he chose one version of the patient's deposition over another.

This choice took Dr. Brandner out of the realm of objectivity, counseling on the standard of care and made him condemning the care provided by Dr. Sharpe. While Dr. Brandner's attorney theorized that his client did not contend Dr. Sharpe's performance or testify at trial his actions fell below the standard of care, the Judiciary Committee found otherwise.

Dr. Brandner's deposition of August 5th, 2005, specifically judged Dr. Sharpe to have fallen below the standard of care because certain key words were not present in Dr. Sharpe's notes to document informed consent. In doing so, Dr. Brandner condemned Dr. Sharpe's performance by disregarding the generally accepted standard.

The AAOS Mandatory Standards of Professionalism applied equally to expert opinion given in a deposition or trial provided for attorneys, litigants, administrative agencies or the judiciary in the context of the administrative,

Page 15

civil or criminal matters and include written expert opinion as well as sworn testimony.

Regardless of whether Dr. Brandner's condemning deposition testimony was used at trial, the fact that he gave a condemning expert witness opinion places him in violation of Mandatory Standards 3 and 4.

Number three, by majority vote, the Judiciary Committee did not find Dr. Brandner in violation of Mandatory Standard Number 7, the Judiciary Committee was not in agreement with the COP Hearing Panel's findings, specifically finding that there was insufficient evidence to support a violation of Standard 7. The Judiciary found that Dr. Brandner displayed sufficient knowledge and experience as to the appropriate standard of care and available scientific evidence for the proximal tibial osteotomy. Furthermore, the Judiciary Committee concluded that the accuracy of Dr. Brandner's testimony on the issue of remodeling could not be determined due to the absence of records, specifically the April 22nd, 2002, X-ray which by all accounts is no longer available.

Number four, unanimously affirmed

Page 16

Page 13 - Page 16          Lake Shore Reporting 312-782-9833

BRANDNER 00621

Multi-Page™

that the COP Hearing Panel's findings that Dr. Brandner did not violate Standards 6 and 8 based on the reasons cited in the COP Hearing Panel's report of December 10th, 2010.

As a result, the Judiciary Committee found that Dr. Brandner violated Standards Numbers 3 and 4, but did not violate Mandatory Standards 6, 7 and 8. Notwithstanding, the Judiciary Committee determined that Dr. Brandner's acts were serious violations of Standards 3 and 4 and unanimously concurred with the Hearing Panel's recommendation to the AAOS Board of Directors that Patrick J. Brandner have his fellowship in the Academy of Orthopaedic Surgery suspended for one year because of unprofessional conduct in the performance of expert witness testimony.

MR. PELTON: Thank you, Dr. Schmidt. Dr. Brandner, you and Mr. Maurice have ten minutes to address the Board.

MR. MAURICE: Mr. Pelton, would it be possible to have the statement of the grievant read into the record first, it would seem that as a respondent, we would have the opportunity to go last, it just seems logical.

Page 17

MR. PELTON: Do you have any problem with it?

DR. CALLAGHAN: No, no problem with it.

MS. YOUNG: Respected Board members, I regret that I am not able to be with you in person. It was my intention to be there. My wife had surgery this week and with five young children at home, I could not leave town this weekend. It was not feasible to reschedule her surgery and she encouraged me to be there with you, but in the end, I couldn't leave her. I ask your pardon and hope you will understand. I am committed to seeing through the grievance I filed and stand behind it. I appreciate the time and effort Committee and Board members have put into the evaluation of this grievance, sincerely, Kipling P. Sharpe, M.D.

This will constitute Dr. Kipling Sharpe's written statement in anticipation of the Board of Directors' consideration of this grievance on June 19th, 2010. It is intended to briefly address the Judiciary Committee's appeal hearing report to the Board of Directors.

Dr. Sharpe appeared in person with Counsel for the appeal hearing on March 12th, 2010.

Page 18

He did so because he takes this grievance seriously and because Dr. Brandner made threats against AAOS and him in written appeal letters dated December 29th, 2009, and February 24th, 2010. Although he believed them irrelevant to the grievance, Dr. Sharpe advised the Judiciary Committee he had no objection to it considering the new materials submitted by Dr. Sharpe. See the transcript of proceedings March 12, 2010, page 24, line 14, and page 27, line 3.

The Committee considered the new materials submitted by Dr. Brandner. It agreed they were irrelevant. See the appeal hearing report to the Board of Directors, discussion and summary, April 21, 2010, pages seven and eight, items one and two.

Judiciary Committee findings, number one, due process. The Judiciary Committee correctly found Dr. Brandner was afforded due process. Although not required to do so, it considered all of the new materials and arguments offered by Dr. Brandner. Again, Dr. Sharpe made it clear he had no objection to the Judiciary Committee considering that information.

Page 19

Number two, Dr. Brandner's violation of Mandatory Standards Number 3 and 4. The Judiciary Committee correctly found Dr. Brandner had violated Standards Number 3 and 4. The deposition testimony which Dr. Brandner reviewed before agreeing to be an expert witness against Dr. Sharpe was the following: The patient's taken on January 29, 2004, question, "Before you had the surgery, did Dr. Sharpe ever discuss with you or did anyone discuss with you you might end up with a foot drop?" Answer, "Yes, he told me all the things that could happen, I would -- it could have nerve damage and he said all the things. He even mentioned death. The -- we had an anesthesiologist and there could be accidents and stuff, there was a lot of things."

The patient's mother, taken on January 29th, 2004, question, "What do you mean by foot drop?" Answer, "There are -- there are nerves that control the flex in a foot and because the bone had been twisted and the -- there was a callus on it, it had put pressure on those nerves. And Dr. Sharpe had said that when he moves it back into alignment and corrects all that, that those

Page 20

Multi-Page™

particular nerves might be very stretched and might be damaged because of that and that's what happened."

Question, "One thing I forgot, I swear to you it was here and I forgot to ask. Is there any doubt in your mind that the nerve injury occurred during Dr. Sharpe's surgery?" Answer, the witness, "I think it happened because the leg had to be rebroken and I think that it happened because it -- everything had to be moved around."

Question, "Okay. Did you talk to Dr. Sharpe about it?" Answer, "He had warned us prior to that -- you know, movement of that bone when he had to put it back in place could cause various things, he went through a list of many things."

Dr. Sharpe's, taken on May 19th, 2004. Question, "One of the issues you discuss in the informed content discussion is nerve injury, correct?" Answer, "Yes." Question, "And in general, you tell the patient even in the hands of the best surgeon, certain adverse outcomes can occur and you have to be aware of them, correct?" Answer, "Yes." Question, "What sort of nerve injury can

Page 21

occur even when you do the best job possible?" Answer, the witness, "Well, I was specifically concerned in this case about the risk of peroneal nerve injury in correcting the valgus deformity, I did discuss that with him." Question, "Did you discuss the peroneal nerve specifically with him?" Answer, "Yes."

In addition, Dr. Brandner had copies of the April 11th, 2002, and June 6th, 2002, office notes. They both documented extensive informed consent discussions, including the risk of nerve injury. Despite this information, Dr. Brandner agreed to be an expert witness against Dr. Sharpe and testify Dr. Sharpe had breached the standard of care. By doing so, Dr. Brandner violated Standards Number 3 and 4.

Mandatory Standard Number 7. Dr. Sharpe respectfully disagrees with the Judiciary Committee's findings. Dr. Sharpe made his surgical recommendations based on X-rays taken at his office on March 22, 2002. Those X-rays were available and provided to the COP Hearing Panel. The COP Hearing Panel members reviewed them during the hearing, they were part of the Judiciary Committee's appeal file.

Page 22

They show the angular deformity and that the growth plates were closed.

Dr. Brandner's deposition testimony that the pre-operative X-rays demonstrated the growth plates were not closed and there was potential for remodeling was medically wrong. The COP Hearing Panel's conclusion that Dr. Brandner had violated Standard Number 7 was correct. In fact, as part of his appeal, Dr. Brandner has now admitted he never reviewed the X-rays upon which Dr. Sharpe based his recommendations before he agreed to testify as an expert witness against Dr. Sharpe. See appeal letter dated December 29, 2009, page five, footnotes five, six and seven. See also appeal letter dated February 24, 2010, pages ten and eleven, footnotes six, seven, eight and nine.

Judiciary Committee's recommendation. The Judiciary Committee's recommendation is appropriate. Such serious violation of Standards Number 3 and 4 warrant a one-year suspension. The Board is also reminded Dr. Brandner has now admitted during the appeal process he agreed to be an expert witness and testify against Dr. Sharpe despite

Page 23

never having reviewed the very X-rays upon which Dr. Sharpe based his surgical recommendations.

MR. PELTON: Is that the end of the statement?

MS. YOUNG: Yes.

MR. MAURICE: That is the proverbial trifecta right there. In the original grievance that was filed -- you have to understand, and I don't know if you've read the original grievance, the original grievance reads like a shotgun, okay. It alleges the violation of five Mandatory Standards based on all sorts of different factors, some of them were absolute nonsense.

I mean, there was an allegation in there that Dr. Brandner's testimony that there was a 3 to 13 percent incidence rate of peroneal nerve palsy in a proximal tibial osteotomy, could not be supported anywhere, neither Dr. Sharpe nor his expert could find any support for that. Absolute nonsense. The Department of Orthopedics for Johns Hopkins, a study from 1996, a Google search would have found it, but that's the kind of stuff Dr. Brandner's been dealing with.

So Dr. Brandner shows up at the COP

Page 24

BRANDNER 00623

Multi-Page™

Hearing Panel, shows -- literally walks through each of the five allegations and the facts identified to support the same and identifies why there's absolutely no support for that. You've heard from the COP Panel that -- a detailed discussion regarding what information was or was not provided to this patient and now you've heard from the Judiciary Committee that the failure -- Dr. Sharpe's failure to produce essentially three transcripts -- well, actually four transcripts, he failed to produce the patient's subsequent deposition transcript, he failed to produce the patient's mother's subsequent deposition transcript and he failed to produce either of their trial transcripts. All of those -- in all of those depositions they definitively testify, no, they were not advised as to the risks to the peroneal nerve, they were not advised at to the potential of the dropped foot.

What this group needs to do -- what this Board needs to do is recognize that that is not the issue. The issue of whether these people were, in fact, advised as to the risks of the peroneal nerve or not is not the issue here. For

Page 25

some reason, Dr. Brandner was unable to convince the COP Panel and for some reason I was unable to convince the Judiciary Panel that has nothing to do with the substance of this grievance.

If you review Dr. Brandner's deposition testimony, if you review Dr. Brandner's trial testimony, what you will see is that Dr. Brandner was called for a very limited purpose, he was called to educate a jury of lay people as to the standard of care for informed consent in the context of this procedure, that's it.

He is repeatedly asked can you tell this jury or can you opine as to whether, in fact, Dr. Sharpe advised the patient and his mother as to the risk to the peroneal nerve and he says, no, I can't, that's a factual determination for the jury, that's not for me. All I can do is explain that the discussion needed to occur, that's it.

The jury apparently found -- sided with Dr. Sharpe and found that the discussion had occurred. That's fine, there's nothing wrong with that. Dr. Sharpe prevailed in the litigation, that's his right. And apparently, the COP Panel

Page 26

agreed. You read their statement and their findings, the record shows that informed consent was given. The COP found that the deposition transcripts reflected that both the plaintiff and his mother had an understanding about the specific possibilities and the causation of foot drop.

Congratulations, that is not what Dr. Brandner testified. Dr. Brandner never went in under oath either at deposition or at trial and testified that the plaintiff and his mother were not provided with that information, all he testified was that the information needed to be conveyed.

And when you think about it, Dr. Sharpe testified that he did convey the information. Dr. Sharpe testified that he conformed with the exact standard of care that Dr. Brandner testified to. The mere fact that Dr. Brandner was retained as the plaintiff's expert witness to provide this testimony to educate the jury is irrelevant.

The Hearing Panel -- the Judiciary Committee, the statement was made -- and this comes back to it, you have to understand, there are multiple sets of depositions and there are trial transcripts and Dr. Sharpe did not provide those

Page 27

in direct violation with Rule 6C, he did not provide those with his grievance. His grievance, if you read his grievance, he basically says look at the deposition testimony, there's no obviously I performed, obviously I advised these people of this situation, therefore, Dr. Brandner should not have testified in this case. That's basically the way it reads.

He leaves out the fact that, well, the plaintiffs were actually -- the plaintiff and his mother were actually deposed on multiple occasions and, in fact, at trial they testified very specifically that I did not provide that information, but I disagreed with that. He didn't provide that information. Dr. Brandner pleads with the COP Panel, pleads with them, telling them there are transcripts that are missing, there are documents that are missing, you cannot consider this grievance without these materials and they -- well, let me -- before that, Dr. Sharpe volunteers that he believes he has produced all of the deposition transcripts. That is actually quoted in there -- in the COP Panel's findings, they actually quote Dr. Sharpe representing that he's produced all the

Page 28

Lake Shore Reporting 312-782-9833

BRANDNER 00624

Multi-Page™

deposition transcripts.

So we show up at Judiciary Committee and say this is absolutely nonsense, we have now found these transcripts -- when I say found, it took some effort, there are like 900 Court Reporters in the State of Arizona, to find these deposition transcripts was not easy. We found them, produced them to the Judiciary Committee and said here you go.

Obviously, the COP Panel didn't have all the information before it, obviously, there's no support for these findings. And then it switches, then it switches. Mr. Crawford is there, that's the attorney for Dr. Sharpe. And I'm going to read directly -- it's a direct quote from doctor -- Mr. Crawford, pardon me, Mr. Crawford's presentation at the hearing. He says Dr. Brandner agrees to be an expert witness in this case sometime in October of 2004. And what he has available to him are the medical records, the X-rays, the depositions of Dr. Sharpe, the patient and the mother before Dr. Sharpe was ever sued.

And Dr. Sharpe, in fact, specifically says that the risk of peroneal nerve injury was

Page 29

discussed. That is what he had before he agreed to be an expert witness in this case and that is the point of Dr. Sharpe's grievance in this case. The point of the grievance from day one by Dr. Sharpe has been based on the information available, Dr. Brandner should not have agreed to give expert testimony opinions critical of Dr. Sharpe in any way, shape or form, that was the point.

Okay. So now it's changed, the original grievance has five Mandatory Standards and it identifies facts that are supposed to support those. When confronted with the fact that only half the picture was provided to the COP Panel and certain misrepresentations were made to the COP Panel and those were actually incorporated into their opinion and decision, it all changes, forget about all five of those Mandatory Standards, two of which were already rejected by the COP Panel, now it just comes down to the simple fact that Dr. Brandner in October of 2004 should not have agreed to act as an expert witness in this case, no matter how innocuous the testimony, no matter how limited, that was it, based on the materials available to Dr. Brandner in October of 2004, he should not have

Page 30

agreed to act as an expert.

Little problem with that, anybody who knows when the Mandatory Standards for Expert Witness Testimony were adopted, it was in April of 2005. In other words, Mr. Crawford in trying to avoid the fact that his client has lied on multiple occasions and failed to produce certain documents and that, well, maybe the COP Panel didn't, in fact, have all the evidence, switches gears and tries to say forget about all that, it's just the fact that he agreed to testify. He agreed to testify, he agreed to act as an expert witness in October of 2005.

There were no Mandatory Standards in effect in October of 2004. You can go through the -- you can actually look at the Mandatory Standards that have now been adopted, you can also look at the grievance procedures which make it clear that the grievance procedures are to apply for conduct occurring after April of 2005, so that's a due process and procedural issue.

But I want to get to the big picture, the Mandatory Standards -- let's talk about the X-rays real quick. Dr. Brandner -- when I say it

Page 31

was the trifecta, the statement by Dr. Sharpe that Dr. Brandner testified that the pre-operative X-rays showed a potential for remodeling, absolutely incorrect. Dr. Brandner testified that he had reviewed X-rays that showed a potential for remodeling as soon as -- could not tell you which date those X-rays were taken on.

As soon as the plaintiff's attorney, the plaintiff's attorney puts those X-rays -- the pre-operative X-rays on the overhead at the trial, Dr. Brandner looks up and says that's a mature male, that's a mature skeleton, there is no potential for remodeling. He volunteers it, he points out -- if you read through the transcript, he spends a page and a half trying to explain it, saying that's different, that's a different X-ray. So this representation by Mr. Sharpe -- Dr. Sharpe to try to bring that allegation back is nonsense.

Mandatory Standards 3 and 4 are very specific. I would read them to you, but you have them in front of you, it's essentially whether one physician can act as an expert and condemns the performance of another, okay. If you

Page 32

Page 29 - Page 32

Lake Shore Reporting 312-782-9833

BRANDNER 00625

Multi-Page™

read the deposition -- if you read the deposition testimony and you read the trial testimony, it is impossible in this case to say that that, in fact, happened.

Page -- well, your appellate record, page 145 -- it's actually page 55 of the deposition, it says "Let me just see if we can get rid of some issues in this case. You believe surgery was an appropriate option, you've told me that, correct?" Answer from Dr. Brandner, "Correct, it's a choice of treatment in this case." Question, "You believe that in this particular case, the surgery that Dr. Sharpe actually performed from a technical standpoint was done correctly?" Answer "Yes."

Question, "And you would agree and tell the jury that the fact that the complication occurred does not mean that Dr. Sharpe did anything wrong during the surgery?" Answer, "Correct." Question, "His post-operative care was appropriate?" Answer, "Excellent." Question, "If given that you see in these records by Dr. Sharpe, given that and then you throw into that he will testify that he did, in fact, discuss injury to the peroneal nerve and the potential of the foot drop, would you agree

Page 33

that his pre-operative discussion with these people would fall within the category of excellent as well?" Answer, "Yes."

And his trial testimony is exactly in line. You have to understand, there was a factual dispute between these people, Dr. Sharpe said he explained this to the patients -- to the patient and his parent and the patient and his parent said he did not, and there was a dispute as to the facts. Dr. Brandner did not walk into that room either in deposition or in trial and testify one way or the other, all he said was the standard of care required such a discussion and I cannot tell you whether that discussion occurred, that's for the jury to decide.

DR. BRANDNER: Based on the medical records.

MR. MAURICE: Based on the medical records.

MR. PELTON: Mr. Maurice, your ten minutes are up, we'll give you one minute to summarize.

MR. MAURICE: We understand, Dr. Brandner understands the situation. It is clear based on the experience that he's had in front of the COP Panel, based on the experience we both had in front of the Judiciary Panel that this Board, this body

Page 34

takes very seriously the offering of expert witness testimony on behalf of a plaintiff against a fellow -- against a member of the Association, the Academy, that's understood. That is certainly something Dr. Brandner will take into consideration in all future opportunities to testify.

With that said, there is nothing in the Mandatory Standards applicable to this case that provides that if you offer testimony that educates a jury as to the standard of care and do not opine factually one way or the other that that somehow means you've condemned the performance of a person.

If this body has concerns, if this Board has concerns, there are procedures by which this Board can voice those concerns to Dr. Brandner in a confidential way, that's the way you voice concerns. What you do not do is you do not suspend a fellow, you do not essentially throw the member out unless there is a clear violation.

And it's respectfully submitted if you read the deposition testimony, if you read the trial testimony, there is no way, there is no way you can find that Dr. Brandner condemned Dr.

Page 35

Sharpe's performance in any way. He actually referred to it as an elegant presentation of the procedure at trial.

DR. BRANDNER: I've got a quick summary. I want to emphasize that when I took this case, there were no standards. When the standards came out, I looked at them and I looked at only the records, this was a he-said-she-said problem with the depositions. I didn't involve myself in the depositions, I looked at the records as per the Standards of Professional testimony. The records say just nerve, I came in to explain the standards based on the literature and that's what I did.

MR. MAURICE: And Dr. Brandner does understand that those Mandatory Standards have now recently been amended and that essentially from this point forward, a review of deposition testimony and other court documents is also required prior to accepting responsibility to act as an expert witness in a case, he does understand that they have recently been modified.

MR. PELTON: Thank you very much. Any questions for any of the presenters? Apparently not. Okay. The Board will now go into closed

Page 36

BRANDNER 00626

Multi-Page™

Executive Session. We'll be in touch with you in due course, gentlemen.

MR. MAURICE: Thank you.

DR. BRANDNER: Thank you.

(Whereupon, the Board went into closed Executive Session.)

DR. CALLAGHAN: Back in open session then.

MR. PELTON: Let the record reflect that there are thirteen voting members present on the last matter, all thirteen voted to support the resolution to approve the recommendation of the Judiciary Committee thirteen to nothing.

* * * * *

Page 37

STATE OF ILLINOIS )
) SS.
COUNTY OF COOK )

I, PATRICIA S. MANN, CSR, RPR, a certified shorthand reporter in the State of Illinois, do hereby certify that the above matter was recorded stenographically by me and reduced to writing by me.

I FURTHER CERTIFY that the foregoing transcript of the said matter is a true, correct and complete transcript of the proceedings at the time and place specified hereinbefore.

I FURTHER CERTIFY that I am not a relative or employee of any of the parties, nor a relative or employee of the attorneys of record or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal of office at Chicago, Illinois, this 23rd day of June, 2010.

_____
Patricia S. Mann, CSR, RPR
License No. 084-001853

Page 38

Lake Shore Reporting 312-782-9833

BRANDNER 00627

**-0-**

084-001853 [3]  1:12 1:24 38:24

**-1-**

10:25 [1]  1:16
10th [1]  17:4
11th [1]  22:9
12 [2]  7:7 19:9
12th [2]  13:14 18:24
13 [1]  24:16
14 [1]  19:9
145 [1]  33:6
19 [1]  1:16
1996 [1]  24:21
19th [2]  18:20 21:17

**-2-**

2 [1]  6:20
2002 [5]  10:22 16:22 22:9 22:9,21
2004 [8]  11:1 20:8,18 21:18 29:19 30:20,24 31:15
2005 [5]  8:23 15:13 31:5 31:13,20
2008 [4]  6:10 8:21,24 9:11
2008-23 [2]  1:7 4:11
2009 [4]  6:21 9:22 19:4 23:13
2010 [11]  1:16 7:7 13:14 17:4 18:20,24 19:4,9,15 23:15 38:19
21 [3]  6:10 8:21 19:15
22 [1]  22:21
22nd [1]  16:22
23rd [1]  38:19
24 [2]  19:9 23:15
24th [1]  19:4
27 [1]  19:10
29 [3]  8:23 20:8 23:13
29th [2]  19:4 20:18
2nd [1]  9:22

**-3-**

3 [18]  4:8 6:12 7:1,16,19 10:6 12:16 14:14 16:6 17:7,10 19:10 20:2,4 22:16 23:21 24:16 32:20
39-degree [1]  10:10
3D [1]  14:1
3rd [1]  9:11

**-4-**

4 [16]  4:8 6:12 7:1,2,19 10:6 12:16 14:14 16:7 17:7,10 20:2,4 22:16 23:21 32:20

**-5-**

55 [1]  33:6
5th [2]  8:23 15:13

**-6-**

6 [6]  4:8 6:12 7:2 10:6 17:2,7
6C [1]  28:1
6th [1]  22:9

**-7-**

7 [13]  4:9 6:13 7:1,16,18 7:20 10:6 12:19 16:10,14 17:8 22:17 23:8

**-8-**

8 [6]  4:9 6:13 7:2 10:7 17:2,8

**-9-**

900 [1]  29:5
9300 [1]  1:14

**-A-**

a.m [1]  1:17
AAOS [22]  1:2 2:1 3:1 3:15 4:21,22 5:16,20 6:4 7:3,6 8:19,20 9:16 12:23 13:17,19 14:1,2 15:20 17:12 19:2
AAOS' [1]  4:15
Aaron [2]  3:11 6:6
able [1]  18:5
above [1]  38:6
absence [1]  16:21
absolute [2]  24:13,19
absolutely [3]  25:4 29:3 32:3
Academy [2]  17:13 35:4
accepted [3]  12:12,14 15:18
accepting [1]  36:18
accidents [1]  20:15
accompanied [1]  10:1
According [1]  11:5
accounts [1]  16:23
accuracy [1]  16:19
accurately [1]  8:13
acknowledged [3] 13:22 14:4,15
act [5]  30:21 31:1,12 32:23 36:19
action [1]  38:16
actions [1]  15:9
activities [1]  11:4
acts [1]  17:9
addition [2]  5:11 22:8
additional [1]  5:3
address [4]  6:7 8:6 17:19
18:21
adequately [2]  9:6 11:23
adhered [1]  13:19
administrative [2] 15:23,24
admission [1]  4:21
admitted [2]  23:10,22
adopted [2]  31:4,17
adverse [1]  21:22
advise [1]  9:6
advised [6]  19:6 25:17 25:18,23 26:14 28:5
affirmed [2]  14:12 16:24
affixed [1]  38:18
afforded [2]  13:20 19:19
Again [1]  19:22
against [11]  4:6 6:14 8:19 13:11 19:2 20:6 22:13 23:12,24 35:2,3
agencies [1]  15:23
ago [1]  4:15
agree [2]  33:15,24
agreed [15]  7:15 10:18 13:17 19:12 22:13 23:12 23:23 27:1 30:1,6,20 31:1 31:11,11,12
agreeing [1]  20:6
agreement [1]  16:11
agrees [1]  29:18
alignment [1]  20:24
allegation [2]  24:14 32:18
allegations [2]  6:16 25:2
alleged [2]  4:7 9:16
alleges [1]  24:10
alleging [2]  6:12 9:3
almost [1]  11:1
along [1]  6:6
amended [1]  36:16
American [3]  1:1 4:3,21
anesthesiologist [1] 20:14
Anglen [1]  2:9
angular [1]  23:1
Answer [13]  20:11,19 21:7,12,20,23 22:2,7 33:10,14,18,20 34:3
anticipation [1]  18:18
appeal [13]  7:5,9 13:15 13:16 18:21,24 19:3,13 22:24 23:9,13,15,23
appealed [1]  13:2
appearance [1]  6:2
appeared [1]  18:23
appellate [1]  33:5
applicable [1]  35:8
applied [1]  15:21
apply [1]  31:19
appreciate [1]  18:14
appropriate [4]  16:16 23:20 33:9,19
approve [1]  37:11
April [6]  8:23 16:22 19:15 22:9 31:4,20
arguments [2]  9:23 19:21
Arizona [2]  6:11 29:6
Assistant [2]  3:3 5:17
Association [3]  1:1 4:3 35:3
at-Large [1]  2:17
ATTENDANCE [1] 3:17
attorney [9]  5:24 6:6 7:8 7:9 8:5 15:7 29:14 32:8,9
attorneys [2]  15:23 38:15
August [2]  8:22 15:13
available [6]  16:17,23 22:21 29:19 30:5,23
avoid [1]  31:6
aware [1]  21:23
Azar [2]  3:19 5:7

**-B-**

Ballroom [1]  1:15
Barry [1]  2:6
base [1]  14:24
based [12]  17:2 22:20 23:11 24:2,11 30:5,23 34:16,17,21,23 36:13
basis [2]  13:3 14:10
behalf [2]  6:22 35:2
behind [1]  18:13
believes [1]  28:21
below [2]  15:10,14
Berry [1]  2:3
best [2]  21:22 22:1
between [2]  14:16 34:6
big [1]  31:22
Black [1]  2:15
Board [28]  1:1 2:1 4:2,13 4:17,21 5:1,4,10,12 6:7 8:6,10,16 17:12,19 18:4 18:15,19,22 19:14 23:22 25:21 34:24 35:15,16 36:24 37:5
BOC [2]  2:6,7
body [2]  34:24 35:14
bone [2]  20:20 21:13
BOS [3]  2:8,9,11
Bradford [1]  2:8
Brandner [80]  1:8 3:10 4:7,8 6:5,10,15,15,21,22 7:1,3,5,8,14,15,22 8:5,20 8:22 9:16,24 10:1 11:14 11:17 12:3,7,11,15,18,23 13:11 14:14 15:4,17 16:9 16:15 17:2,6,13,18 19:2 19:12,19,22 20:3,5 22:8 22:12,15 23:7,9,22 24:24 26:1,8 27:7,8,16,17 28:6 28:15 29:17 30:6,20,24 31:24 32:2,4,11 33:10
34:10,16,20 35:5,16,24 36:4,14 37:4
Brandner's [11]  15:7,12 16:3,20 17:9 20:1 23:3 24:15,23 26:5,6
breached [1]  22:14
briefly [1]  18:20
bring [1]  32:18
brought [1]  4:6
Bryn [1]  1:15

**-C-**

C [1]  3:13
CAE [1]  3:2
Callaghan [3]  2:2 18:3 37:7
callus [1]  20:21
cannot [2]  28:18 34:13
care [14]  9:11 11:16 12:12 15:6,6,10,14 16:16 22:15 26:10 27:16 33:19 34:13 35:10
case [17]  4:10,18 6:9 10:8 22:3 28:7 29:18 30:2,3,21 33:3,8,11,12 35:8 36:5,20
category [1]  34:2
causation [1]  27:6
CEO [1]  3:2
certain [4]  15:15 21:22 30:14 31:7
certainly [1]  35:4
certified [1]  38:4
certify [3]  38:6,9,13
chair [6]  2:6,8,9 7:24 8:2 13:14
Chair-Elect [1]  2:7
chaired [1]  10:3
change [1]  14:19
changed [1]  30:9
changes [1]  30:16
charges [2]  4:5 6:19
Chicago [1]  38:18
Chief [1]  5:15
children [1]  18:7
choice [2]  15:4 33:10
chose [2]  14:24 15:2
cited [1]  17:3
citing [1]  4:18
civil [1]  16:1
claimed [1]  10:5
claims [1]  9:13
clarifying [2]  8:11,16
clear [6]  13:5,8 19:22 31:18 34:21 35:20
clearly [1]  8:14
client [2]  15:8 31:6
closed [6]  8:16 12:5 23:2 23:5 36:24 37:6
committed [1]  18:12
Committee [47]  3:5,7,8 5:13,14 6:17 7:2,6,11,14

BRANDNER 00628

Committee's - fracture

Multi-Page™

7:21,24 8:3 9:19,21 12:22 13:3,7,10,13,17,17,22,23 14:4,9,11,15,18 15:11 16:9,11,19 17:5,8 18:14 19:6,11,17,18,23 20:3 25:8 27:21 29:2,8 37:12

Committee's [6] 8:4 18:21 22:19,24 23:18,19

complete [1] 38:10

Compliance [4] 1:2 5:18 13:20 14:2

complicated [1] 10:22

complication [2] 11:12 33:16

complications [1] 9:7

concerned [1] 22:3

concerns [4] 35:14,15 35:16,18

concluded [2] 7:12 16:19

conclusion [4] 6:23 7:10 8:9 23:7

conclusions [1] 8:4

concurred [2] 7:21 17:11

condemned [4] 12:13 15:17 35:12,24

condemning [3] 15:6 16:3,5

condemns [1] 32:24

conduct [3] 4:5 17:15 31:19

conducted [1] 6:20

confidential [2] 4:14 35:17

confirmed [1] 11:7

conflict [2] 4:17,23

conflicts [1] 5:3

conformed [1] 27:15

confronted [1] 30:12

Congratulations [1] 27:7

consent [5] 11:20 15:16 22:11 26:10 27:2

consider [1] 28:18

consideration [2] 18:19 35:5

considered [2] 19:11,20

considering [2] 19:7,23

constitute [1] 18:17

contacted [1] 4:22

contend [1] 15:8

content [1] 21:19

context [2] 15:24 26:11

continued [3] 10:19,24 11:2

contradictory [1] 14:24

contrary [2] 13:4,5

control [1] 20:20

convey [1] 27:14

conveyed [1] 27:12

convince [2] 26:1,3

Cook [2] 1:13 38:2

Coordinator [1] 5:19

COP [28] 6:23 7:12,15 11:21 12:10,17 13:1,4 14:13 16:12 17:1,3 22:22 22:22 23:7 24:24 25:5 26:2,24 27:3 28:16,23 29:10 30:13,14,18 31:8 34:22

COP's [2] 7:22 8:1

copies [1] 22:8

copy [1] 5:22

correct [8] 12:21 21:20 21:23 23:8 33:9,10,18 38:10

corrected [1] 6:4

correcting [1] 22:4

corrective [2] 9:5 10:10

correctly [3] 19:18 20:3 33:14

corrects [1] 20:24

counsel [9] 3:3,4,15 4:16 5:17,17,20,23 18:24

counseling [1] 15:5

County [2] 1:13 38:2

course [2] 6:8 37:2

court [5] 5:20 8:12 9:12 29:5 36:18

Crawford [3] 29:13,16 31:5

Crawford's [1] 29:16

criminal [1] 16:1

critical [1] 30:7

CSR [4] 1:12,23 38:4,23

-D-

D [3] 2:7,12 3:7

damage [2] 11:22 20:13

damaged [1] 21:2

Daniel [3] 2:3 3:18 5:7

date [1] 32:7

dated [3] 19:3 23:13,15

dates [1] 12:8

David [1] 2:7

dealing [1] 24:23

death [1] 20:14

December [4] 9:11 17:4 19:3 23:13

decide [1] 34:15

decision [1] 30:16

defendant [2] 9:3,13

defense [1] 9:9

definitively [1] 25:16

deformity [4] 10:10 12:6 22:4 23:1

delay [1] 13:23

deliberations [1] 4:13

demonstrate [1] 11:3

demonstrated [1] 23:4

denied [1] 6:16

Department [1] 24:20

departure [1] 11:16

deposed [1] 28:11

deposition [24] 8:22 11:7,13 15:3,12,22 16:4 20:5 23:3 25:12,13 26:6 27:3,9 28:4,21 29:1,6 33:1 33:1,6 34:11 35:22 36:17

depositions [9] 11:24 14:6,17,20 25:16 27:23 29:21 36:9,10

despite [2] 22:12 23:24

detailed [1] 25:5

determination [2] 6:18 26:16

determined [3] 9:19 16:21 17:9

developed [1] 10:9

different [3] 24:12 32:16 32:16

direct [2] 28:1 29:15

directly [2] 29:15 38:16

Directors [6] 1:1 2:1 4:2 17:12 18:22 19:14

Directors' [1] 18:19

disagreed [1] 28:14

disagrees [1] 22:18

disciplinary [1] 13:9

disclosed [1] 11:23

discrepancy [1] 14:16

discretion [1] 14:3

discuss [7] 11:19 20:9 20:10 21:18 22:5,6 33:23

discussed [2] 11:8 30:1

discussion [8] 19:14 21:19 25:6 26:18,21 34:1 34:13,14

discussions [2] 4:13 22:11

dismissed [1] 9:13

displayed [1] 16:15

dispute [2] 34:6,9

disregarding [1] 15:18

doctor [1] 29:16

document [1] 15:16

documented [1] 22:10

documents [4] 14:8 28:18 31:7 36:18

done [1] 33:14

doubt [1] 21:6

down [1] 30:19

Dr [171] 4:6,6,7,8,22 5:6,7 5:12,13,24 6:5,10,14,15 6:19,21,21,22,24 7:3,5,7 7:8,14,15,22,24 8:2,5,7 8:17,18,22 9:3,10,15,16 9:23,24,24 10:1,3,13,16 11:1,5,8,14,17,18,21 12:3 12:3,7,11,15,18,22 13:11 13:12,13 14:13,20 15:4,7 15:7,8,12,13,15,17,17 16:3,9,15,19 17:1,6,9,17 17:17 18:3,17,23 19:2,5,8 19:12,19,21,22 20:1,3,5,6 20:9,22 21:7,12,17 22:8 22:12,13,14,15,17,19 23:3

23:7,9,11,12,22,24 24:1 24:15,18,22,24 25:9 26:1 26:5,6,7,14,21,23 27:7,8 27:13,15,16,17,24 28:6 28:15,20,23 29:14,17,21 29:22,23 30:3,4,5,7,19,23 31:24 32:1,2,4,11,18 33:10,12,17,21 34:6,10 34:16,20 35:5,16,24,24 36:4,14 37:4,7

draining [1] 10:23

drop [7] 10:23 11:3,9 20:11,19 27:6 33:24

dropped [1] 25:19

due [10] 6:8 7:13 13:3,8 13:21 16:21 19:18,19 31:20 37:2

during [5] 8:22 21:7 22:23 23:23 33:18

-E-

E [1] 10:3

easy [1] 29:7

educate [2] 26:9 27:19

educates [1] 35:10

effect [1] 31:15

effort [2] 18:14 29:5

eight [2] 19:15 23:16

either [3] 25:14 27:9 34:11

Elect [1] 2:10

elegant [1] 36:2

eleven [1] 23:16

emphasize [1] 36:5

employee [2] 38:14,15

encouraged [1] 18:10

end [5] 11:9,15 18:10 20:10 24:3

entered [1] 9:12

equally [1] 15:21

essentially [4] 25:9 32:22 35:19 36:16

evaluation [1] 18:15

evidence [7] 13:6,9 14:20 15:1 16:13,17 31:9

evident [1] 10:23

exact [1] 27:16

exactly [1] 34:4

excellent [2] 33:20 34:2

Executive [4] 5:15 8:17 37:1,6

exist [1] 14:23

experience [3] 16:16 34:22,23

expert [24] 4:10 6:14 9:17 10:7 15:21 16:2,5 17:16 20:6 22:13 23:12,23 24:19 27:18 29:18 30:2,6,21 31:1,3,12 32:23 35:1 36:19

explain [3] 26:18 32:15 36:12

explained [1] 34:7

extend [1] 14:3

extensive [1] 22:10

-F-

facie [2] 6:18 9:18

fact [17] 15:2 16:4 23:9 25:23 26:14 27:17 28:9 28:12 29:23 30:12,19 31:6 31:9,11 33:3,16,23

factors [1] 24:12

facts [3] 25:2 30:11 34:10

factual [2] 26:16 34:6

factually [1] 35:11

failed [5] 9:6 14:20 25:11 25:12,14 31:7

failure [2] 25:8,9

fall [1] 34:2

fallen [1] 15:14

favor [1] 9:12

feasible [1] 18:9

February [2] 19:4 23:15

fell [2] 12:14 15:10

fellow [4] 8:19,20 35:3 35:19

fellowship [2] 12:23 17:13

fellowships [1] 4:20

felt [1] 13:8

fifteen-year-old [1] 10:8

file [1] 22:24

filed [7] 6:11 7:5 8:19 9:2 9:15 18:13 24:8

financially [1] 38:15

finding [2] 9:10 16:12

findings [12] 8:4 13:4,5 14:11,13 16:12 17:1 19:17 22:19 27:2 28:23 29:12

fine [1] 26:22

first [3] 2:3 10:24 17:22

five [7] 18:7 23:14,14 24:11 25:2 30:10,17

flex [1] 20:20

followed [3] 7:12 8:2,6

following [4] 9:18 10:9 10:11 20:7

foot [9] 10:23 11:3,9 20:11,19,20 25:19 27:6 33:24

footnotes [2] 23:14,16

foregoing [1] 38:9

forget [2] 30:16 31:10

forgot [2] 21:4,5

form [1] 30:8

forward [1] 36:17

found [17] 7:19 12:11,17 13:7 14:9 15:11 16:14 17:6 19:19 20:3 24:22 26:20,21 27:3 29:4,4,7

four [2] 16:24 25:10

fracture [3] 10:11 11:17 12:20

Index Page 2

BRANDNER 00629

Multi-Page™          Fred - O'Hare

Fred [3] 3:13 4:22 5:7
Frederick [1] 3:19
front [3] 32:22 34:22,23
Furthermore [2] 7:14 16:18
future [1] 35:6

**-G-**

gears [1] 31:9
general [7] 3:2,4 4:16 5:16,17,23 21:21
generally [3] 12:12,14 15:18
gentlemen [1] 37:2
Gilbert [1] 6:11
Giulietti [2] 5:18 6:3
given [7] 6:7 8:5 14:19 15:22 27:3 33:20,21
Goodman [5] 3:6 5:14 7:24 8:17,18
Google [1] 24:21
Greenwald [1] 10:1
Gregory [1] 2:11
grievance [27] 1:2 6:11 6:20 7:13 8:19 9:15 10:5 13:18 14:2 18:13,16,19 19:1,5 24:7,9,10 26:4 28:2 28:2,3,19 30:3,4,10 31:18 31:19
grievant [3] 1:6 14:8 17:21
group [1] 25:20
growth [3] 12:7 23:1,5

**-H-**

Hackett [2] 3:2 5:15
half [2] 30:13 32:15
hand [1] 38:17
hands [1] 21:21
he-said-she-said [1] 36:8
hear [2] 4:4 9:23
heard [3] 7:6 25:5,7
hearing [32] 1:2 5:4 6:19 6:20,23,23 7:10,10,12 9:18,24 10:2 11:21 12:10 12:17 13:2,18 14:13 16:12 17:1,3,11 18:21,24 19:13 22:22,22,23 23:7 25:1 27:20 29:17
hematoma [1] 10:23
Henley [1] 2:8
hereby [1] 38:6
hereinbefore [1] 38:12
hereunto [1] 38:17
home [1] 18:7
hope [1] 18:11
Hopkins [1] 24:21
Hotel [1] 1:14
hour [1] 1:16
Hyatt [2] 1:14 9:22

**-I-**

identified [1] 25:3
identifies [2] 25:3 30:11
III [1] 2:17
Illinois [6] 1:14,15 4:4 38:1,5,18
impossible [1] 33:3
incidence [1] 24:16
include [1] 16:1
including [1] 22:11
incorporated [1] 30:15
incorrect [1] 32:4
indicate [1] 4:22
indirectly [1] 38:16
individuals [1] 4:19
inform [1] 14:21
information [10] 19:24 22:12 25:6 27:11,12,14 28:14,15 29:11 30:5
informed [6] 11:20 15:16 21:19 22:10 26:10 27:2
initial [2] 10:16 14:16
injury [9] 11:7 14:21 21:6 21:19,24 22:4,12 29:24 33:23
innocuous [1] 30:22
insufficient [1] 16:13
intended [1] 18:20
intention [1] 18:6
interest [2] 4:17,23
interested [1] 38:16
involve [1] 36:9
involved [2] 4:19 10:8
irrelevant [4] 14:10 19:5 19:13 27:19
issuance [1] 13:23
issue [6] 7:13 16:20 25:22 25:22,24 31:21
issued [2] 6:24 7:11
issues [2] 21:18 33:8
items [1] 19:16

**-J-**

J [8] 1:8 2:2,3,6 3:6,10 8:20 17:12
J.D [4] 3:2,3,11,16
James [1] 10:1
January [2] 20:8,18
Jeffrey [1] 2:9
job [1] 22:1
John [2] 2:2,4
Johns [1] 24:20
Joseph [1] 2:12
Jr [1] 10:4
judged [1] 15:13
judgment [1] 9:12
judiciary [41] 3:7 5:13 7:6,11,14,21 8:3,4 13:2,7 13:13,22 14:4,9,15,18

15:10,24 16:9,11,14,18 17:5,8 18:21 19:6,17,18 19:23 20:3 22:18,24 23:18 23:19 25:8 26:3 27:20 29:2,8 34:24 37:11
June [5] 1:16 10:21 18:20 22:9 38:19
jury [9] 9:9 26:9,13,17,20 27:19 33:16 34:15 35:10

**-K-**

Karen [2] 3:2 5:15
Kevin [1] 2:15
key [1] 15:15
kind [1] 24:22
Kipling [6] 1:5 4:6 6:10 8:18 18:16,17
knowledge [1] 16:15
knows [1] 31:3

**-L-**

L [2] 2:14 3:2
lack [2] 13:3,8
Lake [2] 1:23 5:21
Large [2] 2:14,16
Las [1] 6:15
last [2] 17:23 37:9
lawsuit [1] 9:2
lay [2] 2:18 26:9
leave [2] 18:8,11
leaves [1] 28:9
leg [1] 21:8
letter [2] 23:13,15
letters [1] 19:3
liability [1] 9:2
License [3] 1:12,24 38:24
lied [1] 31:6
lieu [1] 6:2
light [1] 12:12
limitation [1] 14:3
limited [2] 26:8 30:22
line [3] 19:9,10 34:5
list [1] 21:15
literally [1] 25:1
literature [1] 36:13
litigants [1] 15:23
litigation [1] 26:23
locations [1] 4:19
logical [1] 17:24
longer [1] 16:23
look [3] 28:3 31:16,17
looked [3] 36:7,7,10
looks [1] 32:11
Louisiana [1] 7:7

**-M-**

M [3] 2:8 3:16,19
M.D [23] 1:5,8 2:2,3,4,6,7 2:8,9,11,12,14,15,17 3:6 3:7,10,13,18,19 8:19,20

18:16
M.S [1] 2:18
maintained [1] 11:22
majority [3] 7:16,19 16:8
male [2] 10:9 32:12
man [1] 12:5
Mandatory [22] 4:8 6:12 10:6 12:16,18 14:14 15:20 16:6,10 17:7 20:2 22:17 24:11 30:10,17 31:3,14 31:16,23 32:20 35:8 36:15
Mann [5] 1:12,23 5:21 38:4,23
March [5] 7:7 13:14 18:24 19:9 22:21
materials [6] 14:5 19:7 19:12,21 28:19 30:23
matter [9] 1:4 4:14,24 7:6 30:21,22 37:10 38:6,10
matters [2] 4:14 16:1
mature [3] 10:8 32:11,12
Maurice [10] 3:11 6:6 17:18,20 24:6 34:17,18 34:20 36:14 37:3
Mawr [1] 1:15
may [3] 8:12 11:1 21:17
MBA [1] 2:18
mean [3] 20:18 24:14 33:17
means [1] 35:12
medical [6] 4:20 9:2 11:5 29:20 34:16,17
medically [1] 23:6
meeting [3] 1:1 4:2 13:15
Melissa [3] 3:3 5:17 6:5
member [8] 2:17,19 4:16 5:1,4 10:2 35:3,19
Member-at [2] 2:14,15
members [8] 3:5 5:9,11 8:10 18:4,15 22:23 37:9
memo [1] 4:17
Mencio [1] 2:11
mentioned [1] 20:14
mentioning [1] 11:15
mere [1] 27:17
met [2] 9:22 13:13
Michael [1] 2:14
might [4] 11:9 20:10 21:1 21:1
mind [1] 21:6
minute [1] 34:19
minutes [3] 8:6 17:18 34:18
misrepresentations [1] 30:14
Miss [1] 8:7
missing [2] 28:17,18
misstated [1] 7:18
modified [1] 36:21
months [3] 4:15 10:13 10:16
Moreover [1] 14:22

mother [10] 11:10,24 14:7 14:17 20:17 26:14 27:5 27:10 28:11 29:22
mother's [1] 25:13
moved [1] 21:10
movement [1] 21:13
moves [1] 20:23
MS [2] 18:4 24:5
multiple [3] 27:23 28:11 31:6
Murray [2] 3:6 5:13

**-N-**

N [1] 3:2
name [1] 8:14
names [1] 4:18
necessary [1] 10:18
needed [2] 26:18 27:12
needs [2] 25:20,21
negligent [2] 9:4,10
neither [3] 4:24 5:24 24:18
nerve [20] 10:9,22 11:7 11:15,22 14:21 20:13 21:6 21:19,24 22:4,6,11 24:16 25:17,24 26:15 29:24 33:23 36:12
nerves [3] 20:19,22 21:1
Nevada [1] 6:15
never [3] 23:10 24:1 27:8
Nevertheless [1] 11:13
new [5] 7:7 13:14 19:7,11 19:21
nine [1] 23:17
none [1] 5:5
Nonetheless [1] 7:20
nonoperative [1] 10:20
nonoperatively [1] 10:12
nonsense [4] 24:13,20 29:3 32:19
nor [3] 5:24 24:18 38:14
notary [1] 1:13
noted [1] 5:3
notes [4] 11:23 12:1 15:16 22:10
nothing [4] 26:3,22 35:7 37:12
Notwithstanding [1] 17:8
now [9] 23:9,22 25:7 29:3 30:9,18 31:17 36:15,24
number [18] 4:10 7:18 10:6 11:3 12:16,19 14:12 16:8,10,24 19:17 20:1,2,4 22:16,17 23:8,21
Numbers [1] 17:6

**-O-**

O [1] 2:9
o'clock [1] 1:17
O'Hare [2] 1:14,15

BRANDNER 00630

oath - says                    Multi-Page™

oath [1] 27:8
objection [2] 19:7,23
objectivity [1] 15:5
objects [1] 4:24
obviously [4] 28:4,5 29:10,11
occasions [2] 28:12 31:7
occur [3] 21:22 22:1 26:18
occurred [4] 21:7 26:22 33:17 34:14
occurring [1] 31:20
October [9] 6:10,20 8:21 9:22 29:19 30:20,24 31:13 31:15
offer [1] 35:9
offered [1] 19:21
offering [1] 35:1
office [6] 4:15 5:23 11:23 22:9,20 38:18
Officer [1] 5:16
official [1] 5:22
one [14] 7:3,23 12:24 15:2 17:14 19:16,18 21:4,18 30:4 32:23 34:12,19 35:11
one-year [1] 23:21
open [2] 12:7 37:7
operation [1] 10:21
opine [2] 26:13 35:11
opinion [5] 14:24 15:21 16:2,5 30:16
opinions [1] 30:7
opportunities [1] 35:6
opportunity [3] 6:7 8:11 17:23
option [1] 33:9
ordered [1] 9:13
original [5] 10:19 24:7,9 24:9 30:10
Orleans [2] 7:7 13:14
orthopaedic [7] 1:1 4:3 4:10 10:7,12,17 17:14
Orthopaedics [1] 6:14
orthopaedist [1] 9:3
Orthopedics [1] 24:20
osteotomy [5] 9:5 10:10 10:18 16:18 24:17
otherwise [1] 15:11
outcomes [1] 21:22
outside [2] 3:15 5:19
overhead [1] 32:10

-P-

P [4] 1:5 2:15 8:18 18:16
page [7] 19:9,10 23:14 32:15 33:5,6,6
pages [2] 19:15 23:15
palsy [3] 10:9,22 24:17
panel [23] 6:24 7:12 10:3 12:10,17 13:2,18 22:22 22:23 25:1,5 26:2,3,24 27:20 28:16 29:10 30:13

30:15,18 31:8 34:23,24
Panel's [7] 14:13 16:12 17:1,3,11 23:7 28:23
pardon [2] 18:11 29:16
parent [2] 34:8,9
Parks [1] 2:14
part [4] 8:13 11:20 22:24 23:9
participating [1] 5:8
participation [1] 5:1
particular [2] 21:1 33:12
parties [2] 13:21 38:14
parties' [1] 9:23
party [1] 4:24
Past [1] 2:12
patient [17] 9:6 10:11,24 11:2,7,10,19,24 14:17,21 15:1 21:21 25:7 26:14 29:21 34:8,8
patient's [5] 15:3 20:7 20:17 25:11,13
patients [1] 34:7
Patricia [5] 1:12,23 5:21 38:4,23
Patrick [6] 1:8 3:10 4:6 6:15 8:20 17:12
Paul [1] 2:17
Pelton [11] 3:16 4:1 5:19 13:12 17:17,20 18:1 24:3 34:18 36:22 37:8
people [5] 25:22 26:9 28:5 34:1,6
per [1] 36:10
percent [1] 24:16
performance [8] 9:4 12:13 15:9,18 17:15 32:24 35:12 36:1
performed [4] 10:15,21 28:5 33:13
peroneal [12] 10:9,22 11:15 14:21 22:3,6 24:16 25:17,24 26:15 29:24 33:23
person [3] 18:5,23 35:13
personal [1] 6:2
persuaded [1] 14:18
Peterson [2] 3:2 5:16
physes [1] 12:5
physician [2] 15:1 32:23
picture [2] 30:13 31:22
place [2] 21:14 38:11
places [1] 16:6
plaintiff [6] 9:11 14:7 27:4,10 28:10 35:2
plaintiff's [3] 27:18 32:8,9
plaintiffs [1] 28:10
plates [3] 12:7 23:2,5
pleads [2] 28:15,16
point [4] 30:3,4,8 36:16
points [1] 32:14
possibilities [1] 27:6

possibility [3] 11:11,22 12:4
possible [2] 17:20 22:1
post-operative [2] 10:24 33:19
potential [14] 4:17,23 5:3 9:7,20 11:11,18 12:20 23:6 25:18 32:3,5,13 33:24
practice [1] 12:14
pre-operative [4] 23:4 32:2,10 34:1
prejudice [1] 9:14
preliminary [1] 6:18
present [8] 4:12 5:10,12 6:22 7:9 9:24 15:15 37:9
presentation [3] 10:16 29:17 36:2
presentations [2] 8:10 8:15
presenters [1] 36:23
presenting [1] 10:13
President [4] 2:2,3,5,13
pressure [1] 20:22
prevailed [1] 26:23
prima [2] 6:18 9:18
problem [4] 18:1,3 31:2 36:8
procedural [1] 31:21
procedure [3] 9:8 26:11 36:3
procedures [5] 13:20 14:2 31:18,19 35:15
proceeding [2] 5:22 8:13
proceedings [4] 1:11 5:8 19:9 38:11
process [9] 7:13 11:20 13:3,8,21 19:18,19 23:23 31:21
produce [5] 25:9,11,12 25:14 31:7
produced [3] 28:21,24 29:7
Professional [5] 1:2 5:18 13:19 14:1 36:11
Professionalism [16] 3:7 4:9 5:15 6:13,17 8:1 9:17,19,21 12:22 13:10 13:18,24 14:11,23 15:21
Program [4] 1:2 5:19 13:20 14:2
proverbial [1] 24:6
provide [5] 27:18,24 28:1 28:13,15
provided [6] 15:6,22 22:22 25:7 27:10 30:13
provides [1] 35:9
proximal [2] 16:17 24:17
public [1] 1:13
purpose [1] 26:8
pursuant [1] 14:1
put [3] 18:15 20:22 21:14
puts [1] 32:9

-Q-

questions [4] 8:11,15,16 36:23
quick [2] 31:24 36:4
quote [4] 11:15,16 28:23 29:15
quoted [1] 28:22

-R-

R [2] 2:4 3:11
RACHE [1] 3:2
raised [1] 7:13
rate [1] 24:16
RE [1] 1:4
read [14] 6:3,4 17:21 24:9 27:1 28:3 29:15 32:14,21 33:1,1,2 35:22,22
reading [1] 8:7
reads [2] 24:10 28:8
real [1] 31:24
realm [1] 15:5
reason [2] 26:1,2
reasons [1] 17:3
rebroken [1] 21:9
recently [2] 36:15,20
recognize [1] 25:21
recommend [1] 10:19
recommendation [9] 6:24 7:22 8:2 13:1,24 17:11 23:18,19 37:11
recommendations [5] 4:4 13:10 22:20 23:11 24:2
recommended [2] 7:2 12:22
record [10] 4:1 5:6 6:3,5 11:5 17:22 27:2 33:5 37:8 38:15
recorded [1] 38:6
records [8] 16:22 29:20 33:21 34:16,17 36:7,10 36:11
recused [2] 3:12 4:23
Redfern [3] 3:13 4:22 5:7
reduced [1] 38:7
reference [1] 9:2
referred [1] 36:2
reflect [4] 4:1 5:6 8:13 37:8
reflected [1] 27:4
regarding [3] 4:5,18 25:6
Regardless [1] 16:3
regret [1] 18:4
rejected [1] 30:18
relative [2] 38:13,14
remind [1] 4:12
reminded [1] 23:22
remodel [3] 11:18 12:5 12:20
remodeling [5] 16:20

23:6 32:3,6,13
remove [1] 14:10
rendered [1] 12:12
repeatedly [1] 26:12
report [9] 1:11 6:24 7:11 9:15 10:5 13:24 17:4 18:22 19:14
Reported [1] 1:22
reporter [3] 5:20 8:12 38:5
Reporters [1] 29:5
Reporting [2] 1:23 5:21
representation [1] 32:17
representing [3] 5:13 5:14 28:24
request [1] 8:14
required [3] 19:20 34:13 36:18
reschedule [1] 18:9
residencies [1] 4:20
resolution [1] 37:10
Respected [1] 18:4
respectfully [2] 22:18 35:21
respective [1] 4:19
respects [1] 13:19
responded [1] 6:16
respondent [3] 1:9 3:9 17:22
responsibility [2] 11:19 36:19
result [2] 8:21 17:5
results [1] 13:16
retained [2] 5:23 27:17
returned [2] 9:9 11:3
review [4] 5:2 26:5,6 36:17
reviewed [7] 12:9 14:8 20:5 22:23 23:10 24:1 32:5
Richard [6] 2:6 3:2,7 5:12,16 10:3
rid [1] 33:7
right [3] 9:5 24:7 26:24
risk [5] 11:6 22:3,11 26:15 29:24
risks [3] 9:7 25:17,23
room [1] 34:11
Rosalind [2] 5:18 6:3
Rosemont [3] 1:15 4:4 9:22
RPR [4] 1:12,23 38:4,23
Rule [1] 28:1
Russell [2] 3:16 5:19

-S-

S [4] 1:12,23 38:4,23
Saturday [1] 1:16
says [6] 26:15 28:3 29:17 29:24 32:11 33:7

BRANDNER 00631

Multi-Page™        Schmidt - Zuckerman

**Schmidt** [6] 3:7 5:12 8:2 13:12,13 17:17
**schools** [1] 4:20
**scientific** [1] 16:17
**scientifically** [1] 12:21
**seal** [1] 38:18
**search** [1] 24:21
**second** [3] 2:4 14:6,16
**Secretary** [1] 2:11
**Section** [1] 14:1
**see** [7] 19:8,13 23:13,14 26:7 33:7,21
**seeing** [1] 18:12
**seem** [1] 17:22
**sent** [1] 4:16
**serious** [2] 17:9 23:20
**seriously** [2] 19:1 35:1
**Service** [2] 1:23 5:21
**session** [4] 8:17 37:1,6,7
**set** [3] 14:6,16 38:17
**sets** [1] 27:23
**seven** [3] 19:15 23:14,16
**Several** [1] 4:15
**shape** [1] 30:8
**Sharpe** [62] 1:5 4:6,7 5:24 6:9,11,21 7:8 8:18 9:4,10 9:16,23 10:14,16 11:1,6,8 11:21 12:3 14:20 15:7,13 18:16,23 19:6,8,22 20:7,9 20:23 21:12 22:13,14,18 22:19 23:11,13,24 24:2 24:18 26:14,21,23 27:14 27:15,24 28:20,24 29:14 29:21,22,23 30:4,7 32:1 32:17,18 33:13,17,21 34:6
**Sharpe's** [12] 6:19 8:7 11:18 15:9,15,17 18:18 21:7,17 25:9 30:3 36:1
**Shore** [2] 1:23 5:21
**shorthand** [1] 38:5
**shotgun** [1] 24:10
**show** [2] 23:1 29:2
**showed** [2] 32:3,5
**shown** [1] 11:23
**shows** [3] 24:24 25:1 27:2
**sided** [1] 26:20
**significant** [1] 12:6
**simple** [1] 30:19
**sincerely** [1] 18:16
**situation** [2] 28:6 34:21
**six** [3] 10:13 23:14,16
**skeletally** [1] 10:8
**skeleton** [1] 32:12
**sole** [1] 14:3
**sometime** [1] 29:18
**soon** [2] 32:6,8
**SOP** [2] 9:20 10:7
**sort** [1] 21:24
**sorts** [1] 24:12
**speakers** [1] 8:12
**specific** [3] 11:10 27:5

32:21
**specifically** [12] 4:7 11:6,14 12:8 14:6 15:13 16:12,22 22:2,6 28:13 29:23
**specified** [1] 38:12
**spends** [1] 32:15
**SS** [1] 38:1
**STAFF** [1] 3:1
**stand** [2] 6:4 18:13
**standard** [18] 7:17,20 11:16 12:19 15:5,10,14 15:19 16:10,14,16 22:14 22:17 23:8 26:10 27:16 34:12 35:10
**standards** [39] 4:8,9 6:12 6:13 7:1,2,16,19 9:17 10:6 12:13,15,16 14:14,23 15:20 16:6 17:2,6,7,10 20:2,4 22:15 23:20 24:11 30:10,17 31:3,14,16,23 32:20 35:8 36:6,6,11,12 36:15
**standpoint** [1] 33:14
**state** [5] 1:14 8:14 29:6 38:1,5
**statement** [7] 6:2 17:21 18:18 24:4 27:1,21 32:1
**statements** [2] 8:21 9:1
**stenographically** [1] 38:7
**Strain** [1] 10:3
**stretched** [1] 21:1
**study** [1] 24:21
**stuff** [2] 20:15 24:22
**submission** [1] 8:8
**submitted** [5] 6:1 14:7 19:8,12 35:21
**subsequent** [2] 25:11 25:13
**substance** [1] 26:4
**such** [2] 23:20 34:13
**sued** [1] 29:22
**sufficient** [1] 16:15
**summarize** [4] 6:9 8:1,3 34:19
**summary** [3] 12:1 19:15 36:4
**support** [7] 16:13 24:19 25:3,4 29:12 30:11 37:10
**supported** [2] 13:9 24:18
**supposed** [1] 30:11
**surgeon** [3] 10:13,19 21:22
**surgeons** [3] 1:1 4:3 10:17
**surgery** [11] 10:15,17 11:2 17:14 18:6,9 20:9 21:7 33:8,12,18
**surgical** [3] 9:7 22:19 24:2
**suspend** [1] 35:18
**suspended** [4] 7:3,23 12:23 17:14

**suspension** [1] 23:21
**swear** [1] 21:5
**switches** [3] 29:13,13 31:9
**sworn** [1] 16:2

**-T-**

**takes** [2] 19:1 35:1
**technical** [1] 33:13
**telling** [1] 28:16
**ten** [4] 8:6 17:18 23:16 34:18
**testified** [13] 11:17 12:4 12:6 27:8,9,11,14,15,16 28:7,12 32:2,4
**testify** [11] 12:11 15:9 22:14 23:12,24 25:16 31:11,12 33:22 34:11 35:6
**testimony** [31] 4:10 6:14 8:22,23 9:18 11:14 12:19 14:19 16:2,4,20 17:16 20:5 23:3 24:15 26:6,7 27:19 28:4 30:7,22 31:4 33:2,2 34:4 35:2,9,22,23 36:11,17
**Teuscher** [1] 2:7
**thank** [7] 5:5 8:18 13:11 17:17 36:22 37:3,4
**theorized** [1] 15:8
**therefore** [2] 14:4 28:6
**thirteen** [4] 5:9 37:9,10 37:12
**threats** [1] 19:2
**three** [3] 10:15 16:8 25:9
**through** [5] 18:13 21:15 25:1 31:15 32:14
**throw** [2] 33:22 35:19
**tibia** [1] 10:11
**tibial** [3] 9:5 16:18 24:17
**today** [4] 5:12,20 6:1,6
**Tongue** [1] 2:4
**took** [3] 15:4 29:5 36:5
**Tornetta** [1] 2:17
**touch** [1] 37:1
**town** [1] 18:8
**transcript** [7] 5:22 19:8 25:12,13 32:14 38:9,11
**transcription** [1] 12:2
**transcripts** [10] 25:10 25:10,15 27:4,24 28:17 28:22 29:1,4,7
**transpired** [1] 12:2
**treated** [1] 10:12
**treating** [3] 10:19 11:1 15:1
**treatment** [2] 10:20 33:11
**trial** [15] 8:23 15:9,22 16:4 25:14 26:7 27:9,23 28:12 32:10 33:2 34:4,11 35:23 36:3
**tries** [1] 31:10
**trifecta** [2] 24:6 32:1

**true** [1] 38:10
**try** [1] 32:18
**trying** [2] 31:5 32:15
**twisted** [1] 20:21
**two** [6] 10:17 11:2 14:12 19:16 20:1 30:17

**-U-**

**unable** [2] 26:1,2
**unanimously** [7] 7:15 7:21 12:10 13:17 14:12 16:24 17:10
**under** [1] 27:8
**understand** [7] 18:12 24:8 27:22 34:5,20 36:14 36:20
**understands** [1] 34:21
**understood** [2] 11:10 35:4
**unless** [1] 35:20
**unnecessary** [1] 9:5
**unprofessional** [2] 4:5 17:15
**up** [6] 11:9 20:10 24:24 29:2 32:11 34:19
**used** [1] 16:4

**-V-**

**valgus** [1] 22:4
**various** [1] 21:15
**Vegas** [1] 6:15
**verbatim** [1] 12:1
**verdict** [1] 9:9
**version** [1] 15:2
**versus** [1] 6:10
**Vice** [2] 2:3,4
**vigorous** [1] 11:4
**violate** [3] 7:20 17:2,7
**violated** [9] 4:8 7:1,16 7:18 14:14 17:6 20:4 22:15 23:8
**violation** [12] 7:17 12:15 12:18 14:22 16:6,10,14 20:1 23:20 24:11 28:1 35:20
**violations** [6] 6:12 9:16 9:20 10:6 12:21 17:10
**visit** [1] 12:3
**voice** [2] 35:16,17
**volunteers** [2] 28:20 32:13
**vote** [3] 7:17,19 16:8
**voted** [2] 7:18 37:10
**votes** [1] 4:13
**voting** [3] 4:16 5:9 37:9

**-W-**

**W** [1] 3:18
**walk** [1] 34:10
**walks** [1] 25:1
**warned** [2] 11:6 21:12

**warrant** [1] 23:21
**warranted** [1] 6:19
**week** [1] 18:7
**weekend** [1] 18:8
**weight** [2] 13:5,8
**West** [1] 1:14
**WHEREOF** [1] 38:17
**White** [2] 3:18 5:7
**wife** [1] 18:6
**Wilhoit** [1] 2:18
**within** [2] 12:14 34:2
**without** [1] 28:19
**witness** [23] 4:10 6:14 6:22 9:17 10:2,7 16:5 17:16 20:6 21:8 22:2,13 23:12,24 27:18 29:18 30:2 30:21 31:4,12 35:1 36:19 38:17
**words** [3] 11:15 15:15 31:5
**writing** [1] 38:7
**written** [6] 6:1 8:7 10:5 16:1 18:18 19:3
**wrong** [3] 23:6 26:22 33:18

**-X-**

**X-ray** [2] 16:22 32:17
**X-rays** [13] 12:9 22:20 22:21 23:4,10 24:1 29:20 31:24 32:3,5,7,9,10

**-Y-**

**year** [4] 7:4,23 12:24 17:14
**years** [2] 4:20 11:2
**young** [8] 3:3 5:17 6:5 8:7 12:5 18:4,7 24:5

**-Z-**

**Zachary** [1] 2:18
**Zuckerman** [1] 2:12

BRANDNER 00632