# EXHIBIT "44"

ORIGINAL

AMERICAN ASSOCIATION OF ORTHOPAEDIC SURGEONS
BOARD OF DIRECTORS MEETING
AAOS PROFESSIONAL COMPLIANCE PROGRAM
GRIEVANCE HEARING

IN RE THE MATTER OF:              )
                                 )
KIPLING P. SHARPE, M.D.,         )
                                 )
        Grievant,                )
                                 )
        and                      ) No. 2008-23
                                 )
PATRICK J. BRANDNER, M.D.,       )
                                 )
        Respondent.              )


        Report of Proceedings, taken before

Mary Woolsey, CSR, License No. 084-002894, at the

Four Seasons Hotel, State Room A and B, 120 East

Delaware, Chicago, Illinois, on Saturday, December

4, 2010, at the hour of 10:10 o'clock a.m.




Reported for
LAKE SHORE REPORTING SERVICE, by:
Mary Woolsey, CSR
License No. 084-002894

Lake Shore Reporting 312-782-9833

BRANDNER 00647

AAOS BOARD OF DIRECTORS:

John J. Callaghan, M.D., President

Daniel J. Berry, M.D., First Vice President

John R. Tongue, M.D., Second Vice President

Frederick M. Azar, M.D., Treasurer

Richard J. Stewart, Chief Financial Officer

Richard J. Barry, M.D., BOC Chair

David D. Teuscher, M.D., BOC Chair-Elect

M. Bradford Henley, M.D., BOS Chair

Jeffrey O. Anglen, M.D., BOS Chair-Elect

David D. Teuscher, M.D., BOS Chair Elect

Gregory A. Mencio, M.D., BOS Secretary

Michael L. Parks, M.D., Member-at-Large

Kevin P. Black, M.D., Member-at-Large

Daniel W. White, M.D., Member-at-Large

Paul Tornetta, III, M.D., Member-at-Large

Zachary Wilhoit, M.S., MBA, Lay Member

AAOS STAFF:

Karen L. Hackett, CAE, RACHE, CEO
Richard N. Peterson, J.D., General Counsel
Melissa Young, J.D., Assistant General Counsel
Rosalind Giulietti, PCP Coordinator
Donna Malert, Executive Assistant

Lake Shore Reporting 312-782-9833

BRANDNER 00648

COMMITTEE MEMBERS:

     Murray J. Goodman, M.D.
         Committee on Professionalism

     Richard D. Schmidt, M.D.
         Judiciary Committee

AAOS OUTSIDE COUNSEL:

     Russell M. Pelton, J.D.

RECUSED:

     Fred C. Redfern, M.D., BOC Secretary

NOT IN ATTENDANCE:

     Joseph D. Zuckerman, M.D.

ALSO PRESENT:

     Patrick J. Brandner, M.D., Respondent

     Aaron R. Maurice, J.D.
         Attorney for the Respondent

       \*    \*    \*    \*    \*

DR. CALLAGHAN: I will turn it over to Russ Pelton.

MR. PELTON: Let the record reflect that this is a meeting of the Board of Director of the American Association of Orthopaedic Surgeons, in Chicago to re-hear recommendations regarding charges of unprofessional conduct brought by Dr. Kipling P. Sharpe against Patrick J. Brandner. Specifically, Dr. Sharpe alleged that Dr. Brandner

BRANDNER 00649

violated Mandatory Standards 3, 4, 6, 7 and 8 of the Standards of Professionalism on Orthopaedic Expert Witness Testimony. Grievance case No. 2008-23.

I remind all present that these discussions, Board deliberations and votes on this grievance are considered confidential matters.

Several weeks ago, the AAOS' Office of General Counsel sent each voting member of the Board a potential Conflict of Interest memo regarding this case, citing the names of the individuals involved in this matter, their respective locations, medical schools, residencies, fellowships and year of admission to the American Board of Orthopaedic Surgery and to the AAOS. Dr. Fred C. Redfern contacted the AAOS Office of General Counsel and indicated a potential conflict of interest and is recused from this matter. Neither party objected to participation by any other member of the Board.

Upon further review, are there any other potential conflicts of interest to be noted at this time?

Hearing none, thank you.

Page 4

BRANDNER 00650

Let the record reflect that Dr. Redfern will not be participating in this proceeding and that Dr. Joseph Zuckerman is not participating, he is not here, so there will be 14 members of the Board participating.

In addition to the members of the Board of Directors, also present today are: Dr. Richard Schmidt, representing the Judiciary Committee; Dr. Murray Goodman, representing the Committee on Professionalism; Karen Hackett, Chief Executive Officer of the AAOS; Richard Peterson, General Counsel; and Melissa Young, Assistant General Counsel; Rosalind Giulietti, Professional Compliance Program Coordinator; and Donna Malert, Executive Assistant. I am Russell Pelton, outside counsel for AAOS. Our court reporter today is Mary Woolsey of Lake Shore Reporting. A copy of the official transcript of this proceeding will be retained in the Office of General Counsel.

Neither Dr. Sharpe nor his attorney are here today. They have submitted a written statement in lieu of a personal appearance which will be read into the record at the appropriate time by Ms. Giulietti of the AAOS. Dr. Brandner is

Lake Shore Reporting 312-782-9833

BRANDNER 00651

here today, along with his attorney, Aaron Maurice, and will be given the opportunity to address the Board in due course.

Let me summarize the case of Sharpe v. Brandner. On October 21, 2008, Dr. Kipling Sharpe of Gilbert, Arizona, filed a grievance alleging violation of Mandatory Standards 3, 4, 6, 7 and 8 of the Standards of Professionalism on Orthopaedic Expert Witness Testimony against Dr. Patrick Brandner of Las Vegas, Nevada. Dr. Brandner responded to and denied those allegations.

The Committee on Professionalism made a prima facie preliminary determination that a hearing was warranted Dr. Sharpe's charges and conducted a grievance hearing on October 2, 2009, at which Dr. Sharpe, Dr. Brandner, and a witness on behalf of Dr. Brandner were present.

At the conclusion of that hearing, the COP Hearing Panel issued its Report and Recommendation that Dr. Brandner had violated Standard Nos. 3, 4 and 7, but not Standard Nos. 6 or 8. The Committee recommended Dr. Brandner be suspended from the AAOS for one year.

Dr. Brandner filed an appeal with the

Page 6

BRANDNER 00652

AAOS Judiciary Committee which heard the matter on March 12, 2010, in New Orleans, Louisiana. Dr. Brandner and his attorney, as well as Dr. Sharpe and his attorney, were present at that hearing. At the conclusion of the hearing, the Judiciary Committee issued its Reports in which it concluded that the COP Hearing Panel had followed due process in this grievance, the grievance at issue raised by Dr. Brandner. Furthermore, the Judiciary Committee unanimously agreed with the COP that Dr. Brandner had violated Standards 3 and 4, and by a majority vote, did not find him in violation of Standard 7. The Judiciary Committee unanimously concurred with the COP's recommendation that Dr. Brandner be suspended for one year.

This case appeared on the Board's agenda on June 19, 2010, but because of allegations of some procedural irregularities, that discussion and its results have been stricken from the record and should be disregarded by the Board. This matter is being heard by the Board de novo.

Dr. Schmidt, Chair of the Judiciary Committee, will summarize the Judiciary Committee's findings and conclusions. Dr. Brandner and his

Lake Shore Reporting 312-782-9833

BRANDNER 00653

counsel will then be allowed ten minutes to address the Board, followed by Ms. Giulietti reading Dr. Sharpe's written statement. Ms. Giulietti has a timer, and the ten-minute limitation will be adhered to.

More than 15 days prior to this date, Dr. Goodman, Chair of the Committee on Professionalism provided written comments on the Report and Recommendation of the Judiciary Committee. Those comments were circulated to Board of Directors and to Drs. Brandner and Sharpe in advance of this meeting. And at the conclusion of all presentations, Board members will have the opportunity to ask clarifying questions of any of the presenters, including Dr. Goodman. So that the court reporter may accurately report this part of the proceeding, we request that each person clearly state your name before asking your question.

After the presentation and any clarifying questions, the Board will go into closed Executive Session.

Dr. Schmidt.

DR. SCHMIDT: Thank you. We are talking about Grievance 2008-23. Kipling Sharpe, M.D. filed a

BRANDNER 00654

grievance against Patrick Brandner, M.D. under the Professional Compliance Program of the AAOS on October 21, 2008, as a result of statements made during testimony -- deposition testimony on August 5, 2005 and trial testimony on April 29, 2008. This medical liability lawsuit alleged Dr. Sharpe was negligent in the performance of a corrective tibial osteotomy for failing to adequately advise the patient of the potential risks and complications of the surgical procedure. The lawsuit resulted in a defense verdict.

The case involved a 15-year-old skeletally mature male who developed peroneal palsy following corrected osteotomy for a 39-degree deformity of a tibia following a fracture.

Another orthopaedic surgeon had treated the patient nonoperatively for six months prior to sending him to Dr. Sharpe. Two other orthopaedic surgeons agreed the surgery was necessary. The surgery was performed in June of 2002. It was complicated by a peroneal palsy and a draining hematoma. A foot drop was noted immediately after the procedure. The patient continued treatment with Dr. Sharpe until 2004. He

Lake Shore Reporting 312-782-9833

BRANDNER 00655

has been left with residuals of a foot drop.

The liability lawsuit was based on informed consent. Dr. Brandner testified that the words "peroneal nerve" must be used in a consent discussion to be within the standard of care. Dr. Sharpe maintained a thorough discussion with the patient and family, which were reflected in his office notes. Depositions by the patient and his mother on June 8, 2005, acknowledge that this discussion was held and that they understood. The testimony changed in a second deposition and at trial in 2008. The grievance alleged violations of Mandatory Standards 3, 4, 6, 7 and 8 of the Expert Witness Standards of Professionalism. The Committee on Professionalism unanimously found that Dr. Brandner was in violation of Standards 3 and 4 as a condemned performance, which fell within the generally accepted standards. The hearing panel also found that Dr. Brandner was in violation of Standard 7 because he testified that this fracture had the potential for remodel, which was not scientifically correct. The Committee on Professionalism recommended that Dr. Brandner have his membership in the AAOS suspended for one year.

Page 10

BRANDNER 00656

On March 12, 2010, the Judiciary Committee met in New Orleans, Louisiana to hear the appeal of Grievance 2008-23. Dr. Brandner was present and accompanied by his attorney, Mr. Aaron Maurice. Dr. Sharpe was also present with his attorney, Bruce Crawford. The official transcript of the appeal hearing has been reviewed. Dr. Richard Schmidt, Chair of the Judiciary Committee, conducted the grievance appeal hearing. The Judiciary Committee members were Edward V. Craig, M.D., Joseph DeFiore, M.D., Richard Geline, M.D., Thomas M. Green, M.D. Staff in attendance were Richard Peterson, General Counsel; Melissa Young, Assistant General Counsel; Rosalind Giulietti, Professional Compliance Program Director; and outside attorney, Michael Chabraja. The Judiciary Committee reviewed all submitted materials, the grievance hearing report from the COP Hearing Panel, and the statements and responses to questions at the appeal hearing by Dr. Sharpe, Dr. Brandner, and their attorneys Mr. Maurice and Mr. Crawford.

After careful consideration, the Judiciary Committee unanimously agreed that the

Lake Shore Reporting 312-782-9833

BRANDNER 00657

AAOS Committee on Professionalism, and the COP Grievance Hearing Panel, had in all respects, adhered to the AAOS Professional Compliance Program Grievance Procedures and afforded both parties due process.

The Judiciary Committee acknowledged the delay in the issuance of the Committee on Professionalism Report and Recommendation; however, pursuant to Section III.D of the AAOS Professional Compliance Program Procedures, the AAOS has sole discretion to extend any time limitation. Furthermore, the Judiciary Committee acknowledged that there were materials, specifically a second set of depositions of the plaintiff and his mother that were not submitted by the Grievant. These documents have been reviewed by the Judiciary Committee and found to be irrelevant as they do not remove the basis for the findings by the Committee on Professionalism.

Number 2. Unanimously affirmed that the COP Hearing Panel's finding that Dr. Brandner violated Standards 3 and 4. The Judiciary Committee acknowledged that there is a discrepancy between the initial and second set of depositions

Lake Shore Reporting 312-782-9833

BRANDNER 00658

of the patient and mother. The Judiciary Committee, however, was not persuaded that the chance -- the change in the testimony given in these later depositions is evidence that Dr. Sharpe failed to perform the -- to inform the patient of peroneal nerve injury. Moreover, the question of whether a violation of the Standards of Professionalism exists is not that he chose to base his opinion on contradictory evidence from the patient and treating physician, but the fact that he chose one version of the plaintiffs' depositions over another. This choice took Dr. Brandner out of the realm of objectively counseling on standard of care and made him condemning of the care provided by Dr. Sharpe. While Dr. Brandner's attorney theorized his client did not condemn Dr. Sharpe's performance nor testify at trial that his actions fell below the standard of care, the Judiciary Committee found otherwise. In Dr. Brandner's deposition of August 5, 2005, he specifically judged Dr. Sharpe to have fallen below the standard of care because certain key words were not present in Dr. Sharpe's notes to document informed consent. In doing so, Dr. Brandner condemned Dr. Sharpe's

Page 13

BRANDNER 00659

performance by disregarding the generally accepted standard.

The AAOS Mandatory Standards of Professionalism apply equally to expert opinion services given in a deposition or in a trial provided for attorneys, litigants, administrative agencies, or the judiciary in the context of administrative, civil or criminal matters and include written expert witnesses as well as sworn testimony. Regardless of whether Dr. Brandner's condemning deposition testimony was used at trial, the fact that he gave the condemning expert witness opinions places him in violation of Mandatory Standards 3 and 4.

By a majority vote, the Judiciary Committee did not find Dr. Brandner in violation of Mandatory Standard No. 7. The Judiciary Committee was not in agreement with the COP Hearing Panel's findings, specifically finding that there was insufficient evidence to support the violation of Standard 7. The Judiciary Committee found that Dr. Brandner displayed sufficient knowledge and experience as to the appropriate standard of care available and available scientific evidence for the

Lake Shore Reporting 312-782-9833

BRANDNER 00660

proximal tibial osteotomy. Furthermore, the Judiciary Committee concluded that the accuracy of Dr. Brandner's testimony on the issue of remodeling could not be determined due to the absence of records, specifically April 22, 2002 X-rays, which by all accounts are no longer available.

Number 4. The Judiciary Committee unanimously affirmed the COP Hearing Panel's findings that Dr. Brandner did not violate Standards 6 and 8 based on the reasoning cited in the COP Hearing Panel's report of December 10, 2009.

The Judiciary Committee found Dr. Brandner in violation of the AAOS Standards of Professionalism on Orthopaedic Expert Witness Testimony Mandatory Standards 3 and 4 were violated but not Standards 6, 7 and 8. Notwithstanding, the Judiciary Committee determined that Dr. Brandner's acts were serious violations of Standards 3 and 4 and unanimously concurred with the COP Hearing Panel's recommendation to the AAOS Board that Patrick J. Brandner, M.D. of Las Vegas, Nevada, have his Fellowship in the American Academy of Orthopaedic Surgeons and the American Association

Lake Shore Reporting 312-782-9833

BRANDNER 00661

of Orthopaedic Surgeons suspended for one year because of unprofessional conduct in the performance of expert witness testimony.

MR. PELTON: Mr. Brandner or Mr. Maurice, you have ten minutes to comment.

MR. MAURICE: Thank you. Any person, any panel, any group, any board that concludes or makes the statement that Dr. Brandner in any way condemned anything that Dr. Sharpe did is either not familiar with the record or has read the record and is not paying any attention to it. This lawsuit between the plaintiff and Dr. Sharpe in which Dr. Brandner offered testimony on behalf of the plaintiff as an expert witness was the classic he-said-she-said situation. This was a situation where Dr. Sharpe claimed that he had advised the patient and his mother, the patient was a minor, prior to their consent for the procedure of the risk to the peroneal nerve. The patient and the patient's mother said that that did not occur. That's what the record establishes. That's why the case went to trial. That's what the depositions established. That cannot be disputed.

Dr. Brandner made it clear at the

Lake Shore Reporting 312-782-9833

BRANDNER 00662

deposition and at trial that he would not testify and he could not testify as to what was or was not said on either of those occasions at Dr. Sharpe's office between Dr. Sharpe and then Dr. Sharpe's medical assistant and the patient and the patient's mother. He made it clear that he couldn't do that. All he could do was explain to the jury that the standard of care for informed consent in the context of this procedure required a discussion of the risk to the peroneal nerve because the incidence rate for nerve palsy with regard to that nerve in the context of this procedure was between 3 and 13 percent. That was it. That was all he did.

Dr. Brandner went there and explained to a jury that with regard to this procedure, you must explain the risk to this nerve when giving their consent and there is a factual dispute between these two sides as to whether that occurred. And, admittedly, Dr. Brandner was asked is there anything in the medical records that identifies that such a discussion occurred. Dr. Brandner truthfully testified there is nothing that specifically identifies a foot drop or a peroneal

BRANDNER 00663

nerve palsy or the risk to the peroneal nerve. It does mention nerve injury. But Dr. Brandner refused to opine one way or another as to what had been said or hadn't been said. So to claim that Dr. Brandner condemned anything in this trial is absurd. If you read the testimony, if you actually read the testimony that was offered by Dr. Brandner, it is incredibly complimentary. I am going to read a small portion of it, and this is out of the trial testimony.

"Question: Putting aside this issue of whether this layperson-type discussion about the nerves and the function of the foot occurred, put that aside, okay? Would you describe Dr. Sharpe's preoperative workup of this young man as excellent? Dr. Brandner's answer: Yes. And all of the appropriate studies were done in terms of planning the surgery? Dr. Brandner's answer: Yes. And, in fact, the surgery from a technical standpoint was performed correctly? Dr. Brandner's answer: Yes. And would you describe it as excellent? Dr. Brandner's answer: Yes. A fairly elegant procedure, is that what you told us earlier? Dr. Brandner's answer: An elegant presentation of the

Lake Shore Reporting 312-782-9833

BRANDNER 00664

definition of the deformity, a hard case, and an excellent application of correction and internal fixation. Question: Okay. You're not suggesting to the jury in any way, shape, or form that Dr. Sharpe did something technically wrong during that surgery to cause this problem with the nerve? Dr. Brander's answer: Absolutely not.

Think about this. In the context of this grievance, Dr. Sharpe is claiming that Dr. Brandner condemned his performance at this trial and Dr. Brandner -- Dr. Sharpe made all sorts of allegations. He had Dr. Brandner testifying to all sorts of different things, and Dr. Sharpe claimed there was no scientific support for any of it, and we established at the earlier levels of these proceedings that Dr. Sharpe's allegations carried no weight. I mean Dr. Sharpe literally put in his grievance that there was no support for Dr. Brandner's testimony at trial that there was a 3 to 13 percent incidence rate of peroneal nerve palsy in the context of this type of procedure.

We produced three studies showing that that was, in fact, the case. One of them, the basis for the actual statistics came from the

Lake Shore Reporting 312-782-9833

BRANDNER 00665

Department of Orthopaedics at Johns Hopkins. I mean, if doctor -- if Dr. Sharpe wanted to take -- and you have to understand, Dr. Sharpe took the position at trial that he had no obligation whatsoever to discuss with the patient or his parents the risk to the peroneal nerve when obtaining their consent for the procedure. That was his first position. His second position was but if you believe that I did have that obligation, I did discuss it. That was the nature of the case.

Dr. Brandner did not opine as to whether that discussion occurred. He just provided the testimony for the jury to understand that when you have an incidence rate as high as this, yes, you have to disclose it. You can't just go operate on somebody without disclosing that there is this kind of a risk. According to Rule 7(f)8, this Board essentially looks at two issues, whether there was due process or whether, whether the recommendation of the Judiciary Committee is supported by the factual record and whether there was due process afforded the Respondent.

With regard to due process, to say that there were a series of procedural missteps in

Lake Shore Reporting 312-782-9833

BRANDNER 00666

this process from the very beginning would be a monumental understatement. There were errors at the screening panel level. There were errors at the COP Hearing Panel level. There were errors at the judiciary panel level, Judiciary Committee level, pardon me. Two points have to be made about those errors. The first one is the whole reason you have the procedures are to ensure that no fellow, no member of the Academy is ever suspended or expelled without due process of law. They are allowed to have a fair fight. They are allowed to know the allegations that are made against them. They are allowed to show up and respond to those allegations. That is the whole purpose for the rules. And the second thing is, there is nothing that we can do. There is -- I shouldn't say we. There is nothing that this Board can do at this stage of the proceedings to correct the defects that occurred at the screening panel level. There is nothing that this Board can do to correct the defects that occurred at the COP hearing panel level, and there is nothing that this Board can do to correct the defects that occurred at the Judiciary Committee level. So while I appreciate

Lake Shore Reporting 312-782-9833

BRANDNER 00667

the Board's willingness to rehear this grievance, the reality is this process was tainted long ago. It was tainted when Dr. Sharpe mischaracterized the testimony of Dr. Brandner in his original grievance.

Dr. Brandner never testified that this fracture could substantially remold. That was complete -- remodel. That was complete nonsense. We showed that -- or Dr. Brandner, pardon me, showed that at the hearing panel level.

Dr. Brandner never advocated for a, advocated there was any ability for this injury to naturally heal itself or to remodel to any extent that that would become functional for the level of activity that this patient had.

With regard -- well, Dr. Sharpe's failure to produce the deposition transcripts of the plaintiff and his mother and the transcripts from the trial and for the plaintiff and his mother at the COP hearing panel, which Dr. Brandner repeatedly raised as an issue, should have given the COP hearing panel all sorts of red flags. If you have one -- if you have a grievant claiming that the other side based their testimony on an

BRANDNER 00668

improper review of the depositions, and there are,

in fact, only half of the depositions that were

taken in the case have been presented to the Board,

and you have a respondent saying that I don't have

access to these, the only person who has access to

these is Dr. Sharpe, why the COP Hearing Panel did

not sit there and say under the rules we have the

ability to request that Dr. Sharpe provide these.

Why they didn't take that opportunity, I don't

know.

But the simple fact is it might have

something to do with the fact that Dr. Sharpe lied

to the COP hearing panel. He specifically stated,

he interjected into Dr. Brandner's portion of the

presentation that he believed he had produced all

of the deposition transcripts. Now he's later

changed that to say is what I meant is all of the

relevant deposition transcripts. What he said to

the COP Hearing Panel was I believe I have produced

all of the deposition transcripts. He knew that

wasn't true. That was absolute nonsense. He knew

the reason this case went to trial was because

there was conflicting testimony. He understood

that. His motion for summary judgment had been

Lake Shore Reporting 312-782-9833

BRANDNER 00669

denied. The reason why the plaintiff and his mother got their day in front of the jury was because there was a conflict in the testimony. So for him to stand there and represent to the COP Hearing Panel that he had produced it all, absolutely nonsense.

With regard just for purposes of the record, I want to identify the specific provisions of grievance procedures that were violated and identify the steps at which they were violated.

MR. PELTON: Counsel, your time is getting limited but go ahead.

MR. MAURICE: Well, with regard to the screening panel, Rule 7(a)1, Rule 7(b)2, Rule 7(b)3, Rule 6(b)1, Rule 7(b), Rule 7(c)11. At the COP Hearing Panel level, Rule 6(b)1, Rule 6(c), Rule 7(a)5, Rule 7(d)9, Rule 7(d)14, and Rule 6(b)3. And at the Judiciary Committee level, Rule 7(e)15, Rule 7(e)11, Rule 7(e)12, and Rule 6(b)3. There is nothing that this Board can do to correct those infirmities.

Because time is short, let's look at the Judiciary Committee. The Judiciary Committee's Report, and I only have to read two sentences of it

Lake Shore Reporting 312-782-9833

BRANDNER 00670

because they only find violations of Rules 3 and 4, it specifically says, "The Judiciary Committee, however, was not persuaded that the change in testimony given in these later depositions is evidence that Dr. Sharpe failed to inform the patient of peroneal nerve injury. Moreover, the question of whether a violation of the Standards of Professionalism exists is not that he chose to base his opinion on contradictory evidence from the patient and treating physicians, but the fact that he chose one version of plaintiff's deposition over another. This choice took Dr. Brandner out of the realm of objectively counseling on standard of care and made him condemning of the care provided by Dr. Sharpe. If you can't see the glaring problem with that statement, that is the basis for the Judiciary Committee's recommendation of suspension of my client, if you can't see the glaring problem with that exact statement, you need to talk to your legal counsel. The simple fact is that at the time Dr. Brandner testified, he was testifying under the mandatory standards that existed. They were enacted in April 2005. There was no obligation of a member testifying as an expert witness to review

Lake Shore Reporting 312-782-9833

BRANDNER 00671

any deposition transcripts under those mandatory standards.

In other words, you have the Judiciary Committee saying the reason he violated Rules 3 and 4 was because he chose one version of deposition testimony over another. Not until May of 2010 did this body modify the mandatory standards to even require a physician that was testifying as an expert witness to review deposition transcripts. It wasn't even in the rules.

MR. PELTON: Counsel, Counsel, your time is up.

Ms. Giulietti, do you have Dr. Sharpe's statement prepared to read?

MS. GIULIETTI: Yes, I do. This will constitute Dr. Kipling Sharpe's written statement in anticipation of the Board of Directors' consideration of this grievance on December 4, 2010. It is intended to briefly address the Judiciary Committee's Appeal Hearing Report to the Board of Directors.

Dr. Sharpe appeared in person, with counsel, for the appeal hearing on March 12, 2010. He did so because he takes this grievance seriously and because Dr. Brandner made threats against AAOS

Page 26

BRANDNER 00672

and him in written appeal letters dated December 29, 2009 and February 24, 2010. Although he believed them irrelevant to the grievance, Dr. Sharpe advised the Judiciary Committee he had no objection to it considering the new materials submitted by Dr. Brandner. See Transcript of Proceedings, March 12, 2010, Page 26, Line 14 through Page 27, Line 3. The Committee considered the new material submitted by Dr. Brandner. It agreed they were irrelevant. See Appeal Hearing Report to the Board of Directors, discussion and summary, April 21, 2010, Pages 7 and 8, Items 1 and 2.

Judiciary Committee's findings. Number 1. Due Process. The Judiciary Committee correctly found Dr. Brandner was afforded due process. Although not required to do so, it considered all of the new materials and arguments offered by Dr. Brandner. Again, Dr. Sharpe made it clear he had no objection to the Judiciary Committee considering that information.

Number 2. Dr. Brandner's violation of Mandatory Standards Nos. 3 and 4. The Judiciary Committee correctly found Dr. Brandner had violated

Lake Shore Reporting 312-782-9833

BRANDNER 00673

Standards No. 3 and 4. The deposition testimony which Dr. Brandner reviewed before agreeing to be an expert witness against Dr. Sharpe was the following: The patient's, taken on January 29, 2004. Question: Before you had the surgery, did Dr. Sharpe ever discuss with you or did anyone discuss with you you might end up with a foot drop? Answer: Yes. He told me all the things that could happen. I would -- it could have nerve damage and he said all the things. He even mentioned death. The -- we had an anesthesiologist and there could be accidents and stuff. There was a lot of things.

The patient's mother deposition taken on January 29, 2004. Question: What do you mean by foot drop? Answer: There are -- there are nerves that control the flex in a foot and because the bone had been twisted and the -- there was a callus on it, it had put pressure on those nerves, and Dr. Sharpe had said that when he moves it back into alignment and corrects all that, that those particular nerves might be stretched and might be damaged because of that and that's what happened. Question: One thing I forgot. I swear to you it was here and I forgot to ask. Is there any doubt

Page 28

BRANDNER 00674

in your mind that the nerve injury occurred during Dr. Sharpe's surgery? Answer The Witness: I think it happened because the leg had to be rebroken and I think that it happened because it -- everything had to be moved around. Question: Okay. Did you talk to Dr. Sharpe about that? Answer: He had warned us prior to that, you know, movement of that bone, when he had to put it back in place could cause various things. He went through a list of many things.

Dr. Sharpe's deposition taken on May 19, 2004. Question: One of the issues you discuss in the informed consent discussion is nerve injury, correct? Yes. Question: And in general you tell the patient even in the hands of the best surgeon, certain adverse outcomes can occur and you have to be aware of them, correct? Answer: Yes. Question: What sort of nerve injury can occur even when you do the best job possible? Answer: The Witness: Well, I was specifically concerned in this case about the risk of peroneal nerve injury and correcting the valgus deformity. I did discuss that with him. Question: Did you discuss the peroneal nerve specifically with him? Answer:

Lake Shore Reporting 312-782-9833

BRANDNER 00675

Yes.

In addition, Dr. Brandner had copies of the April 11, 2002 and June 6, 2002 office notes. They both documented extensive informed consent discussions, including the risk of nerve injury. Despite this information, Dr. Brandner agreed to be an expert witness against Dr. Sharpe and testify Dr. Sharpe had breached the standard of care. By doing so: Dr. Brandner violated Standards Nos. 3 and 4.

Point Number 3. Mandatory Standard No. 7. Dr. Sharpe respectfully disagrees with the Judiciary Committee's finding. Dr. Sharpe made his surgical recommendation based on X-rays taken at his office on March 22, 2002. Those X-rays were available and provided to the COP Hearing Panel. The COP Hearing Panel members reviewed them during the hearing. They were a part of the Judiciary Committee's appeal file. They show the angular deformity and that the growth plates were closed. Dr. Brandner's deposition testimony that the preoperative X-rays demonstrated the growth plates were not closed and that there was potential for remodeling was medically wrong. The COP Hearing

BRANDNER 00676

Panel's conclusion that Dr. Brandner had violated Standard No. 7 was correct. In fact, as part of his appeal, Dr. Brandner has now admitted he never reviewed the X-rays upon which Dr. Sharpe based his recommendations before he agreed to testify as an expert witness against Dr. Sharpe. See Appeal Letter dated December 29, 2009, Page 5, Footnotes 5, 6 and 7. See also Appeal Letter dated February 24, 2010, Pages 10 to 11, Footnotes 6, 7, 8 and 9.

Judiciary Committee's recommendations: The Judiciary Committee's recommendation is appropriate. Such serious violations of Standards Nos. 3 and 4 warrant a one-year suspension. The Board is also reminded Dr. Brandner has now admitted during the appeal process he agreed to be an expert witness and testify against Dr. Sharpe despite never having reviewed the very X-rays upon which Dr. Sharpe based his surgical recommendations.

MR. PELTON: All right. Do any of the members of the Board have any questions for any of the presenters or Dr. Goodman or Schmidt?

MR. MAURICE: Is there any opportunity to make a response to -- Pardon me. Aaron Maurice. Is

Page 31

BRANDNER 00677

there any opportunity to make a response to the, even for a minute, to Dr. Sharpe's written statement? Or would any member please ask me to make such a response?

MR. PELTON: You exceeded your time before by about a minute and a half. We will give you 30 seconds of time.

MR. MAURICE: I appreciate that. Dr. Sharpe's response repeatedly states "before he agreed to testify," "before he agreed to testify." He said, "Before Dr. Brandner agreed to testify, he didn't read the depos." "Before Dr. Brandner agreed to testify, he didn't review the X-rays." This happened at the Judiciary Committee.

At the Judiciary Committee, Mr. Crawford, which is Dr. Sharpe's attorney, recognized that there were some problems with the allegations that were made, that there was no factual support for them and so what Mr. Crawford did was he said, hey, let's just break this down to the most basic, the most basic form of this, and what he said was Dr. Brandner never should have agreed to be an expert in this case. That's what he said. Should never have agreed to be an expert

Lake Shore Reporting 312-782-9833

BRANDNER 00678

in the case. It's the exact same thing Dr. Sharpe just said about ten times in his written statement.

Here is the problem with that. Dr. Brandner agreed to be an expert in this case in October 2004. October of 2004. The Mandatory Standards for expert witness testimony were adopted in April of 2005. You cannot find that Dr. Brandner violated the Mandatory Standards that were adopted in April 2005 when he agreed to act as an expert witness in October 2004. It makes no sense.

MR. PELTON: Your 30 seconds are up.

MR. MAURICE: I apologize. Thank you.

MR. PELTON: Any questions from any of the presenters? Committee chairs? All right. Thank you. The Board will go into closed Executive Session now.

DR. CALLAGHAN: We will go into closed Executive Session now. Thank you very much.

(WHEREUPON, the Board of Directors went into closed Executive Session.)

MR. PELTON: Let the record reflect the Board in closed Executive Session voted to approve and adopt the recommendation of the Judiciary Committee

Page 33

BRANDNER 00679

that Dr. Patrick Brandner violated Standards 3 and 4 and his membership in the AAOS should be suspended for one year. I should also comment Dr. Anglen missed part of the discussion and did not vote, which meant we had 13 voting members present. The vote was unanimous in secret ballot. Off the record.

                    (Which were all the proceedings
                     had in the above-entitled
                     matter.)

Page 34

BRANDNER 00680

STATE OF ILLINOIS      )
                       )
COUNTY OF COOK         )

I, MARY WOOLSEY, C.S.R., do hereby certify that I am a court reporter doing business in the City of Chicago; that I reported in shorthand the hearing of the above-entitled cause on December 4, 2010; and that the foregoing is a true and correct transcript of my shorthand notes so taken as aforesaid.

Certified Shorthand Reporter

Illinois C.S.R. License No. 084-002894

Page 35

BRANDNER 00681

## A

AAOS 1:2 2:1 2:18 3:5 4:8,15 4:16 5:11,16 5:24 6:23 7:1 9:2 10:24 12:1 12:3,9,10 14:3 15:14,21 26:24 34:2
Aaron 3:13 6:1 11:4 31:24
ability 22:12 23:8
above-entitled 34:9 35:7
absence 15:4
absolute 23:21
absolutely 19:7 24:6
absurd 18:6
Academy 15:23 21:9
accepted 10:18 14:1
access 23:5,5
accidents 28:12
accompanied 11:4
accounts 15:6
accuracy 15:2
accurately 8:16
acknowledge 10:9
acknowledged 12:6,12,23
act 33:9
actions 13:17
activity 22:15
acts 15:19
actual 19:24
addition 5:6 30:2
address 6:2 8:1 26:18
adequately 9:8
adhered 8:5 12:3
administrative 14:6,8

admission 4:14
admitted 31:3 31:15
admittedly 17:20
adopt 33:24
adopted 33:6,9
advance 8:12
adverse 29:16
advise 9:8
advised 16:16 27:4
advocated 22:11 22:12
affirmed 12:20 15:8
afforded 12:4 20:22 27:16
aforesaid 35:10
agencies 14:7
agenda 7:17
ago 4:8 22:2
agreed 7:10 9:19 11:24 27:10 30:7 31:5,15 32:9,10,11,12 32:23,24 33:4 33:9
agreeing 28:2
agreement 14:18
ahead 24:12
alignment 28:20
allegations 6:11 7:17 19:12,16 21:12,14 32:18
alleged 3:24 9:6 10:12
alleging 6:6
allowed 8:1 21:11,11,13
American 1:1 3:20 4:14 15:23,24
anesthesiologist 28:11
Anglen 2:10 34:4
angular 30:19

answer 18:16,18 18:20,22,24 19:7 28:8,15 29:2,6,17,19 29:24
anticipation 26:16
apologize 33:12
appeal 6:24 11:3 11:7,9,20 26:19,22 27:1 27:10 30:19 31:3,6,8,15
appearance 5:22
appeared 7:16 26:21
application 19:2
apply 14:4
appreciate 21:24 32:8
appropriate 5:23 14:23 18:17 31:12
approve 33:23
April 9:5 15:5 25:23 27:12 30:3 33:7,9
arguments 27:18
Arizona 6:6
aside 18:11,14
asked 17:20
asking 8:18
assistant 2:20,21 5:12,15 11:14 17:5
Association 1:1 3:20 15:24
attendance 3:9 11:12
attention 16:11
attorney 3:13 5:20 6:1 7:3,4 11:4,6,16 13:15 32:16
attorneys 11:21 14:6
August 9:4 13:20

available 14:24 14:24 15:6 30:16
aware 29:17
Azar 2:5
a.m 1:15

## B

B 1:13
back 28:19 29:8
ballot 34:6
Barry 2:7
base 13:8 25:8
based 10:2 15:10 22:24 30:14 31:4,18
basic 32:21,21
basis 12:18 19:24 25:16
beginning 21:1
behalf 6:17 16:13
believe 20:9 23:19
believed 23:15 27:3
Berry 2:3
best 29:15,19
Black 2:14
board 1:1 2:1 3:19 4:6,10,15 4:20 5:5,7 6:3 7:20,21 8:2,10 8:13,20 15:21 16:7 20:18 21:17,20,22 23:3 24:20 26:16,20 27:11 31:14,21 33:15 33:19,22
Board's 7:16 22:1
BOC 2:7,8 3:8
body 26:7
bone 28:17 29:8
BOS 2:9,10,11 2:12
Bradford 2:9

Brander's 19:7
Brandner 1:8 3:12,23,24 5:24 6:5,10,10 6:16,17,20,22 6:24 7:3,9,10 7:14,24 8:11 9:1 10:3,16,19 10:23 11:3,21 12:21 13:12,24 14:16,22 15:9 15:14,22 16:4 16:8,13,24 17:15,20,23 18:2,5,8 19:10 19:11,12 20:11 22:4,6,9,11,20 25:12,21 26:24 27:6,9,16,19 27:24 28:2 30:2,6,9 31:1,3 31:14 32:11,12 32:22 33:4,8 34:1
Brandner's 13:15,19 14:10 15:3,18 18:16 18:18,20,22,24 19:19 23:14 27:22 30:21
breached 30:8
break 32:20
briefly 26:18
brought 3:22
Bruce 11:6
business 35:5

## C

C 3:8 4:16
CAE 2:19
Callaghan 2:2 3:16 33:17
callus 28:18
care 10:5 13:14 13:14,18,22 14:23 17:8 25:13,14 30:9
careful 11:23

carried 19:16
case 4:3,11 6:4
  7:16 9:12
  16:22 19:1,23
  20:10 23:3,22
  29:21 32:23
  33:1,4
cause 19:6 29:9
  35:7
CEO 2:19
certain 13:22
  29:16
Certified 35:14
certify 35:5
Chabraja 11:16
Chair 2:7,9,11
  7:22 8:7 11:8
chairs 33:14
Chair-Elect 2:8
  2:10
chance 13:3
change 13:3 25:3
changed 10:11
  23:17
charges 3:22
  6:14
Chicago 1:14
  3:21 35:6
Chief 2:6 5:10
choice 13:12
  25:12
chose 13:8,11
  25:8,11 26:5
circulated 8:10
cited 15:10
citing 4:11
City 35:6
civil 14:8
claim 18:4
claimed 16:16
  19:13
claiming 19:9
  22:23
clarifying 8:14
  8:20
classic 16:14
clear 16:24 17:6
  27:20

clearly 8:17
client 13:16
  25:18
closed 8:20
  30:20,23 33:15
  33:17,20,23
comment 16:5
  34:3
comments 8:8,10
Committee 3:1,2
  3:4 5:9,10 6:12
  6:22 7:1,6,9,13
  7:23 8:7,10
  10:15,22 11:2
  11:8,10,17,24
  12:1,6,7,12,17
  12:18,23 13:2
  13:19 14:16,17
  14:21 15:2,7
  15:13,18 20:20
  21:5,24 24:18
  24:23 25:2
  26:4 27:4,8,15
  27:21,24 32:14
  32:15 33:14,24
Committee's
  7:23 24:23
  25:17 26:19
  27:14 30:13,19
  31:10,11
complete 22:8,8
Compliance 1:2
  5:14 9:2 11:15
  12:3,10
complicated
  9:21
complications
  9:10
complimentary
  18:8
concerned 29:20
concluded 7:6
  15:2
concludes 16:7
conclusion 6:18
  7:5 8:12 31:1
conclusions 7:24
concurred 7:13

15:20
condemn 13:16
condemned
  10:17 13:24
  16:9 18:5
  19:10
condemning
  13:14 14:11,12
  25:14
conduct 3:22
  16:2
conducted 6:15
  11:9
confidential 4:7
conflict 4:10,17
  24:3
conflicting 23:23
conflicts 4:22
consent 10:3,4
  13:23 16:18
  17:8,18 20:7
  29:13 30:5
consideration
  11:23 26:17
considered 4:7
  27:8,18
considering 27:5
  27:21
constitute 26:15
contacted 4:16
context 14:7
  17:9,12 19:8
  19:21
continued 9:24
contradictory
  13:9 25:9
control 28:16
COOK 35:2
Coordinator
  2:20 5:14
COP 6:19 7:7,10
  11:18 12:1,21
  14:18 15:8,11
  15:20 21:4,21
  22:20,22 23:6
  23:13,19 24:4
  24:16 30:16,17
  30:24

copies 30:2
copy 5:17
COP's 7:14
correct 10:22
  21:18,20,23
  24:20 29:14,17
  31:2 35:9
corrected 9:14
correcting 29:22
correction 19:2
corrective 9:7
correctly 18:20
  27:16,24
corrects 28:20
counsel 2:19,20
  3:5 4:9,17 5:12
  5:13,16,19 8:1
  11:13,14 24:11
  25:20 26:11,11
  26:22
counseling 13:13
  25:13
COUNTY 35:2
course 6:3
court 5:16 8:16
  35:5
Craig 11:10
Crawford 11:6
  11:22 32:16,19
criminal 14:8
CSR 1:12,20
C.S.R 35:4,16

**D**
D 2:8,11 3:3,10
damage 28:9
damaged 28:22
Daniel 2:3,15
date 8:6
dated 27:1 31:7
  31:8
David 2:8,11
day 24:2
days 8:6
de 7:21
death 28:10
December 1:14
  15:11 26:17

27:1 31:7 35:8
defects 21:18,21
  21:23
defense 9:11
definition 19:1
DeFiore 11:11
deformity 9:15
  19:1 29:22
  30:20
Delaware 1:14
delay 12:7
deliberations
  4:6
demonstrated
  30:22
denied 6:11 24:1
Department
  20:1
depos 32:12
deposition 9:4
  10:11 13:20
  14:5,11 17:1
  22:17 23:16,18
  23:20 25:11
  26:1,5,9 28:1
  28:13 29:11
  30:21
depositions 10:8
  12:14,24 13:4
  13:11 16:22
  23:1,2 25:4
describe 18:14
  18:21
despite 30:6
  31:17
determination
  6:13
determined 15:4
  15:18
developed 9:13
different 19:13
Director 3:19
  11:15
Directors 1:1 2:1
  5:7 8:11 26:16
  26:20 27:11
  33:20
disagrees 30:12

BRANDNER 00683

disclose 20:15
disclosing 20:16
discrepancy 12:23
discretion 12:11
discuss 20:5,10 28:6,7 29:12 29:22,23
discussion 7:18 10:5,6,10 17:9 17:22 18:12 20:12 27:11 29:13 34:4
discussions 4:6 30:5
displayed 14:22
dispute 17:18
disputed 16:23
disregarded 7:20
disregarding 14:1
doctor 20:2
document 13:23
documented 30:4
documents 12:16
doing 13:24 30:9 35:5
Donna 2:21 5:14
doubt 28:24
Dr 3:16,22,24,24 4:15 5:1,3,7,9 5:20,24 6:5,9 6:10,14,16,16 6:17,20,22,24 7:2,3,9,10,14 7:22,24 8:2,7 8:15,22,23 9:6 9:18,24 10:3,5 10:16,19,23 11:3,5,7,20,20 12:21 13:4,12 13:15,15,16,19 13:21,23,24,24 14:10,16,21 15:3,9,13,18

16:8,9,12,13
16:16,24 17:3
17:4,4,15,20
17:22 18:2,5,7
18:14,16,18,20
18:21,23 19:4
19:6,9,9,11,11
19:12,13,16,17
19:18 20:2,3
20:11 22:3,4,6
22:9,11,16,20
23:6,8,12,14
25:5,12,14,21
26:12,15,21,24
27:3,6,9,16,19
27:19,22,24
28:2,3,6,19
29:2,6,11 30:2
30:6,7,8,9,12
30:13,21 31:1
31:3,4,6,14,16
31:18,22 32:2
32:8,11,12,16
32:22 33:1,3,7
33:17 34:1,3
draining 9:22
drop 9:22 10:1 17:24 28:7,15
Drs 8:11
due 6:3 7:7 12:4 15:4 20:19,22 20:23 21:10 27:15,16

_____E_____

earlier 18:23 19:15
East 1:13
Edward 11:10
either 16:9 17:3
Elect 2:11
elegant 18:22,24
enacted 25:23
ensure 21:8
equally 14:4
errors 21:2,3,4,7
essentially 20:18
established

16:23 19:15
establishes 16:21
evidence 13:4,9 14:20,24 25:5 25:9
exact 25:19 33:1
exceeded 32:5
excellent 18:15 18:21 19:2
Executive 2:21 5:11,15 8:21 33:15,18,21,23
existed 25:22
exists 13:8 25:8
expelled 21:10
experience 14:23
expert 4:3 6:9 10:13 14:4,9 14:12 15:15 16:3,14 25:24 26:9 28:3 30:7 31:6,16 32:23 32:24 33:4,6 33:10
explain 17:7,17
explained 17:15
extend 12:11
extensive 30:4
extent 22:13

_____F_____

facie 6:13
fact 13:10 14:12 18:19 19:23 23:2,11,12 25:10,20 31:2
factual 17:18 20:21 32:19
failed 13:5 25:5
failing 9:8
failure 22:17
fair 21:11
fairly 18:22
fallen 13:21
familiar 16:10
family 10:7
February 27:2

31:8
fell 10:17 13:18
fellow 21:9
Fellowship 15:23
fellowships 4:14
fight 21:11
file 30:19
filed 6:6,24 8:24
Financial 2:6
find 7:12 14:16 25:1 33:7
finding 12:21 14:19 30:13
findings 7:24 12:18 14:19 15:9 27:14
first 2:3 20:8 21:7
fixation 19:3
flags 22:22
flex 28:16
followed 7:7 8:2
following 9:14 9:15 28:4
foot 9:22 10:1 17:24 18:13 28:7,15,16
Footnotes 31:7,9
foregoing 35:8
forgot 28:23,24
form 19:4 32:21
found 10:15,19 12:17 13:19 14:21 15:13 27:16,24
Four 1:13
fracture 9:15 10:20 22:7
Fred 3:8 4:16
Frederick 2:5
front 24:2
function 18:13
functional 22:14
further 4:21
Furthermore 7:9 12:12 15:1

_____G_____

Geline 11:11
general 2:19,20 4:9,17 5:12,13 5:19 11:13,14 29:14
generally 10:18 14:1
getting 24:11
Gilbert 6:6
Giulietti 2:20 5:13,24 8:2,3 11:14 26:12,14
give 32:6
given 6:2 13:3 14:5 22:21 25:4
giving 17:17
glaring 25:15,18
go 8:20 20:15 24:12 33:15,17
going 18:9
Goodman 3:2 5:9 8:7,15 31:22
Green 11:12
Gregory 2:12
grievance 1:2 4:3,7 6:6,15 7:8,8 8:24 9:1 10:12 11:3,9 11:18 12:2,4 19:9,18 22:1,5 24:9 26:17,23 27:3
grievant 1:6 12:15 22:23
group 16:7
growth 30:20,22

_____H_____

Hackett 2:19 5:10
half 23:2 32:6
hands 29:15
happen 28:9
happened 28:22 29:3,4 32:14

hard 19:1
heal 22:13
hear 11:2
heard 7:1,21
hearing 1:2 4:24
   6:14,15,18,19
   7:4,5,7 10:18
   11:7,9,18,18
   11:20 12:2,21
   14:18 15:8,11
   15:20 21:4,21
   22:10,20,22
   23:6,13,19
   24:5,16 26:19
   26:22 27:10
   30:16,17,18,24
   35:7
held 10:10
hematoma 9:22
Henley 2:9
hey 32:20
he-said-she-said
   16:15
high 20:14
Hopkins 20:1
Hotel 1:13
hour 1:15

**I**

identifies 17:22
   17:24
identify 24:8,10
III 2:16
III.D 12:9
Illinois 1:14 35:1
   35:16
immediately
   9:23
improper 23:1
incidence 17:11
   19:20 20:14
include 14:9
including 8:15
   30:5
incredibly 18:8
indicated 4:17
individuals 4:12
infirmities 24:21

inform 13:5 25:5
information
   27:21 30:6
informed 10:3
   13:23 17:8
   29:13 30:4
initial 12:24
injury 13:6 18:2
   22:12 25:6
   29:1,13,18,21
   30:6
insufficient
   14:20
intended 26:18
interest 4:10,18
   4:22
interjected
   23:14
internal 19:2
involved 4:12
   9:12
irregularities
   7:18
irrelevant 12:17
   27:3,10
issuance 12:7
issue 7:8 15:3
   18:11 22:21
issued 6:19 7:6
issues 20:18
   29:12
Items 27:12

**J**

J 1:8 2:2,3,6,7
   3:2,12,23
   15:22
January 28:4,14
Jeffrey 2:10
job 29:19
John 2:2,4
Johns 20:1
Joseph 3:10 5:3
   11:11
judged 13:21
judgment 23:24
judiciary 3:4 5:8
   7:1,5,9,13,22

7:23 8:9 11:1,8
   11:10,16,24
   12:6,12,16,22
   13:1,18 14:7
   14:15,17,21
   15:2,7,13,18
   20:20 21:5,5
   21:24 24:18,23
   24:23 25:2,16
   26:3,19 27:4
   27:14,15,20,23
   30:13,18 31:10
   31:11 32:14,15
   33:24
June 7:17 9:20
   10:9 30:3
jury 17:7,16
   19:4 20:13
   24:2
J.D 2:19,20 3:6
   3:13

**K**

Karen 2:19 5:10
Kevin 2:14
key 13:22
kind 20:17
Kipling 1:5 3:23
   6:5 8:24 26:15
knew 23:20,21
know 21:12
   23:10 29:7
knowledge
   14:22

**L**

L 2:13,19
Lake 1:20 5:17
Las 6:10 15:22
law 21:10
lawsuit 9:6,11
   10:2 16:12
Lay 2:17
layperson-type
   18:12
left 10:1
leg 29:3
legal 25:20

Letter 31:7,8
letters 27:1
let's 24:22 32:20
level 21:3,4,5,6
   21:19,22,24
   22:10,14 24:16
   24:18
levels 19:15
liability 9:6 10:2
License 1:12,21
   35:16
lied 23:12
lieu 5:22
limitation 8:4
   12:11
limited 24:12
Line 27:7,8
list 29:9
literally 19:17
litigants 14:6
locations 4:13
long 22:2
longer 15:6
look 24:22
looks 20:18
lot 28:12
Louisiana 7:2
   11:2

**M**

M 2:5,9 3:6
   11:12
maintained 10:6
majority 7:11
   14:15
male 9:13
Malert 2:21 5:14
man 18:15
mandatory 4:1
   6:7 10:13 14:3
   14:13,17 15:16
   25:22 26:1,7
   27:23 30:11
   33:5,8
March 7:2 11:1
   26:22 27:7
   30:15
Mary 1:12,20

5:16 35:4
material 27:9
materials 11:17
   12:13 27:5,18
matter 1:4 4:12
   4:18 7:1,21
   34:10
matters 4:7 14:8
mature 9:13
Maurice 3:13
   6:1 11:5,21
   16:4,6 24:13
   31:23,24 32:8
   33:12
MBA 2:17
mean 19:17 20:2
   28:14
meant 23:17
   34:5
medical 4:13 9:6
   17:5,21
medically 30:24
meeting 1:1 3:19
   8:12
Melissa 2:20
   5:12 11:13
member 2:17 4:9
   4:20 21:9
   25:24 32:3
members 3:1 5:5
   5:6 8:13 11:10
   30:17 31:20
   34:5
membership
   10:24 34:2
Member-at-L...
   2:13,14,15,16
memo 4:10
Mencio 2:12
mention 18:2
mentioned 28:10
met 11:2
Michael 2:13
   11:16
mind 29:1
minor 16:17
minute 32:2,6
minutes 8:1 16:5

BRANDNER 00685

mischaracteri... 22:3
missed 34:4
missteps 20:24
modify 26:7
months 9:17
monumental 21:2
mother 10:9 12:14 13:1 16:17,20 17:6 22:18,19 24:2 28:13
motion 23:24
moved 29:5
movement 29:7
moves 28:19
Murray 3:2 5:9
M.D 1:5,8 2:2,3 2:4,5,7,8,9,10 2:11,12,13,14 2:15,16 3:2,3,8 3:10,12 8:24 9:1 11:11,11 11:11,12 15:22
M.S 2:17

N
N 2:19
name 8:18
names 4:11
naturally 22:13
nature 20:10
necessary 9:20
need 25:19
negligent 9:7
Neither 4:19 5:20
nerve 10:4 13:6 16:19 17:10,11 17:12,17 18:1 18:1,2 19:6,20 20:6 25:6 28:9 29:1,13,18,21 29:24 30:5
nerves 18:13 28:16,18,21
Nevada 6:10

15:22
never 22:6,11 31:3,17 32:22 32:24
new 7:2 11:2 27:5,9,18
nonoperatively 9:17
nonsense 22:8 23:21 24:6
Nos 6:21,21 27:23 30:10 31:13
noted 4:22 9:22
notes 10:8 13:23 30:4 35:9
Notwithstandi... 15:17
novo 7:21
Number 12:20 15:7 27:15,22 30:11

O
O 2:10
objected 4:19
objection 27:5 27:20
objectively 13:13 25:13
obligation 20:4,9 25:23
obtaining 20:7
occasions 17:3
occur 16:20 29:16,18
occurred 17:20 17:22 18:13 20:12 21:19,21 21:23 29:1
October 6:5,15 9:3 33:5,5,10
offered 16:13 18:7 27:19
office 4:8,16 5:19 10:8 17:4 30:3,15
Officer 2:6 5:11

official 5:18 11:6
okay 18:14 19:3 29:5
one-year 31:13
operate 20:15
opine 18:3 20:11
opinion 13:9 14:4 25:9
opinions 14:13
opportunity 6:2 8:14 23:9 31:23 32:1
original 22:4
Orleans 7:2 11:2
orthopaedic 1:1 3:20 4:2,15 6:8 9:16,19 15:15 15:24 16:1
Orthopaedics 20:1
osteotomy 9:8 9:14 15:1
outcomes 29:16
outside 3:5 5:15 11:16
o'clock 1:15

P
P 1:5 2:14 3:23
Page 27:7,8 31:7
Pages 27:12 31:9
palsy 9:13,21 17:11 18:1 19:20
panel 6:19 7:7 10:18 11:19 12:2 16:7 21:3 21:4,5,19,21 22:10,20,22 23:6,13,19 24:5,14,16 30:16,17
Panel's 12:21 14:18 15:8,11 15:21 31:1
pardon 21:6 22:9 31:24
parents 20:6

Parks 2:13
part 8:16 30:18 31:2 34:4
participating 5:2,4,5
participation 4:19
particular 28:21
parties 12:4
party 4:19
patient 9:9,17,23 10:7,8 13:1,5 13:10 16:17,17 16:19 17:5 20:5 22:15 25:6,10 29:15
patient's 16:20 17:5 28:4,13
Patrick 1:8 3:12 3:23 6:9 9:1 15:22 34:1
Paul 2:16
paying 16:11
PCP 2:20
Pelton 3:6,17,18 5:15 16:4 24:11 26:11 31:20 32:5 33:11,13,22
percent 17:13 19:20
perform 13:5
performance 9:7 10:17 13:17 14:1 16:3 19:10
performed 9:20 18:20
peroneal 9:13,21 10:4 13:6 16:19 17:10,24 18:1 19:20 20:6 25:6 29:21,24
person 8:17 16:6 23:5 26:21
personal 5:22
persuaded 13:2

25:3
Peterson 2:19 5:11 11:13
physician 13:10 26:8
physicians 25:10
place 29:8
places 14:13
plaintiff 12:14 16:12,14 22:18 22:19 24:1
plaintiffs 13:11
plaintiff's 25:11
planning 18:17
plates 30:20,22
please 32:3
Point 30:11
points 21:6
portion 18:9 23:14
position 20:4,8,8
possible 29:19
potential 4:10,17 4:22 9:9 10:21 30:23
preliminary 6:13
preoperative 18:15 30:22
prepared 26:13
present 3:11 4:5 5:7 6:17 7:4 11:4,5 13:22 34:5
presentation 8:19 18:24 23:15
presentations 8:13
presented 23:3
presenters 8:15 31:22 33:14
President 2:2,3,4
pressure 28:18
prima 6:13
prior 8:6 9:18 16:18 29:7
problem 19:6

BRANDNER 00686

25:15,18 33:3
problems 32:17
procedural 7:18
20:24
procedure 9:10
9:23 16:18
17:9,12,16
18:23 19:21
20:7
procedures 12:4
12:10 21:8
24:9
proceeding 5:3
5:18 8:17
proceedings
1:11 19:16
21:18 27:7
34:8
process 7:7 12:5
20:19,22,23
21:1,10 22:2
27:15,17 31:15
produce 22:17
produced 19:22
23:15,19 24:5
Professional 1:2
5:13 9:2 11:15
12:3,9
Professionalism
3:2 4:2 5:10
6:8,12 8:8
10:14,15,23
12:1,8,19 13:8
14:4 15:15
25:8
Program 1:2
5:14 9:2 11:15
12:3,10
provide 23:8
provided 8:8
13:14 14:6
20:12 25:14
30:16
provisions 24:8
proximal 15:1
purpose 21:14
purposes 24:7
pursuant 12:9

put 18:13 19:17
28:18 29:8
Putting 18:11

**Q**

question 8:18
13:6 18:11
19:3 25:7 28:5
28:14,23 29:5
29:12,14,18,23
questions 8:14
8:20 11:20
31:21 33:13

**R**

R 2:4 3:13
RACHE 2:19
raised 7:8 22:21
rate 17:11 19:20
20:14
read 5:23 16:10
18:6,7,9 24:24
26:13 32:12
reading 8:2
reality 22:2
realm 13:13
25:13
reason 21:7
23:22 24:1
26:4
reasoning 15:10
rebroken 29:3
recognized
32:17
recommendati...
6:20 7:14 8:9
12:8 15:21
20:20 25:17
30:14 31:11
33:24
recommendati...
3:21 31:5,10
31:19
recommended
6:22 10:23
record 3:18 5:1
5:23 7:19
16:10,10,21

20:21 24:8
33:22 34:7
records 15:5
17:21
recused 3:7 4:18
red 22:22
Redfern 3:8 4:16
5:2
reflect 3:18 5:1
33:22
reflected 10:7
refused 18:3
regard 17:11,16
20:23 22:16
24:7,13
regarding 3:21
4:11
Regardless
14:10
rehear 22:1
relevant 23:18
remind 4:5
reminded 31:14
remodel 10:21
22:8,13
remodeling 15:3
30:24
remold 22:7
remove 12:18
repeatedly 22:21
32:9
report 1:11 6:19
8:9,16 11:18
12:8 15:11
24:24 26:19
27:11
reported 1:19
35:6
reporter 5:16
8:16 35:5,14
Reporting 1:20
5:17
Reports 7:6
represent 24:4
representing 5:8
5:9
request 8:17
23:8

require 26:8
required 17:9
27:17
residencies 4:13
residuals 10:1
respectfully
30:12
respective 4:13
respects 12:2
respond 21:13
responded 6:11
respondent 1:9
3:12,13 20:22
23:4
response 31:24
32:1,4,9
responses 11:19
result 9:3
resulted 9:11
results 7:19
retained 5:19
review 4:21 23:1
25:24 26:9
32:13
reviewed 11:7
11:17 12:16
28:2 30:17
31:4,17
re-hear 3:21
Richard 2:6,7,19
3:3 5:8,11 11:8
11:11,13
right 31:20
33:14
risk 16:19 17:10
17:17 18:1
20:6,17 29:21
30:5
risks 9:9
Room 1:13
Rosalind 2:20
5:13 11:14
Rule 20:17 24:14
24:14,14,15,15
24:15,16,16,17
24:17,17,17,18
24:19,19,19
rules 21:15 23:7

25:1 26:4,10
Russ 3:16
Russell 3:6 5:15

**S**

Saturday 1:14
saying 23:4 26:4
says 25:2
Schmidt 3:3 5:8
7:22 8:22,23
11:8 31:22
schools 4:13
scientific 14:24
19:14
scientifically
10:22
screening 21:3
21:19 24:14
Seasons 1:13
second 2:4 10:11
12:13,24 20:8
21:15
seconds 32:7
33:11
secret 34:6
Secretary 2:12
3:8
Section 12:9
see 25:15,18 27:6
27:10 31:6,8
sending 9:18
sense 33:10
sent 4:9
sentences 24:24
series 20:24
serious 15:19
31:12
seriously 26:23
SERVICE 1:20
services 14:5
Session 8:21
33:16,18,21,23
set 12:14,24
shape 19:4
Sharpe 1:5 3:23
3:24 5:20 6:4,5
6:16 7:3 8:11
8:24 9:6,18,24

BRANDNER 00687

10:6 11:5,20 13:4,15,21 16:9,12,16 17:4 19:5,9,11 19:13,17 20:2 20:3 22:3 23:6 23:8,12 25:5 25:15 26:21 27:4,19 28:3,6 28:19 29:6 30:7,8,12,13 31:4,6,16,18 33:1

Sharpe's 6:14 8:3 13:16,23 13:24 17:3,4 18:14 19:16 22:16 26:13,15 29:2,11 32:2,8 32:16

Shore 1:20 5:17

short 24:22

shorthand 35:7 35:9,14

show 21:13 30:19

showed 22:9,10

showing 19:22

side 22:24

sides 17:19

simple 23:11 25:20

sit 23:7

situation 16:15 16:15

six 9:17

skeletally 9:13

small 18:9

sole 12:10

somebody 20:16

sort 29:18

sorts 19:11,13 22:22

specific 24:8

specifically 3:24 12:13 13:20 14:19 15:5 17:24 23:13

25:2 29:20,24

Staff 2:18 11:12

stage 21:18

stand 24:4

standard 6:21 6:21 7:12 10:5 10:20 13:13,18 13:21 14:2,17 14:21,23 17:8 25:13 30:8,11 31:2

standards 4:1,2 6:7,8 7:11 10:13,14,16,18 12:22 13:7 14:3,14 15:10 15:14,16,17,19 25:7,22 26:2,7 27:23 28:1 30:10 31:12 33:6,8 34:1

standpoint 18:19

state 1:13 8:18 35:1

stated 23:13

statement 5:22 8:3 16:8 25:16 25:19 26:13,15 32:3 33:2

statements 9:3 11:19

states 32:9

statistics 19:24

steps 24:10

Stewart 2:6

stretched 28:21

stricken 7:19

studies 18:17 19:22

stuff 28:12

submitted 5:21 11:17 12:15 27:6,9

substantially 22:7

sufficient 14:22

suggesting 19:3

summarize 6:4 7:23

summary 23:24 27:12

support 14:20 19:14,18 32:19

supported 20:21

surgeon 9:16 29:15

surgeons 1:1 3:20 9:19 15:24 16:1

surgery 4:15 9:19,20 18:18 18:19 19:6 28:5 29:2

surgical 9:10 30:14 31:18

suspended 6:23 7:15 10:24 16:1 21:9 34:3

suspension 25:17 31:13

swear 28:23

sworn 14:9

---

**T**

tainted 22:2,3

take 20:2 23:9

taken 1:11 23:3 28:4,13 29:11 30:14 35:10

takes 26:23

talk 25:19 29:6

talking 8:23

technical 18:19

technically 19:5

tell 29:14

ten 8:1 16:5 33:2

ten-minute 8:4

terms 18:17

testified 10:3,20 17:23 22:6 25:21

testify 13:17 17:1,2 30:8 31:5,16 32:10 32:10,11,13

testifying 19:12 25:21,24 26:8

testimony 4:3 6:9 9:4,4,5 10:11 13:3 14:10,11 15:3 15:16 16:3,13 18:6,7,10 19:19 20:13 22:4,24 23:23 24:3 25:4 26:6 28:1 30:21 33:6

Teuscher 2:8,11

thank 4:24 8:23 16:6 33:12,14 33:18

theorized 13:16

thing 21:15 28:23 33:1

things 19:13 28:8,10,12 29:9,10

think 19:8 29:2 29:4

Thomas 11:12

thorough 10:6

threats 26:24

three 19:22

tibia 9:15

tibial 9:8 15:1

time 4:23 5:24 12:11 24:11,22 25:20 26:11 32:5,7

timer 8:4

times 33:2

today 5:7,16,21 6:1

told 18:23 28:8

Tongue 2:4

Tornetta 2:16

transcript 5:18 11:6 27:6 35:9

transcripts 22:17,18 23:16 23:18,20 26:1 26:9

Treasurer 2:5

treated 9:17

treating 13:10 25:10

treatment 9:24

trial 9:5 10:12 13:17 14:5,11 16:22 17:1 18:5,10 19:10 19:19 20:4 22:19 23:22

true 23:21 35:9

truthfully 17:23

turn 3:16

twisted 28:17

two 9:18 17:19 20:18 21:6 24:24

type 19:21

---

**U**

unanimous 34:6

unanimously 7:10,13 10:15 11:24 12:20 15:8,20

understand 20:3 20:13

understatement 21:2

understood 10:10 23:23

unprofessional 3:22 16:2

---

**V**

v 6:4 11:10

valgus 29:22

various 29:9

Vegas 6:10 15:22

verdict 9:11

version 13:11 25:11 26:5

Vice 2:3,4

violate 15:9

violated 4:1 6:20 7:11 12:22

BRANDNER 00688

15:16 24:9,10
26:4 27:24
30:9 31:1 33:8
34:1
**violation** 6:7
7:12 10:16,19
13:7 14:13,16
14:20 15:14
25:7 27:22
**violations** 10:12
15:19 25:1
31:12
**vote** 7:12 14:15
34:5,6
**voted** 33:23
**votes** 4:6
**voting** 4:9 34:5

**W**

**W** 2:15
**want** 24:8
**wanted** 20:2
**warned** 29:7
**warrant** 31:13
**warranted** 6:14
**wasn't** 23:21
26:10
**way** 16:8 18:3
19:4
**weeks** 4:8
**weight** 19:17
**went** 16:22
17:15 23:22
29:9 33:20
**whatsoever** 20:5
**White** 2:15
**Wilhoit** 2:17
**willingness** 22:1
**witness** 4:3 6:9
6:16 10:14
14:12 15:15
16:3,14 25:24
26:9 28:3 29:2
29:20 30:7
31:6,16 33:6
33:10
**witnesses** 14:9
**Woolsey** 1:12,20

5:17 35:4
**words** 10:4
13:22 26:3
**workup** 18:15
**written** 5:21 8:3
8:8 14:9 26:15
27:1 32:2 33:2
**wrong** 19:5
30:24

**X**

**X-rays** 15:5
30:14,15,22
31:4,17 32:13

**Y**

**year** 4:14 6:23
7:15 10:24
16:1 34:3
**young** 2:20 5:12
11:13 18:15

**Z**

**Zachary** 2:17
**Zuckerman** 3:10
5:3

**0**

**084-002894** 1:12
1:21 35:16

**1**

**1** 27:12,15
**10** 15:11 31:9
**10:10** 1:15
**11** 30:3 31:9
**12** 7:2 11:1
26:22 27:7
**120** 1:13
**13** 17:13 19:20
34:5
**14** 5:4 27:7
**15** 8:6
**15-year-old** 9:12
**19** 7:17 29:12

**2**

**2** 6:15 12:20
27:13,22

**2002** 9:21 15:5
30:3,3,15
**2004** 9:24 28:5
28:14 29:12
33:5,5,10
**2005** 9:5 10:9
13:20 25:23
33:7,9
**2008** 6:5 9:3,5
10:12
**2008-23** 1:7 4:4
8:24 11:3
**2009** 6:15 15:12
27:2 31:7
**2010** 1:15 7:2,17
11:1 26:6,18
26:22 27:2,7
27:12 31:9
35:8
**21** 6:5 9:3 27:12
**22** 15:5 30:15
**24** 27:2 31:9
**26** 27:7
**27** 27:8
**29** 9:5 27:2 28:4
28:14 31:7

**3**

**3** 4:1 6:7,21 7:11
10:13,16 12:22
14:14 15:16,19
17:13 19:19
25:1 26:4 27:8
27:23 28:1
30:10,11 31:13
34:1
**30** 32:6 33:11
**39-degree** 9:14

**4**

**4** 1:15 4:1 6:7,21
7:11 10:13,16
12:22 14:14
15:7,16,19
25:1 26:5,17
27:23 28:1
30:10 31:13
34:2 35:8

**5**

**5** 9:5 13:20 31:7
31:8

**6**

**6** 4:1 6:7,21
10:13 15:10,17
30:3 31:8,9
**6(b)1** 24:15,16
**6(b)3** 24:18,19
**6(c)** 24:16

**7**

**7** 4:1 6:7,21 7:12
10:13,20 14:17
14:21 15:17
27:12 30:12
31:2,8,9
**7(a)1** 24:14
**7(a)5** 24:17
**7(b)** 24:15
**7(b)2** 24:14
**7(b)3** 24:15
**7(c)11** 24:15
**7(d)14** 24:17
**7(d)9** 24:17
**7(e)11** 24:19
**7(e)12** 24:19
**7(e)15** 24:19
**7(f)8** 20:17

**8**

**8** 4:1 6:7,22 10:9
10:13 15:10,17
27:12 31:9

**9**

**9** 31:9

BRANDNER 00689

# EXHIBITS

BRANDNER 00690

**Grievance 2008-23**
**Kipling P. Sharpe, M.D. v. Patrick J. Brandner, M.D.**

This will constitute Dr. Kipling Sharpe's written statement in anticipation of the Board of Directors' consideration of this Grievance on December 4, 2010. It is intended to briefly address the Judiciary Committee's "Appeal Hearing Report To The Board Of Directors."

Dr. Sharpe appeared in person, with counsel, for the appeal hearing on March 12, 2010. He did so because he takes this grievance seriously, and because Dr. Brandner made threats against AAOS and him in written appeal letters dated December 29, 2009, and February 24, 2010. Although he believed them irrelevant to the Grievance, Dr. Sharpe advised the Judiciary Committee he had no objection to it considering the new materials submitted by Dr. Brandner. See, Transcript of Proceedings, March 12, 2010, p. 26/14 - p. 27/3. The Committee considered the new materials submitted by Dr. Brandner. It agreed they were irrelevant. See, "Appeal Hearing Report to the Board of Directors," Discussion and Summary; April 21, 2010; pp. 7-8, items 1 and 2.

## JUDICIARY COMMITTEE'S FINDINGS

### 1. Due Process

The Judiciary Committee correctly found Dr. Brandner was afforded due process. Although not required to do so, it considered all of the new materials and arguments offered by Dr. Brandner. Again, Dr. Sharpe made it clear he had no objection to the Judiciary Committee considering that information.

### 2. Dr. Brandner's Violation of Mandatory Standards Nos. 3 and 4

The Judiciary Committee correctly found Dr. Brandner had violated Standards Nos. 3 and 4. The deposition testimony which Dr. Brandner reviewed <u>before</u> agreeing to be an expert witness against Dr. Sharpe was the following:

- **The patient's, taken on January 29, 2004:**

Q.	Before you had the surgery, did Dr. Sharpe ever discuss with you, or did anyone discuss with you, you might end up with a foot drop?

A.	Yes, he told me all the things that could happen I would – it could have nerve damage, and he said all the things. He even mentioned death. The – we had an anesthesiologist, and there could be accidents and stuff. There was a lot of things.

- **The patient's mother, taken on January 29, 2004:**

Q.	What do you mean by "foot drop"?

A.	There are – there are nerves that control the flex in a foot, and because the bone had been twisted and the – there was a callus on it, it had put pressure on those nerves, and Dr. Sharpe had said that when he moves it back into alignment and corrects all that, that those particular nerves might be very stretched and might be damaged because of that, and that's what happened.

*	*	*

Q.	One thing I forgot. I swear to you it was here, and I forgot to ask. Is there any doubt in your mind that the nerve injury occurred during Dr. Sharpe's surgery?

A.	THE WITNESS: I think it happened because the leg had to be rebroken, and I think that it happened because it – everything had to be moved around.

BRANDNER 00691

Q.    Okay. Did you talk to Dr. Sharpe about that?

A.    He had warned us prior to that, you know, movement of that bone, when he had to put it back in place, could cause various things. He went through a list of many things.

•    **Dr. Sharpe's, taken on May 19, 2004:**

Q.    One of the issues you discuss in the informed consent discussion is nerve injury; correct?

A.    Yes.

Q.    And in general you tell the patient even in the hands of the best surgeon, certain adverse outcomes can occur and you have to be aware of them; correct?

A.    Yes.

Q.    What sort of nerve injury can occur even when you do the best job possible?

A.    THE WITNESS: Well, I was specifically concerned in this case about the risk of peroneal nerve injury in correcting the valgus deformity. I did discuss that with him.

Q.    Did you discuss the peroneal nerve specifically with him?

A.    Yes.

In addition, Dr. Brandner had copies of the April 11, 2002, and June 6, 2002, office notes. They both documented extensive informed consent discussions, including the risk of nerve injury. Despite this information, Dr. Brandner agreed to be an expert witness against Dr. Sharpe and testify Dr. Sharpe had breached the standard of care. By doing so, Dr. Brandner violated Standards Nos. 3 and 4.

3.    **Mandatory Standard No. 7**

Dr. Sharpe respectfully disagrees with the Judiciary Committee's finding. Dr. Sharpe made his surgical recommendations based on x-rays taken at his office on March 22, 2002. Those x-rays were available and provided to the COP Hearing Panel. The COP Hearing Panel members reviewed them during the hearing. They were part of the Judiciary Committee's appeal file. They show the angular deformity and that the growth plates were closed. Dr. Brandner's deposition testimony that the pre-operative x-rays demonstrated the growth plates were not closed and there was potential for remodeling was medically wrong. The COP Hearing Panel's conclusion that Dr. Brandner had violated Standard No. 7 was correct. In fact, as part of his appeal, Dr. Brandner has now admitted he never reviewed the x-rays upon which Dr. Sharpe based his recommendations before he agreed to testify as an expert witness against Dr. Sharpe. See, Appeal letter dated December 29, 2009, p. 5/footnotes 5, 6 and 7; see also, Appeal letter dated February 24, 2010, pp. 10-11/footnotes 6, 7, 8 and 9.

### JUDICIARY COMMITTEE'S RECOMMENDATIONS

The Judiciary Committee's recommendation is appropriate. Such serious violations of Standards Nos. 3 and 4 warrant a one (1) year suspension. The Board is also reminded Dr. Brandner has now admitted during the appeal process he agreed to be an expert witness and testify against Dr. Sharpe despite never having reviewed the very x-rays upon which Dr. Sharpe based his surgical recommendations.

BRANDNER 00692

**AAOS**
**Professional Compliance Program**
**BOD CONSIDERATION OF 2008-23**

## ERRATA SHEET

THE FOLLOWING ERRORS WERE NOTED BUT ARE NOT SUBSTANTIVE AND
HAVE THEREFORE NOT BEEN REVISED IN THE ORIGINAL TRANSCRIPT.

| PAGE | LINE | | | |
|------|------|--------|---|---|
| 2 | 19 | CHANGE | RACHE | Should read: FACHE |
| 3 | 23 | CHANGE | Patrick J. Brandner | Should read: Dr. Patrick J. Brandner |
| 6 | 14 | CHANGE | Was warranted Dr. Sharpe's | Should read: was warranted on Dr. Sharpe's |
| 7 | 8 | CHANGE | The grievance at issue | Should read: An issue raised by |
| 10 | 12 | CHANGE | At trial in 2008 –The | Should read: new paragraph @ "The grievance |
| 14 | 9 | CHANGE | written expert witnesses | Should read: written expert opinion |

AAOS Professional Compliance Program Coordinator

BRANDNER 00693