# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| PATRICK J. BRANDNER, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 10-cv-8161 |
| | ) | |
| AMERICAN ACADEMY OF | ) | Hon. Dist. J. Ronald A. Guzman |
| ORTHOPAEDIC SURGEONS and | ) | |
| AMERICAN ASSOCIATION OF | ) | |
| ORTHOPAEDIC SURGEONS, | ) | |
| | ) | |
| Defendants, | ) | |

## PLAINTIFF'S RULE 56.1(b)(3) RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff, PATRICK J. BRANDNER, M.D. ("Dr. Brandner"), by and through his attorneys of record, the law firms of STEPHAN ZOURAS, LLP and WOODS ERICKSON WHITAKER & MAURICE LLP, respectfully submits Plaintiff's Rule 56.1(b)(3) Response to Defendant's Statement of Undisputed Material Facts as Follows:

A.    **The Parties, Jurisdiction and Venue**

1.    Defendants American Academy of Orthopaedic Surgeons (the "Academy") and American Association of Orthopaedic Surgeons (the "Association") (collectively, the "AAOS") are interrelated, not-for-profit corporations organized under Illinois law. The Academy primarily provides continuing musculoskeletal medical education to orthopaedic surgeons while the Association primarily engages in health care policy and advocacy activities on behalf of orthopaedic surgeons and the profession. Membership in one organization confers membership in the other. (Affidavit of Melissa Young ("Young Aff.") at 2; Answer, Affirmative Defenses and Counterclaims to Amended Complaint [Docket # 35] ("AAOS Answer") ¶¶ 2-3; Answer to Counterclaim [Docket # 36] ("Brandner Answer") ¶ 1.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

2.     The AAOS's mission is to "serve the profession, champion the interests of patients, and advance the highest quality of musculoskeletal health." To that end, the AAOS sponsors continuing medical education seminars and prepares literature to keep its members apprised of the latest studies, developments and technology in orthopaedic surgery and other related sciences. (Young Aff. ¶ 3.)

**Plaintiff's Response: Plaintiff objects to this statement as being contrary to the evidence of the case. Plaintiff admits that the Academy (as opposed to the Association) claims that its mission is to "serve the profession, champion the interests of patients, and advance the highest quality of musculoskeletal health"; however, the evidence makes clear that the Association was established specifically to engage in advocacy activities (i.e., lobbying). See Deposition transcript of Mellissa Young, attached to Plaintiff's Statement of Facts as Exhibit 4, pp.32-32, ll.19-4, see also, Deposition of Joseph Zuckerman, attached to Plaintiff's Statement of Facts as Exhibit 9, p.28, ll.19-22. In this vein, one of the Association's primary areas of focus is tort reform (i.e., efforts to shield its members from liability to their patients for malpractice). Ex. 4, p.24, ll.10-12; pp.25-26; Ex. 9, p.30, ll.1-7.**

3.     The AAOS is a private, voluntary association with a membership of approximately 36,000 orthopaedic surgeons, of which approximately 23,500 are Fellows and 12,500 are in other membership categories. To become a Fellow, an orthopaedic surgeon must: (i) be certified by the American Board of Orthopaedic Surgery ("ABOS"); (ii) be in practice for at least three years; (iii) be a citizen of the United States of America or Canada; (iv) maintain a full and unrestricted license to practice medicine in the state where he or she practices; (v) comply with the AAOS Bylaws and Rules and Regulations; and (vi) comply with the AAOS Standards of Professionalism, maintain a good reputation and standing within his or her community and be of high ethical character and professional repute.

(Young Aff. ¶¶ 5, 7; Bylaws, Young Aff. Exhibit ("Ex.") 1, at Section ("Sec.") 5.1.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

4.  Membership in the AAOS is not a prerequisite to the practice of orthopaedic surgery in any state. The AAOS is not the only professional medical association to which orthopaedic surgeons choose to belong. (Young Aff. ¶ 8.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

5.  AAOS members consider the association's educational offerings to be the principal benefit of their membership. (Deposition of Murray J. Goodman, M.D. ("Goodman Dep.") at 15:16-18:4; Deposition of Edward B. Craig, M.D. ("Craig Dep.") at 23:6-27:1; Deposition of Patrick J. Brandner ("Brandner Dep.") at 20:5-14.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

6.  Plaintiff Patrick J. Brandner, M.D., is a Fellow of the AAOS. (Young. Aff. ¶ 17.) The AAOS is one of seven professional associations to which he belongs. Dr. Brandner is also a member of the American College of Surgeons, the Western Orthopaedic Association, the Association of American Physicians and Surgeons, the Clark County Medical Society, the Nevada State Medical Association and the Forensic Expert Witness Association. (Young Aff. ¶ 17; Patrick J. Brandner, M.D., Curriculum Vitae, Young Aff. Ex. 4.) Dr. Brandner maintains his residence and orthopaedic practice in the State of Nevada. (Young Aff. ¶ 17; Brandner Dep. at 13:17-16:5.) Continuing medical education is the main reason that Dr. Brandner joined the AAOS. (Brandner Dep. at p. 20:11-14.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

7.  Kipling P. Sharpe, M.D., is a Fellow of the AAOS. Dr. Sharpe maintains his orthopaedic practice as well as his place of residence in the State of Arizona. In October 2008, Dr. Sharpe submitted a grievance against Dr. Brandner to the AAOS. (Young. Aff. ¶ 18; Deposition of Kipling P. Sharpe, M.D. ("Sharpe Dep.") at 13:2-16.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

8. Venue and jurisdiction are proper because: (i) Dr. Brandner is a resident of the State of Nevada; (ii) the AAOS's headquarters and principal place of business is located in Rosemont, Illinois; (iii) the grievance that gives rise to this lawsuit was administered by the AAOS in Rosemont, Illinois; and (iv) the Association's Bylaws provide that questions regarding membership status are governed by the law of the State of Illinois. (AAOS Answer ¶ 1, 4.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

**B.** **The AAOS Professional Compliance Program**

9. In 2005, the AAOS established a Professional Compliance Program (the "Program") in response to member requests. Prior to the inception of the Program in 2005, the AAOS developed procedures to review, hear and adjudicate professional compliance grievances based upon alleged violations of the AAOS Standards of Professionalism ("SOPs") approved by the AAOS Fellowship. (Young. Aff. ¶ 12.) Pursuant to the AAOS Bylaws, the SOPs are mandatory and apply to all Fellows and Members. (Young. Aff. ¶ 10; Bylaws, Young Aff. Ex. 1, at Sec. 5.1 and Sec. 19.2.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

10. In 2005, the AAOS Fellowship adopted three initial SOPs: (i) Providing Musculoskeletal Services to Patients; (ii) Professional Relationships; and (iii) Orthopaedic Expert Witness Testimony. The AAOS has since adopted SOPs on Research and Academic Responsibilities, Advertising by Orthopaedic Surgeons, and Orthopaedic-Industry Conflicts of Interest. (Young. Aff. ¶ 13.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

11. The entire AAOS Fellowship, including Dr. Brandner, was afforded the opportunity to review, comment upon, and ultimately to vote upon and approve the Program and the SOPs. (Young Aff. ¶ 15; AAOS Fellowship Ballot, Young Aff. Ex. 3.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

12. Dr. Brandner cast a ballot on which the bylaw amendments to establish the Program were addressed. Dr. Brandner also voted on the adoption of the SOPs on Orthopaedic Expert Witness Testimony. Of the Fellows voting, over 98% voted in favor of establishing the Program. (Young Aff. ¶¶ 15-16.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

13. The AAOS Fellowship adopted the SOPs on Orthopaedic Expert Witness Testimony in April 2005. The SOPs must be followed by all AAOS Fellows and Members when providing expert opinion services. The Orthopaedic Expert Witness SOPs reflect the AAOS's position that any expert medical testimony given by its members must be truly expert, impartial and available to all litigants. (Young. Aff. ¶¶ 10, 13-14; AAOS SOPs on Orthopaedic Expert Witness Testimony, Young Aff. Ex. 2.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

14. Article VIII of the AAOS Bylaws sets forth general procedural mechanisms for the operation of the AAOS Professional Compliance Program. (Young. Aff. ¶ 20; Bylaws, Young. Aff. Ex. 1, Article VIII.) The general procedural mechanisms provided for in the AAOS Bylaws are amplified in the AAOS Professional Compliance Program Grievance Procedures (the "Grievance Procedures"). (Young. Aff. ¶ 20; Grievance Procedures, Young Aff. Ex. 5.) The AAOS Grievance Procedures dated September 13, 2008 apply to Dr. Sharpe's grievance against Dr. Brandner. (Young. Aff. ¶ 25; Deposition of Rosalind Giulietti ("Giulietti Dep.") at 32:23- 33 :7.)

**Plaintiff's Response: Plaintiff objects to the use of the word "amplified" in the statement. Article II of the Professional Compliance Grievance Procedures, provides: "These Professional Compliance Grievance Procedures are designed to supplement Article VIII of the Association Bylaws and to create a process that is transparent, expeditious, and equitable." Accordingly, a violation of the Professional Compliance Grievance Procedures is equivalent to a violation of the AAOS' bylaws. See Young Deposition, attached as Exhibit 4 to Plaintiff's Statement of Facts, p.34, ll.4-18.**

15. Section VI(B) of the Grievance Procedures provides that all parties involved in a grievance have the: (1) Right to timely communication from the AAOS; (2) Right to know who has filed the Grievance; (3) Right to know the specific allegations made in the Grievance; (4) Right to counsel; (5) Right to respond to the allegations; (6) Right to know who will consider the matter and make recommendations; (7) Right to appear at a grievance hearing or appeal hearing; (8) Right to appeal the recommendation(s) of the Grievance Hearing Panel prior to final action by the Board of Directors; (9) Obligation to participate in the grievance process in good faith; (10) Obligation to adhere to the procedures outlined in this document; and (11) Obligation to maintain confidentiality until the grievance process is concluded. (Young. Aff. ¶ 20; Grievance Procedures, Young Aff. Ex. 5, at Section VI(B).)

**Plaintiff's Response: Plaintiff does not object to this statement.**

16. The Grievance Procedures involve a multi-step process wherein at least two different groups of AAOS Fellows review the merits of the grievance before a final determination is made: the Committee on Professionalism (the "COP") and the AAOS Board of Directors. Parties to a grievance also have the option of seeking an intermediate appeal before the AAOS Judiciary Committee. In such cases, three different groups of AAOS Fellows will review the merits of a grievance before a final determination is reached. (Young. Aff. ¶ 22; Grievance Procedures, Young Aff. Ex. 5, at Section VII.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

17. During each phase of the process, an inquiry is conducted to ensure that there are no direct or indirect conflicts of interest between the committee members and the parties to the grievance. (Young. Aff. ¶ 23.) All hearings in connection with a grievance are closed to the public and are recorded by a court reporter. (Young. Aff. ¶ 23.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

**C.**     <u>Substantive Background on Dr. Sharpe's Grievance Against Dr. Brandner</u>

18.     On or about October 13, 2008, Dr. Sharpe submitted a grievance against Dr. Brandner to the AAOS in which he alleged violations of the AAOS SOPs on Orthopaedic Expert Witness Testimony. (Young Aff. ¶ 24; Dr. Sharpe Grievance Report ("Grievance Report"), Young Aff. Ex. 6; Sharpe Dep. at 20:20-21:14.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

19.     Dr. Sharpe's grievance arose from statements made by Dr. Brandner during trial and deposition testimony in a medical malpractice lawsuit filed against Dr. Sharpe in the Superior Court for the State of Arizona, Maricopa County. The underlying plaintiff had retained Dr. Brandner as an expert witness. (Young Aff. ¶ 27.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

20.     Dr. Sharpe's October 13, 2008 grievance letter explained the basis for his grievance as follows:

> This was a case of a peroneal nerve injury which occurred during a corrective osteotomy . . . It is well-documented in my chart that I discussed risks with the patient and his parents including nerve injury on 2 separate visits. In depositions taken prior to my being named in a lawsuit . . . both the patient and his mother acknowledged that I discussed risks including the specific risk of peroneal nerve. . . Subsequently, the mother and son changed their story and sued me for lack of informed consent. Their attorney hired Dr. Brandner as an expert witness. . . He testified in both his deposition and in court that I fell below the standard of care in my preoperative care by failing to discuss the risk of peroneal nerve injury.

(Young Aff. ¶ 28; Grievance Report, Young Aff. Ex. 6, at p. 4.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

21.     Dr. Sharpe's patient had originally filed suit against another orthopaedic surgeon, Andre Matthews, M.D., who had treated the patient prior to Dr. Sharpe. Dr. Sharpe was not initially named as a defendant in the underlying malpractice lawsuit. (Young Aff. ¶ 30.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

22.    Dr. Sharpe's treatment of the patient began in the spring of 2002. In June 2002, Dr. Sharpe performed a tibial osteotomy on the patient. Dr. Sharpe's pre-operative medical notes reflect that he discussed with the patient and the patient's mother the risk of "nerve injury" associated with a tibial osteotomy on two occasions (April 11, 2002 and June 6, 2002) prior to performing the surgical procedure. (Young Aff. ¶ 31; Dr. Sharpe's April 11, 2002 and June 6, 2002 Pre-Operative Notes, Young Aff. Ex. 7.) Following surgery, the patient developed "foot drop" due to a peroneal nerve complication. (Young Aff. ¶ 32; Grievance Report, Young Aff. Ex. 6.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

23.    During the course of his deposition in the underlying malpractice action taken on August 5, 2005, Dr. Brandner testified as follows:

Q.    You have now reviewed the depositions of the [patient and his] family.

A.    I have.

Q.    You have seen what they have to say about issues that would fall within the rubric of informed consent?

A.    Yes.

Q.    Do you still believe that Dr. Sharpe fell below the standard of care?

A.    Yes.

(Young Aff. ¶ 35; August 5, 2005 Deposition of Patrick J. Brandner M.D., Young Aff. Ex. 11, at 20:16-25.)

**Plaintiff's Response: Plaintiff objects to the statement as misleading. The testimony quoted by Defendants is part of a line of questioning. A review of the questions and answers given (in their entirety) reveals that Dr. Brandner clearly testified that the question of whether Dr. Sharpe fell below the standard of care could only be answered by the jury because a factual determination was required with respect to whose testimony to believe regarding the preoperative**

**discussion.** <u>See</u> **Exhibit 10 to Plaintiff's Statement of Facts, p.21-23, ll.18-14.**

24. During the course of his deposition taken on January 29, 2004, the patient testified as follows regarding his pre-operative discussions with Dr. Sharpe about the risk of peroneal nerve injury:

> Q. When did you notice that you first had a foot drop?
>
> A. Right when I woke up out of surgery, Dr. Sharpe asked if I was able to — he had me move my leg and foot in certain directions, and he asked me to flex, and I wasn't able to flex, and he asked me to go out and in, and I wasn't able to at that time.
>
> Q. Before you had the surgery, did Dr. Sharpe ever discuss with you, or did anyone ever discuss with you, you might end up with a foot drop?
>
> A. Yes, he told me all the things that could happen I would — it could have nerve damage, and he said all the things. He even mentioned death. The — we had an anesthesiologist, and there could be accidents and stuff. There was a lot of things.

(Young Aff. ¶ 33; January 29, 2004 Deposition of Plaintiff, Young Aff. Ex. 8, at 28:10-24.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

25. During the course of her deposition taken on January 29, 2004, the patient's mother testified as follows regarding her pre-operative discussions with Dr. Sharpe:

> Q. What do you mean by "foot drop"?
>
> A. There are — there are nerves that control the flex in a foot and because the bone had been twisted and the — there was a callus on it, it had put pressure on those nerves, and Dr. Sharpe had said that when he moves it back into alignment and corrects all that, that those particular nerves might be very stretched and might be damaged because of that, and that's what happened.
>
> Q. One thing I forgot... Is there any doubt in your mind that the nerve injury occurred during Dr. Sharpe's surgery?

Q.     A.     I think it happened because the leg had to be rebroken, and I think that it happened because it — everything had to be moved around.

Q.     Okay. Did you talk to Dr. Sharpe about that?

A.     He had warned us prior to that, you know, movement of that bone, when he had to put it back in place, could cause various things. He went through a list of many things.

(Young Aff. ¶ 33; January 29, 2004 Deposition of Patient's Mother, Young Aff. Ex. 9, at 51:6-13, 99:19-100:6.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

26.     Dr. Sharpe was deposed in the underlying malpractice action prior to his being named as a defendant. Dr. Sharpe testified that he was concerned about the risk of peroneal nerve injury in trying to correct the patient's deformity and that he specifically discussed the risk of peroneal nerve injury with the patient prior to the surgery. (Young Aff. ¶ 34; August 24, 2005 Deposition of Kipling P. Sharpe, M.D., Young Aff. Ex. 10, at 11:21-12:14.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

27.     The patient and his mother were deposed again on June 8, 2005, subsequent to Dr. Brandner having been retained as their expert witness on informed consent. In their June 2005 depositions, the patient and his mother both recanted their prior testimony and stated that they had never had a pre-operative discussion with Dr. Sharpe in which he disclosed the risk of postsurgical foot drop. (Young Aff. ¶ 36; June 8, 2005 Deposition of Patient, Young Aff. Ex. 12, at 6:7-18; June 8, 2005 Deposition of Patient's Mother, Young Aff. Ex 13, at 4:21-25, 5:1-13.) The patient and his mother stuck to their revised account of the pre-operative discussions at trial. (Young Aff. ¶ 39; April 28, 2008 Patient Trial Testimony, Young Aff. Ex. 14, at 33:12-22, 34:4- 11, 50:10-23; April 29, 2008 Patient's Mother's Trial Testimony, Young Aff. Ex. 15, at 75:22-76:4, 95:13-96:18, 107:12-17, 139:16-140:2.)

**Plaintiff's Response: Plaintiff objects to this statement as being misleading.**

Plaintiff would propose the following alternate statement: "The patient and his mother were deposed again on June 8, 2005, subsequent to Dr. Brandner having been retained as their expert witness on informed consent. In their June 2005 depositions, the patient and his mother both testified that they never had a pre-operative discussion with Dr. Sharpe in which he disclosed the risk of post-surgical foot drop. (Young Aff. 36; June 8, 2005 Deposition of Patient, Young Aff. Ex. 12, at 6:7-18; June 8, 2005 Deposition of Patient's Mother, Young Aff. Ex 13, at 4:21-25, 5:1-13.) The patient and his mother testified similarly at trial. (Young Aff. if 39; April 28, 2008 Patient Trial Testimony, Young Aff. Ex. 14, at 33:12-22, 34:4- 11, 50:10-23; April 29, 2008 Patient's Mother's Trial Testimony, Young Aff. Ex. 15, at 75:22- 76:4, 95:13-96:18, 107:12-17, 139:16-140:2.)

28. In his trial testimony, Dr. Brandner first asserted that he had no opinion on the "he-said, she-said" dispute between Dr. Sharpe and his patient as to whether a pre-operative discussion of peroneal nerve injury had occurred. However, when he was shown the January 2004 deposition testimony of the patient's mother that Dr. Sharpe "had warned us prior" to surgery of the risk of nerve injury. Dr. Brander testified as follows:

Q· Have you ever been aware of that testimony?

A. I believe so. I can't recall exactly, but again, it's — the reason I'm saying I can't recall is because it strikes me, as this lady, knowing a list or a laundry list of things, and not specifically addressing — it looks like she's talking about things that happened after the surgery and she understands it and she mentions it. But she doesn't specifically define that she knew the nerve could be stretched, before.

(Young Aff. ¶ 40; Trial Testimony of Patrick J. Brandner, M.D., Young Aff. Ex. 16, at 16:22-17:1, 35:21-36:4.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

29. The jury in the underlying malpractice action returned a verdict in favor of Dr. Sharpe and against the patient. (Young Aff. ¶ 41; June 5, 2008 Judgment, Young Aff. Ex. 17.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

**D.** **The Grievance Filed by Dr. Sharpe Against Dr. Brandner**

30. Dr. Sharpe asserted in his grievance report that Dr. Brandner violated Mandatory Standards Nos. 3, 4, 6, 7 and 8 of the AAOS SOPs on Orthopaedic Expert Witness Testimony during the course of his deposition taken on August 5, 2005, and during his testimony at trial on April 29, 2008. (Young Aff. ¶ 42; Grievance Report, Young Aff. Ex. 6.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

31. Mandatory Standard Nos. 3, 4, 6, 7 and 8 of the SOPs on Orthopaedic Expert Witness Testimony provide as follows:

> Mandatory Standard No. 3: An orthopaedic expert witness shall evaluate the medical condition and care provided in light of generally accepted standards at the time, place and in the context of care delivered.
>
> Mandatory Standard No. 4: An orthopaedic expert witness shall neither condemn performance that falls within generally accepted practice standards nor endorse or condone performance that falls outside these standards.
>
> Mandatory Standard No. 6: An orthopaedic expert witness shall seek and review all pertinent medical records related to a particular patient prior to rendering an opinion on the medical or surgical management of the patient.
>
> Mandatory Standard No. 7: An orthopaedic expert witness shall have knowledge and experience about that standard of care and available scientific evidence for the condition in question during the relevant time, place and in the context of medical care provided and shall respond accurately to questions about the standards of care and available scientific evidence.
>
> Mandatory Standard No. 8: An orthopaedic expert witness shall provide evidence or testify only in matters in which he or she has relevant clinical experience and knowledge in the areas of medicine that are the subject of the proceeding.

(Young Aff. ¶ 43; Orthopaedic Expert Witness Testimony Standards of Professionalism, Young Aff. Ex. 2.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

32. After reviewing Dr. Sharpe's grievance report and the initial materials he provided in support of the grievance, the AAOS requested that Dr. Sharpe submit additional materials so that it could conduct a preliminary administrative evaluation of the grievance. It is customary for the AAOS to have to request additional information from a grievant in order to complete the preliminary administrative evaluation. The AAOS does not consider a grievance to be "received" until the grievant has produced all of the information requested by the AAOS to allow it to conduct the preliminary administrative evaluation. (Giulietti Dep. at 75:18-76:5, 78:20-79:3; Young Aff. ¶ 44.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

33. In or about January 2009, Dr. Sharpe submitted the additional materials requested by the AAOS. Upon its receipt of these additional materials, the AAOS conducted its preliminary administrative evaluation that is required under Section VII(B) of the Grievance Procedures. (Young Aff. ¶¶ 46-47.) The AAOS completed its preliminary administrative evaluation of Dr. Sharpe's grievance against Dr. Brandner on February 18, 2009. (Young Aff. ¶ 47; Defendants' Response to Plaintiff's First Set of Interrogatories, Answer to Int. No. 5.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

34. In a letter dated February 18, 2009, the AAOS Office of General Counsel advised Dr. Brandner pursuant to Section VII (B)(2) of the Grievance Procedures that a grievance had been filed against him. The letter included a copy of the following: (i) Dr. Sharpe's grievance report; (ii) the letter attached by Dr. Sharpe to his grievance report; (iii) all documents submitted by Dr. Sharpe to the AAOS in support of his grievance; (iv) the AAOS Grievance Procedures; and (v) the SOPs on Orthopaedic Expert Witness Testimony. (Young Aff. ¶ 47; February 18, 2009 letter, Young Aff.

Ex. 19.) The letter also advised Dr. Brandner of his right to submit material for consideration prior to the Committee on Professionalism's determination of whether *a prima facie* case exists. (Id.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

35.     From the day he received Dr. Sharpe's grievance and supporting materials, Dr. Brandner has been aware that: (i) Dr. Sharpe was alleging that he violated the SOPs on Orthopaedic Expert Witness Testimony; (ii) Dr. Sharpe was alleging that he violated Mandatory Standard Nos. 3, 4, 6, 7 and 8; and (iii) that the basis for Dr. Sharpe's grievance was Dr. Brandner's testimony in the underlying malpractice action about Dr. Sharpe's pre-operative discussions with the patient and his mother concerning the risk of injury to the peroneal nerve. (Brandner Dep. at 41:10 – 47:10.)

> **Plaintiff's Response: Plaintiff objects to this statement as being contrary to the evidence of the case. Plaintiff asserts that Dr. Sharpe's Grievance and supporting materials speak for themselves. See also Brandner deposition, attached to Plaintiff's Findings of Facts as Exhibit 1, p.45, ll. 10-13, pp. 72-73, ll. 9-3, p. 87-88, ll. 22-2, p.88, ll.12-15, p.89, ll.15-19.**

36.     Dr. Brandner submitted his written response to Dr. Sharpe's grievance on April 7, 2009. Dr. Brandner also submitted supporting materials with his written response. (Young Aff. ¶ 49; April 7, 2009 letter, Young Aff. Ex. 20.) Dr. Brandner's written response to the grievance did not identify any deposition or trial transcripts that he believed were missing for purposes of the COP's *prima facie* review of the grievance. (Id.)

> **Plaintiff's Response: Plaintiff objects to this statement as being misleading. Dr. Brandner made it clear that he was at a disadvantage because he returned his materials to plaintiff's counsel in the underlying matter and upon requesting the return of the material he was advised that the documents were irretrievable. See Plaintiff's SOF ¶¶ 31, 36, 41.**

37.     After its receipt of the grievance materials from Dr. Sharpe and Dr.

Brandner, the Office of General Counsel referred the grievance to the Committee on Professionalism to determine whether a *prima facie* violation of the Mandatory Standard Nos. 3, 4, 6, 7 and 8 existed. (Young Aff. at 50.) Prior to referring the grievance materials to the Committee on Professionalism, the Office of General Counsel canvassed the members of the Committee to determine whether any real or perceived conflicts of interested existed between a Committee member and the Grievant and/or the Respondent. (Young Aff. ¶ 50.)

        **Plaintiff's Response: Plaintiff does not object to this statement.**

38.     In correspondence dated May 26, 2009, the AAOS notified Dr. Sharpe and Dr. Brandner that the COP made a preliminary determination that a *prima facie* case of unprofessional conduct had been established and that a full hearing on the merits would be conducted on October 2, 2009 or October 3, 2009, in Rosemont, Illinois. The identities of the COP Hearing Panel members were also included to enable the parties to raise any objections to their participation in the hearing. The parties were also notified that they had the opportunity to submit additional materials that they wanted considered by the COP Hearing Panel and that the deadline to submit any such materials was September 17, 2009. (Young Aff. ¶ 50; May 26, 2009 letter, Young Aff. Ex. 21.)

        **Plaintiff's Response: Plaintiff does not object to this statement.**

39.     On September 15, 2009, Dr. Brandner submitted additional grievance material to be considered by the COP Hearing Panel. Dr. Brandner's additional grievance materials were forwarded to Dr. Sharpe on September 18, 2009. (Young Aff. ¶ 53; September 15, 2009 letter from Dr. Brandner, Young Aff. Ex. 22; September 18, 2009 letter to Dr. Sharpe, Young Aff. Ex. 23.)

        **Plaintiff's Response: Plaintiff does not object to this statement.**

40.     On September 18, 2009, the AAOS forwarded to Dr. Brandner a two page letter submitted by Dr. Sharpe to the AAOS on April 23, 2009. Dr. Sharpe's letter was a reply to Dr. Brandner's written response of April 7, 2009. Dr. Sharpe's letter did not

change the allegations set forth in his grievance or modify the Mandatory Standards that he alleged Dr. Brandner had violated. (Young Aff. ¶ 54; September 18, 2009 letter to Dr. Brandner, Young Aff. Ex. 24; April 23, 2009 letter from Dr. Sharpe, Young Aff. Ex. 25; Brandner Dep. at 75:16-77:22.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

41.     The Office of the General Counsel did not provide the COP with Dr. Sharpe's letter of April 23, 2009 until after it had made its *prima facie* determination with respect to the grievance. The COP did not consider Dr. Sharpe's letter of April 23, 2009 in its determination of whether a prima facie case of unprofessional conduct had been established. (Young Aff. ¶¶ 55-56.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

42.     A party to a grievance is not precluded under the AAOS Grievance Procedures from submitting a reply to the other party's response. The practice of the AAOS is to accept any replies submitted by the parties to a grievance. (Young Aff. ¶ 56; Giulietti Dep. at 97:4-98:20.)

> **Plaintiff's Response: Plaintiff objects to this statement as being contrary to the evidence. The AAOS Grievance Procedures VII(A) identifies the structure of the process to be followed by the parties and the documents they may submit in connection with a grievance. See Plaintiff's Exhibit 16 in support of Plaintiff's Statement of Facts.**

**E.      The Hearing Before the Committee on Professionalism**

43.     The COP Hearing Panel held the grievance hearing on October 2, 2009. Dr. Brandner and Dr. Sharpe both attended the hearing. In accordance with the Grievance Procedures, both parties were given thirty minutes to make a presentation. The parties were also afforded the opportunity to ask questions of the other side. (Young Aff. ¶ 57.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

44.     Dr. Brandner made a presentation on his own behalf at the hearing. In

addition, Dr. Brandner called a witness, Dr. James Greenwald, to testify on his behalf at the hearing. Although he was entitled to do so, Dr. Brandner elected not to ask any questions of Dr. Sharpe. (Young Aff. ¶ 59; Brandner Dep. at 81:19-82:18.) Although he was entitled to do so, Dr. Brandner elected not to retain counsel in connection with the hearing before the COP. (Young Aff. at 58; Brandner Dep. at 81:19-82:18.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

45. The grievance materials provided by Dr. Sharpe to the COP Hearing Panel included the transcripts from the depositions of the patient and the patient's mother taken on January 29, 2004. Neither Dr. Sharpe nor Dr. Brandner produced the transcripts from the June 8, 2005 depositions of the patient and the patient's mother or their trial testimony. (Young Aff. ¶ 60.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

46. The AAOS Professional Compliance Program Grievance Report requires the grievant to attach "<u>complete</u> copies of any documents that you rely on as evidence..." (Young Aff. at 45, Grievance Report, Young Aff. Ex. 6, at p. 3.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

47. Section VI (C) of the Grievance Procedures places the parties to a grievance on notice that they are responsible for obtaining and providing all written materials, such as transcripts and medical records, that are to be considered by the AAOS in connection with a grievance. The AAOS does not independently seek to obtain materials in connection with a grievance. Rather, each party is expected to provide the documents that he or she relies upon in connection with the grievance. (Young Aff. at 45, Grievance Procedures, Young Aff. Ex. 5, at Section VI C; Giulietti Dep. at 45:10 – 49:21.)

**Plaintiff's Response: Plaintiff objects to this statement as being contrary to the evidence. The AAOS Grievance Procedures specify the procedures to be followed. <u>See</u> Plaintiff's Exhibit 16 in support of Plaintiff's Statement of Facts. Moreover, Article II of the Professional Compliance Grievance Procedures**

provides: "These Professional Compliance Grievance Procedures are designed to supplement Article VIII of the Association Bylaws and to create a process that is transparent, expeditious, and equitable." Id. Accordingly, a violation of the Professional Compliance Grievance Procedures is a violation of the AAOS' bylaws. See Plaintiff's SOF ¶ 27, Exhibit 4, p.34, ll.4-24. The AAOS is unable to provide any support in its own Bylaws or Grievance Procedures which would allow it to depart from the standards it has adopted for itself. Indeed, Ms. Young testified that the AAOS is "obligated to follow the Professional Compliance Grievance Procedures." See Exhibit 4 to Plaintiff's Statement of Facts, p.34, ll. 15-18.

48. During the course of the hearing before the COP Hearing Panel, Dr. Brandner asserted that the latter deposition transcripts from the patient and his mother demonstrated that they were confused about what Dr. Sharpe had told them prior to surgery. One of the COP Hearing Panel Members, Dr. Murray Goodman, asked Dr. Brandner to identify the particular transcripts which he felt were missing. Dr. Brandner was unable to tell the COP Hearing Panel which transcripts he believed were missing. (Young Aff. ¶ 61; COP hearing transcript, Young Aff. Ex. 26, at 37:5-38:4.)

Plaintiff's Response: Plaintiff does not object to this statement.

49. Dr. Brandner informed the COP Hearing Panel that he returned all of the materials he had reviewed in the underlying malpractice action to the attorney for the patient. Dr. Brandner further stated that he attempted to retrieve the materials he had reviewed from the patient's attorney but that the patient's attorney refused to produce the materials because of privacy concerns under HIPAA. Dr. Brandner informed the COP Hearing Panel that he sent a letter to the patient's lawyer wherein he requested such materials. (Young Aff. ¶ 63; COP hearing transcript, Young Aff. Ex. 26, at 38:5-22.)

Plaintiff's Response: Plaintiff does not object to this statement.

50. Dr. Brandner sent an email to the patient's lawyer, Wade Causey, on June 28, 2009, more than sixty days after he submitted his written response to the

grievance. The email seeks "hospital records" from the underlying malpractice action. Neither the June 28, 2009 email, nor the subsequent emails of June 29, 2009 and July 7, 2009 sent by Dr. Brandner to Mr. Causey request any deposition or trial transcripts from the patient and/or his mother. (Brandner Dep. at 57:1-60:7; June 28, 2009 email, Brandner Dep. Ex. 6.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

51. Following the grievance hearing, the COP Hearing Panel met in executive session and unanimously concluded that Dr. Brandner had violated Mandatory Standard Nos. 3, 4 and 7, but that he had not violated Mandatory Standard Nos. 6 and 8. The COP Hearing Panel recommended that, based on these violations, Dr. Brandner be suspended from the AAOS for one year. (Young Aff. ¶ 64.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

52. The COP Hearing Panel issued its written Report and Recommendation on December 10, 2009 – sixty-nine days after the grievance hearing. The Grievance Procedures state that the COP Hearing Panel shall issue its written Report and Recommendation within sixty days from the conclusion of the grievance hearing. The Grievance Procedures also state that the AAOS has the sole discretion to extend the date of the Grievance Hearing Panel's Report and Recommendation. (Young Aff. 65; ¶ Grievance Procedures, Young Aff. Ex. 5, at Sec. III(D) and Sec. VII(D)(14).)

**Plaintiff's Response: Plaintiff does not object to this statement.**

53. The COP Hearing Panel's findings with respect to Mandatory Standard Nos. 3 and 4 were based on whether Dr. Sharpe had adequately discussed with his patient and his mother the risk of peroneal nerve injury prior to surgery. The COP Hearing Panel concluded as follows: "The record shows that informed consent was given. The COP found that the deposition transcripts reflected that both the plaintiff and his mother had an understanding about the specific possibility and causation of a foot drop. The COP believed that, in this regard, Dr. Brandner condemned performance that falls within generally accepted practice standards in obtaining informed consent."

(Young Aff. ¶ 66; COP Hearing Panel Report and Recommendation, Young Aff. Ex. 27, at p. 9.)

**Plaintiff's Response: Plaintiff objects to this statement as being contrary to the evidence of the case. Plaintiff asserts that the Report and Recommendation speaks for itself. See Plaintiff's SOF ¶43.**

54. By letter dated December 14, 2009, Dr. Brandner and Dr. Sharpe were notified of the COP Hearing Panel's Report and Recommendation and that either party had a right to initiate an appeal to the AAOS Judiciary Committee. (Young Aff. ¶ 67; December 14, 2009 letter, Young Aff. Ex. 28.) The AAOS also provided Dr. Brandner with a copy of the COP Hearing Panel's Report and Recommendation and transcript of the hearing. (Young Aff. ¶ 68.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

**F.      Proceedings Before the AAOS Judiciary Committee**

55. Dr. Brandner exercised his right to appeal the written recommendations of COP Hearing Panel to the AAOS Judiciary Committee. (Young Aff. ¶ 69.) The AAOS notified the parties by letter dated January 4, 2010, that an appeals hearing would be placed on the appeal hearing calendars. The appeal hearing before the AAOS Judiciary Committee was later scheduled for March 12, 2010. The AAOS notified the parties of the hearing date by letter dated February 2, 2010. (Young Aff. ¶ 73; January 4, 2010 letter, Young Aff. Ex. 29.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

56. On February 24, 2010, through his legal counsel, Dr. Brandner submitted a written statement in support of his appeal. Dr. Brandner's written statement was accompanied by additional material that neither Dr. Sharpe nor Dr. Brandner had submitted prior to the COP Hearing. These materials were: (i) the email exchange from June/July 2009 in which Dr. Brandner requested hospital records from the underlying malpractice case from counsel for the plaintiff; (ii) the patient's June 8, 2005 deposition transcript; (iii) the mother of the patient's June 8, 2005 deposition transcript;

(iv) the April 28, 2008 trial testimony of the patient; and (v) the April 29, 2008 trial testimony of the patient's mother. (Young Aff. ¶ 74; February 24, 2010 Submission from Dr. Brandner, Young Aff. Ex. 31.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

57. The AAOS Grievance Procedures provide that no new evidence or information shall be presented to the Judiciary Committee. (Young Aff. ¶ 76; Grievance Procedures, Young Aff. Ex. 5, at Section VII (E).) Although the additional material submitted by Dr. Brandner with his written appeal was "new evidence" in that it had not been supplied to the COP Hearing Panel, the AAOS allowed the Judiciary Committee to consider the material. The AAOS concluded that this departure from the Grievance Procedures was appropriate in light of Dr. Brandner's assertion that he had tried, unsuccessfully, to obtain the materials from the patient's attorney in the underlying malpractice action. Dr. Sharpe, through his attorney, stated that he had no objection to the Judiciary Committee reviewing and considering the new materials. (Young Aff. ¶ 76.)

**Plaintiff's Response: Plaintiff objects to this statement as being contrary to the evidence of the case. Plaintiff asserts that the Report and Recommendation speaks for itself. At no point does the Report and Recommendation include a finding that the "departure from the Grievance Procedures was appropriate in light of Dr. Brandner's assertion that he had tried, unsuccessfully, to obtain the materials from the patient's attorney in the underlying malpractice action."**

58. On March 12, 2010, the Judiciary Committee conducted the appeal hearing to review the grievance filed by Dr. Sharpe against Dr. Brandner. Both Dr. Brandner and Dr. Sharpe attended the hearing and were represented by legal counsel. During the course of the hearing, Dr. Brandner's attorney made a presentation on his behalf and argued that the COP Hearing Panel had erred in its Report and Recommendation. (Young Aff. at ¶ 77.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

59. Additionally, the members of the Judiciary Committee asked questions

of the parties to clarify their respective positions. Neither Dr. Brandner nor his attorney objected to the committee members' questions posed to Dr. Brandner. While the Grievance Procedures are silent on this topic, it has been standard practice for the members of the Judiciary Committee to ask clarifying questions of the parties in order to better understand their respective positions and supporting materials. (Young Aff. at ¶ 78.)

**Plaintiff's Response: Plaintiff objects to this statement as being contrary to the evidence. The AAOS Grievance Procedures specify the procedures to be followed. See Plaintiff's Exhibit 16 in support of Plaintiff's Statement of Facts. Moreover, Article II of the Professional Compliance Grievance Procedures provides: "These Professional Compliance Grievance Procedures are designed to supplement Article VIII of the Association Bylaws and to create a process that is transparent, expeditious, and equitable." Id. Accordingly, a violation of the Professional Compliance Grievance Procedures is a violation of the AAOS' bylaws. See Plaintiff's SOF ¶ 27, Exhibit 4, p.34, ll.4-24. The AAOS is unable to provide any support in its own Bylaws or Grievance Procedures which would allow it to depart from the standards it has adopted for itself. Indeed, Ms. Young testified that the AAOS is "obligated to follow the Professional Compliance Grievance Procedures." See Exhibit 4 to Plaintiff's Statement of Facts, p.34, ll. 15-18. In fact, Dr. Brandner's counsel attempted to voice an objection earlier in the hearing only to be told that the objections were not "part of this discussion." See Exhibit 35 to Plaintiff's Statement of Facts, pp.28-29, ll.22-5. Accordingly, Dr. Brandner's counsel was lead to believe that he was not permitted to make objections during the hearing.**

60. After considering the oral and written submissions by the parties, the Judiciary Committee issued its report on April 21, 2010 in which it (i) unanimously decided that the AAOS afforded both parties with due process; (ii) unanimously affirmed the COP Hearing Panel's finding that Dr. Brandner violated Mandatory Standard Nos. 3 and 4 of the SOPs on Orthopaedic Expert Witness Testimony; (iii) reversed by

majority vote the COP Hearing Panel's finding that Dr. Brandner had violated Mandatory Standard No. 7; (iv) unanimously affirmed the COP Hearing Panel's finding that Dr. Brandner did not violate Mandatory Standard Nos. 6 and 8; and (v) unanimously affirmed the COP Hearing Panel's recommendation that Dr. Brandner be suspended from the AAOS for one year. (Young Aff. at ¶ 79; Judiciary Committee Report and Recommendation, Young Aff. Ex. 33.)

> **Plaintiff's Response: Plaintiff objects to this statement as being contrary to the evidence of the case. Plaintiff asserts that the Report and Recommendation speaks for itself. <u>See</u> Exhibit 16 to Plaintiff's Statement of Facts.**

61. The AAOS Judiciary Committee recognized that the testimony of the patient and the patient's mother was conflicting on the issue of informed consent. The Judiciary Committee placed greater weight on the initial deposition testimony given by the patient and his mother due to the fact that it was closer in time to the date of the surgery and that the testimony was given before Dr. Sharpe was added as a defendant in the underlying malpractice action. (Craig Dep. At 116:9 – 125:5.)

> **Plaintiff's Response: Plaintiff does not object to this statement.**

62. The Judiciary Committee's findings with respect to Mandatory Standard Nos. 3 and 4, like those of the COP Hearing Panel, are based on Dr. Sharpe's allegation that Dr. Brandner's testimony in the underlying malpractice action regarding informed consent had been improper. The Judiciary Committee specifically acknowledged there was a discrepancy between the initial and second set of depositions of the patient and the patient's mother. However, the Judiciary Committee stated that it was not persuaded that the change in testimony given in the later depositions was evidence that Dr. Sharpe failed to inform the patient of the risk of peroneal nerve injury. The Judiciary Committee further stated as follows in its Report and Recommendation: "In Dr. Brandner's deposition of August 5, 2005, he specifically judged Dr. Sharpe to have fallen below the standard of care because certain key words were not present in Dr. Sharpe's notes to document informed consent. In doing so, Dr.

Brandner condemned Dr. Sharpe's performance by disregarding the generally accepted standard." (Young Aff. ¶¶ 80-81; Judiciary Committee Report and Recommendation, Young Aff. Ex. 33.)

**Plaintiff's Response: Plaintiff objects to this statement as being contrary to the evidence of the case. Plaintiff asserts that the Report and Recommendations of the COP Hearing Panel and the Judiciary speak for themselves. See Exhibit 16 and 36 to Plaintiff's Statement of Facts; see also Plaintiff's SOF ¶ 53.**

## G.    Proceedings Before the AAOS Board of Directors

63.    On April 21, 2010, the AAOS advised Dr. Sharpe and Dr. Brandner of the Judiciary Committee's recommendations and that the AAOS Board of Directors would make a final determination on the grievance at its next regularly scheduled meeting on June 18-19, 2010. Both parties were advised of their right to appear in person, with or without counsel, or to submit a written statement to the Board of Directors for consideration in lieu of an appearance. (Young Aff. ¶ 82; April 21, 2010 letter, Young Aff. Ex. 34.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

64.    On June 19, 2010, the AAOS Board of Directors met to consider Dr. Sharpe's grievance against Dr. Brandner. Representatives of the COP Hearing Panel and the Judiciary Committee gave remarks concerning the grievance, and a written statement by Dr. Sharpe was read into the record. Dr. Brandner and his legal counsel attended the meeting. Counsel for Dr. Brandner made a ten minute presentation on his behalf and Dr. Brandner supplemented his lawyer's presentation with his own oral statement. (Young Aff. ¶ 89; June 19, 2010 Board of Directors hearing transcript, Young Aff. Ex. 35.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

65.    At the close of the hearing, the AAOS Board of Directors met in closed executive session and voted unanimously to approve the recommendation of the Judiciary Committee. (Young Aff. ¶ 90.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

66. The AAOS Grievance Procedures applicable to grievances filed before September 13, 2008 authorized a representative from the COP Hearing Panel to attend the meeting of the Board of Directors and to make an oral presentation of the COP Hearing Panel's findings. The Grievance Procedures dated September 13, 2008 are applicable to Dr. Sharpe's grievance against Dr. Brandner and call for a representative of the Grievance Hearing Panel to be present in order to address any questions from the Board of Directors. The Grievance Procedures applicable to this grievance do not expressly authorize the representative of the COP Hearing Panel to make an oral presentation to the Board of Directors. (Young Aff. ¶ 91.)

> **Plaintiff's Response: Plaintiff objects to this statement. Defendant is unable to cite to any admissible evidence produced during the course of discovery to support this statement.**

67. In recognition of the fact that it had mistakenly allowed the representative of the COP Hearing Panel to make an oral presentation of the Hearing Panel's findings, the AAOS Board of Directors voted on September 25, 2010, to re-hear Dr. Sharpe's grievance against Dr. Brandner at its December 4, 2010 meeting. By letter dated September 29, 2010, the AAOS advised the parties of the decision, and further stated that the June 19, 2010 decision would be considered null and void, with the December 4, 2010 hearing to be conducted on a *de novo* basis. (Young Aff. ¶ 92; September 29, 2010 letter, Young Aff. Ex. 36.)

> **Plaintiff's Response: Plaintiff objects to this statement. Defendant is unable to cite to any admissible evidence produced during the course of discovery which would support this statement.**

68. At the December 4, 2010 hearing before the Board of Directors, a written statement from Dr. Sharpe was read into the record and a representative of the Judiciary Committee presented its Report and Recommendations. Dr. Brandner and his counsel attended the hearing and were again given the opportunity to make a ten

minute presentation. Consistent with the AAOS Grievance Procedures, a representative of the COP Hearing Panel was present at the meeting in the event that the Board of Directors had any questions regarding its findings. (Young Aff. ¶ 93; December 4, 2010 Board of Directors hearing transcript, Young Aff. Ex. 37.)

> **Plaintiff's Response: Plaintiff objects to this statement as being contrary to the evidence. In the letter advising that the Board had decided to re-hear the Sharpe/Brandner Grievance, the Board declared the prior decision to be "null and void." See Plaintiff's SOF ¶ 63. Moreover, the idea that a second hearing before the same members of the Board somehow cured the fact that the Board had previously heard and considered the improper arguments of the COP Hearing Panel member defies logic.**

69. On December 9, 2010, the AAOS notified Dr. Brandner that, after the December 4, 2010 hearing, the Board of Directors voted in closed session to suspend his membership in the AAOS for a one year period based on violations of the SOPs for Orthopaedic Expert Witness Testimony, Mandatory Standard Nos. 3 and 4. (Young Aff. ¶ 94.)

> **Plaintiff's Response: Plaintiff does not object to this statement.**

## H. Format of AAOS Grievances and Supporting Materials

70. AAOS Grievance Procedure VII(A)(1) provides that, "All grievances must be in the format required by the AAOS, containing specific allegations against a Fellow or Member and following HIPAA guidelines for de-identifying patient information unless otherwise exempted." (Grievance Procedures, Young Aff. Ex. 5 at VII(A)(1).) At the time Dr. Sharpe submitted his Grievance Report in October 2008, the AAOS did not require parties to de-identify patient information in those instances where a patient waived the HIPAA guidelines by filing a malpractice action. (Young Aff. ¶ 29.)

> **Plaintiff's Response: Plaintiff objects to this statement. Defendant is unable to cite to any admissible evidence produced during the course of discovery to support this statement.**

71. In or about December 2009, the AAOS revised its internal policy to require that all patient information be de-identified, regardless of whether the information had been subject to a malpractice action. (Young Aff. ¶ 29.) Both Dr. Brandner and Dr. Sharpe were advised of this change in procedure in correspondence dated December 30, 2009. (Young Aff. ¶ 29.) Dr. Sharpe subsequently resubmitted his supporting grievance materials after de-identifying all patient information. (Young Aff. ¶ 29.)

**Plaintiff's Response: Plaintiff objects to this statement. Defendant is unable to cite to any admissible evidence produced during the course of discovery to support this statement.**

## I. Plaintiff's Responses to Interrogatories

72. From 2008 through 2010, Dr. Brandner's total revenue from his orthopaedic practice was $614,794.00. From 2008 through 2010, Dr. Brandner's total revenue from his medical-legal support practice was $1,660,950.27. (Plaintiffs Answers to Defendants' First Set of Interrogatories, Answer to Interrogatory No. 6.)

**Plaintiff's Response: Plaintiff does not object to this statement.**

**Dated: December 13, 2011**

Respectfully Submitted,

Ryan F. Stephan, Esq.
STEPHAN ZOURAS, LLP
205 n. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
312-233-1550
www.stephanzouras.com

Aaron R. Maurice, Esq.
WOODS ERICKSON WHITAKER
& MARUICE LLP
1349 West Galleria Drive Suite 200
Henderson, Nevada 89014
www.woodserickson.com