# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

PATRICK J. BRANDNER, M.D.,       )
                                 )
                 Plaintiff,      )
                                 )
        -vs-                     )Case No. 10-cv-8161
                                 )
AMERICAN ACADEMY OF              )
ORTHOPAEDIC SURGEONS and         )
AMERICAN ASSOCIATION OF          )
ORTHOPAEDIC SURGEONS,            )
                                 )
                 Defendants.     )


The videotaped deposition of MELISSA A. YOUNG, called for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of videotaped depositions, before ANDREW ROBERT PITTS, C.S.R. No. 84-4575, a Certified Shorthand Reporter within and for the County of Cook, State of Illinois, at 205 North Michigan Avenue, Suite 2560, Chicago, Illinois, on the 21st day of September, A.D. 2011, at 10:16 a.m.

Page 2

PRESENT:

WOODS ERICKSON WHITAKER & MAURICE LLP,

1349 West Galleria Drive, Suite 200,

Henderson, Nevada 89014-6653,

702-433-9696, by:

MR. AARON R. MAURICE,

appeared on behalf of the Plaintiff;

VEDDER PRICE,

222 North LaSalle Street, Suite 2600,

Chicago, Illinois 60601,

312-609-7790, by:

MR. MICHAEL A. CHABRAJA,

appeared on behalf of the Defendants.

ALSO PRESENT:

MR. MARC BUHMANN,

Legal Videographer.

REPORTED BY: ANDREW R. PITTS,

C.S.R. No. 84-4575.

---

Page 4

EXHIBITS CONTINUED

| BINDER | | PAGE |
|---|---|---|
| Tab 15 | AAOS Grievance Hearing Report Brandner 00767-00776 | 134 |
| Tab 16 | Letter from Woods Erickson 12/29/09, Brandner 00233-00242 | 135 |
| Tab 17 | Letter from Ms. Giulietti 2/1/10, Brandner 00245-00246 | 145 |
| Tab 18 | Letter from Crawford & Kline to Mr. Peterson, 2/19/10 Brandner 00572-00577 | 146 |
| Tab 19 | AAOS Judiciary Committee Hearing transcript 3/12/10 Brandner 00578-00596 | 153 |
| Tab 20 | AAOS Judiciary Committee report and recommendation Brandner 00606-00614 | 170 |
| Tab 23 | Letter from Dr. Callaghan 6/28/10, Brandner 00633 | 197 |
| Tab 24 | Letter to Mr. Aaron from Mr. Peterson 7/8/10 Brandner 00638-00640 | 200 |
| Tab 25 | Letter to Mr. Maurice from Ms. Hackett, 7/30/10 Brandner 00641 | 201 |
| Tab 29 | Letter from Dr. Callaghan 12/9/10, Brandner 00694 | |
| Tab 30 | Letter from Woods Erickson 12/15/10, Brandner 00695-00700 | 212 |

---

Page 3

INDEX

| MELISSA YOUNG | EXAMINATION |
|---|---|
| BY MR. MAURICE | 7 |

EXHIBITS

| BINDER | | PAGE |
|---|---|---|
| Tab 1 | AAOS bylaws 3/12/10 Brandner 00004-00030 | 31 |
| Tab 2 | AAOS bylaws incorporated 2/13/98, Brandner 00702-00745 | 32 |
| Tab 3 | AAOS Professional Compliance Program Grievance Procedures Brandner 00746-00763 | 33 |
| Tab 4 | AAOS Standards of Professionalism Brandner 00001-00003 | 57 |
| Tab 5 | AAOS Standards amended 4/18/05, Brandner 00003 00764 and 00766 | 58 |
| Tab 51 | Report of BOC/BOS, 10/18/09 AAOS_B0039300-B0039306 | 61 |
| Tab 52 | Proposed Revisions AAOS_B0029294-B0029299, AAOS_B0005877, AAOS_B0027837, AAOS_B0027970 | 64 |
| Tab 8 | AAOS Professional Compliance Program Grievance Report Brandner 00114-00118 | 77 |
| Tab 11 | Letter from Dr. Sharpe | 120 |

---

Page 5

EXHIBITS CONTINUED

| BINDER | | PAGE |
|---|---|---|
| Tab 31 | Letter from Mr. Peterson 12/17/10, Brandner 00701 | 213 |
| Tab 32 | Article AAOS Now 2/09 issue | 222 |
| Tab 33 | Article AAOS Now 5/09 issue | 223 |
| Tab 35 | Affidavit of Ms. Young | 230 |
| Tab 12 | AAOS letter 5/26/09 Brandner 00127-00128 | 244 |
| Tab 37 | E-mail from Dr. Mandell 1/2/09, AAOS_B0038818-B0038819 | 261 |
| Tab 38 | E-mail from Dr. Strain 1/2/09, AAOS_B0038825-B0038826 | 262 |
| Tab 39 | E-mail from Dr. Martin 1/2/09, AAOS_B0038827-B0038828 | |
| Tab 41 | E-mail from Dr. Butler 1/2/09, AAOS_B0038834-B0038834 | 264 |
| Tab 42 | E-mail from Dr. Mandell 2/4/09, AAOS_B0038837-B38839 | 268 |
| Tab 45 | E-mail from Ms. Giulietti 1/5/09, AAOS_B0038858-B0038860 | 270 |
| Tab 36 | E-mails AAOS_B0038906-B0038924 | 271 |
| Tab 49 | E-mail from Dr. Schmidt 4/19/10, AAOS_B0039117 | 273 |

---

2 (Pages 2 to 5)

Page 6

THE VIDEOGRAPHER: Good morning. I am Mark Buhmann, your videographer, and I represent Atkinson-Baker, Incorporated of Glendale, California. I'm not financially interested in this action, nor am I a relative or employee of any attorney of any of the parties. The date today is September 21st, 2011 and the time is 10:16 a.m.

This deposition is taking place at 205 North Michigan Avenue, Suite 2560 in Chicago, Illinois. This is Case No. 10-CV-8161 entitled Patrick J. Brandner, M.D. versus American Academy of Orthopaedic Surgeons, et al. The Deponent is Melissa Young, and this deposition is being taken on behalf of the Plaintiff. The court reporter is Andrew Pitts with Reporters Direct.

And will counsel please introduce themselves for the record.

MR. MAURICE: Aaron Maurice, on behalf of the Plaintiff.

MR. CHABRAJA: Mike Chabraja, on behalf of the Defendants.

THE VIDEOGRAPHER: Will the court reporter please swear in the witness.

Page 7

(WHEREUPON, the witness was duly sworn.)

MELISSA A. YOUNG, called as a witness herein, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. MAURICE:

Q. Would you please state and spell your name for the record, please.

A. Melissa Young; M-E-L-I-S-S-A, Y-O-U-N-G.

Q. Ms. Young, have you ever had your deposition taken before?

A. No.

Q. Okay. Let me go over some of the -- some of the ground rules then to make sure we're all on the same page. The oath which you just took, the same oath as you take in a court of law, carries with it the same obligation to tell the truth, the same penalty for violating that oath.

Do you understand that?

A. Yes.

Q. The court reporter to my left, to your

Page 8

right, is going take down everything that's said in this room and ultimately prepare a transcript of these proceedings. Accordingly, to maintain a -- to make sure we have a clear record, it's important we follow some special rules.

The first rule is all responses must be audible. Nods of the head, shrugs of the shoulders, things which out in the hallway I would take as a response to my question do not appear on the record. So if I -- if I see you use one of these non-audible responses, I will say is that a "yes," is that a "no." I'm not trying to be rude; I'm just trying to clarify it for the record.

Do you understand that?

A. I do.

Q. Okay. With that said, certain audible responses nonetheless do not appear well on the record. "Uh-huh" and "huh-uh" do not appear well on the record. Mr. Chabraja and I will find ourselves on the eve of trial calling each other up late at night trying to figure out was Melissa saying "yes," was she saying "no," and that's not what Mr. Chabraja and I want to be doing on the eve of trial.

Page 9

So if I hear you use one of these generic responses, I will say is that a "yes," is that a "no." Again, not trying to be rude, just trying to clarify it for the record.

Do you understand that?

A. I do.

Q. In everyday conversation, it's very -- it's customary for the person who is responding to a question to volunteer the answer when the person asking the question's about three fourths of the way done with the question. It allows our society to move along a little faster. You don't need to wait to hear the end of the question before you volunteer the answer.

That's great if you're on the street and somebody's asking you for directions to Wrigley Field; that is not good in a deposition, because you get a choppy transcript where you actually see the answer in the middle of the question, and that's not good for anybody.

I'm going to do everything in my power today to wait until you are done answering my question questions before I ask you another question. I just ask that you do everything in

Electronically signed by Andrew Pitts (301-227-854-1687)

6f9c7095-1a0e-4c10-b96b-e7d970df9945

CRAIG

pointed out in his grievance letter in reply that 01:57:10
the patient and his mother had not surprisingly 01:57:11
changed their prior deposition testimony related 01:57:14
to the informed consent issues after Dr. Brandner 01:57:16
agreed to be their expert against Dr. Sharp. The 01:57:25
point is Dr. Brandner never should have agreed to 01:57:26
be an expert or offer the opinions he did." Do 01:57:26
you see that? 01:57:30

A.  Yes. 01:57:30

Q.  Who is it who decides what information 01:57:31
makes it into the judiciary committee's report and 01:57:33
recommendation? 01:57:41

A.  That's a great question. I have no 01:57:41
idea. 01:57:43

Q.  So you're not the one that drafts it? 01:57:43

A.  No. 01:57:45

Q.  Do you think any of the other doctors 01:57:45
who are on the committee draft it? 01:57:47

A.  I don't know whether the chair drafts it 01:57:49
or not but I'm not sure. 01:57:51

Q.  Do you get an opportunity to review it 01:57:54
in a draft form before it's finalized? 01:57:57

A.  Yes. 01:58:00

Q.  Have there been occasions where you've 01:58:00

Page 166

CRAIG

made changes to a report and recommendation in a 01:58:03
draft form before you've signed it? 01:58:06

A.  Rarely. 01:58:08

Q.  And those changes, do they tend to be 01:58:09
substantive on those rare occasions or do they 01:58:11
tend to be spelling and that kind of thing? 01:58:15

A.  They tend more to not be substantive I 01:58:19
would say. 01:58:22

Q.  Do you remember requesting any revisions 01:58:23
in the Brandner/Sharp grievance? 01:58:25

A.  I don't. 01:58:27

Q.  So it's possible you may have requested 01:58:28
some but you just don't recall? 01:58:33

A.  It's possible. 01:58:34

Q.  If you can turn to the next page which 01:58:35
is Brandner 00609 still in Exhibit 21, the next 01:58:39
bullet point says, "Dr. Brandner agreed to act as 01:58:44
an expert witness in October 2004 and at that time 01:58:46
only the January 29, 2004, depositions in which 01:58:50
both patient and his mother confirmed that 01:58:54
Dr. Sharp discussed foot drop were available to 01:58:57
Dr. Brandner for review." Do you see that? 01:59:01

A.  Yes. 01:59:03

Q.  Again this is coming back to Bruce 01:59:03

Page 167

CRAIG

Crawford's theme which is Dr. Brandner never 01:59:05
should have agreed to testify as an expert in the 01:59:07
first place. 01:59:10

A.  Yes. 01:59:10

Q.  It's two sentences. Is it still your 01:59:11
testimony that that was not something that played 01:59:13
a role in your decision with respect to the 01:59:15
Brandner/Sharp grievance? 01:59:20

A.  You know, I just can't remember how much 01:59:21
of a role, if any, it played. 01:59:24

Q.  So it might have played a role, you just 01:59:26
don't -- as you sit here today you can't think 01:59:26
back and recall? 01:59:30

A.  I cannot recall. Sorry. 01:59:30

Q.  And then we get down to the last bullet 01:59:31
point on the page and again we see another 01:59:35
statement to that affect, quote, the point of the 01:59:36
grievance from day 1 by Dr. Sharp has been based 01:59:38
on the information available Dr. Brandner should 01:59:41
not have agreed to give expert testimony, 01:59:43
opinions, critical of Dr. Sharp in any way, shape 01:59:47
or form. Do you see that? 01:59:49

A.  I do. 01:59:50

Q.  Do you recall in the discussions you had 01:59:51

Page 168

CRAIG

with your other committee members anybody saying 01:59:54
kind of echoing these sentiments? 01:59:58

A.  You know, I really don't. And I don't. 02:00:03
I mean, it's a long time and after you read so 02:00:10
much it's a little bit hard to remember what 02:00:15
actually was discussed at the time or not. 02:00:17

Q.  Do you recall anybody saying that that 02:00:20
second set of transcripts was irrelevant because 02:00:22
the whole point was he never should have testified 02:00:25
as an expert in the first place and those 02:00:27
transcripts weren't even in existence then? 02:00:29

A.  I don't. 02:00:31

Q.  I'm just trying to figure out -- I have 02:00:33
a feeling whoever put this report together heard 02:00:35
these deliberations and I see this statement over 02:00:40
and over through this report so I'm trying to 02:00:42
figure out if it was discussed. I apologize if I 02:00:44
seem like I'm beating a dead horse. 02:00:48

If you go to the next page Brandner 02:00:50
00610, second bullet point down, "Dr. Sharp 02:00:58
submitted all of the depositions relevant to his 02:01:01
grievance which were limited to those that 02:01:04
Dr. Brandner had available prior to agreeing to 02:01:07
testify." Do you see that? 02:01:10

Page 169

Atkinson-Baker, Inc. Court Reporters    (800) 288-3376

43 (Pages 166 to 169)

CRAIG

A.  I do.                                                    02:01:11

Q.   Do you recall any discussion of that,                   02:01:12
that Dr. Sharp's submission of only the January              02:01:14
2004 depositions was appropriate because the real           02:01:17
issue was what Dr. Brandner had to review when              02:01:21
agreeing to be an expert in October of '04?                  02:01:25

A.  I don't really specifically recall that,              02:01:28
yeah.                                                        02:01:31

Q.   Now, page Brandner 00612 center of the                  02:01:37
page it says, "in clarification of the records               02:01:45
available to and reviewed by Dr. Brandner prior to          02:01:47
his agreement to be an expert witness,                       02:01:50
Mr. Crawford stated, quote, Dr. Brandner agreed to          02:01:53
be an expert witness involving Dr. Sharp in                  02:01:56
approximately October of 2004 and that is why               02:02:00
Dr. Sharp was brought into the case as a defendant          02:02:03
several months later before the second depositions          02:02:05
where they changed their testimony." Do you see             02:02:09
that?                                                        02:02:12

A.  I do.                                                    02:02:13

Q.   And then the next one down said,                        02:02:13
"Mr. Morris reported that the second set of                  02:02:14
depositions was not taken until June 8 of 2005."            02:02:17
Do you see that?                                             02:02:20

Page 170

CRAIG

A.  Correct, yes.                                            02:02:21

Q.   Okay. That's the exact same issue.                      02:02:22
Still that doesn't refresh your recollection as to          02:02:24
what weight was given in those deliberations to             02:02:26
that fact?                                                   02:02:30

A.  It really doesn't but the fact that it                02:02:31
is discussed in the summary if this is honest it          02:02:35
certainly was spoken about at the time and I just         02:02:40
don't recall the weight, by whom and what kind of        02:02:42
weight.                                                   02:02:45

Q.   Is that generally your experience, that             02:02:45
the points that are referenced in the report and           02:02:47
recommendation are points that were at least               02:02:51
discussed at some point during the deliberations?          02:02:54

A.  Yes.                                                    02:02:56

Q.   I have a feeling when I depose the folks             02:02:57
with the AAOS in Chicago, the actual people in the          02:03:05
organization that I'm going to find out who                 02:03:05
actually drafts these and I have a feeling it's             02:03:07
probably going to be somebody with the AAOS who's           02:03:11
present for these deliberations. When you and --            02:03:13
when the judiciary committee is having these                02:03:17
deliberations, who else is present from the AAOS            02:03:19
generally speaking?                                          02:03:22

Page 171

CRAIG

A.  Ms. Giulietti, at least one of the                    02:03:23
counsels from AAOS Rick Peterson, sometimes I also        02:03:36
think outside counsel Mr. Pelton frequently is           02:03:43
there and I think that's it more often than not.         02:03:53

Q.   And generally speaking does                             02:03:57
Ms. Giulietti play a role in the discussions that           02:04:02
occur during those deliberations?                           02:04:04

A.  No.                                                      02:04:06

Q.   What about general counsel? In other                    02:04:06
words, Ms. Young, people that actually work at the          02:04:11
AAOS.                                                       02:04:14

A.  No, no. I think they're very careful to              02:04:15
stay out of it.                                           02:04:18

Q.   Basically is it your impression that                    02:04:19
they're there in case you have questions?                   02:04:21

A.  Yes.                                                    02:04:23

Q.   Is Ms. Giulietti, do you notice is                      02:04:23
Ms. Giulietti notes during these discussions?               02:04:27

A.  I have not as a matter of fact.                        02:04:28

Q.   I'll talk to her in a couple of weeks.                  02:04:30
The discussion and summary which starts             02:04:32
at the bottom of the page Brandner 00612 under             02:04:48
point number 1 you see this is dealing with the            02:04:51
due process arguments that are made by my office.          02:04:55

Page 172

CRAIG

Do you see that?                                             02:04:59

A.  Yes.                                                    02:04:59

Q.   Third to the last line there's a                        02:05:00
sentence that starts with furthermore. Do you see          02:05:03
that?                                                       02:05:05

A.  Yes.                                                    02:05:05

Q.   Says "furthermore, the judiciary                        02:05:06
committee acknowledged that there were materials,          02:05:09
specifically a second section of depositions of            02:05:12
the plaintiff and his mother that were not                 02:05:14
submitted by the grievant. These documents have            02:05:16
been reviewed by the judiciary committee and found         02:05:19
to be irrelevant as they do not remove the basis           02:05:22
for the findings by the committee on                       02:05:25
professionalism." Do you see that?                         02:05:29

A.  I do.                                                    02:05:30

Q.   Okay. But now, when we drop down under                  02:05:34
subsection 2, looks like about the fifth line down         02:05:38
we have that sentence that is, "moreover, the              02:05:41
question of whether a violation of the standards           02:05:43
of professionalism exists is not that he chose to          02:05:46
base his opinion on contradictory evidence from            02:05:50
the patient and treating physician but the fact            02:05:54
that he chose one version of the plaintiffs'               02:05:57

Page 173