# Exhibit 16

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

███████ husband and wife, and ███, a minor, ███, a minor,

        Plaintiffs,

   vs.

KIPLING P. SHARPE, M.D., and JANE DOE SHARPE, husband and wife, et al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

April 29, 2008
Phoenix, Arizona

BEFORE THE HONORABLE: MICHAEL JONES, Judge

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Testimony of Patrick Brandner, M.D.

Lisa H. Vitoff
Certified Court Reporter
CCR #50251

TESTIMONY OF DR. BRANDNER

A P P E A R A N C E S


FOR THE PLAINTIFFS:
        KOELLER, NEBEKER, CARLSON & HALUCK, LLP
        by Mr. Wade R. Causey

FOR THE DEFENDANTS
        CRAWFORD & KLINE, PLC
        by Mr. Bruce D. Crawford


P R O C E E D I N G S


PATRICK BRANDNER, M.D.,

having been duly sworn herein, took the stand and testified

as follows:


THE COURT: Doctor, thank you. If you will go

ahead, have a seat on our witness stand, please.

Now we're on the record. The record will show

the presence of all the members of our jury, counsel, the

parties as well, and we have Dr. Brandner called out of

order by the plaintiff, Mr. Causey.

Go right away.

MR. CAUSEY: Thank you for that.


TESTIMONY OF DR. BRANDNER

It's suddenly now reached the point where it's approaching every other procedure that we do that's predictable, and it's being more and more accepted.

When you have a surgery around an area that has a greater risk of injury over the vascular injury or other things that we mentioned, I felt that it had to be talked about because there's a greater chance that that is the thing that's going to happen.

And the peroneal nerve, in this type of osteotomy, has a three to 13 percent incidents of damage, not because of the surgeon, but because of the way God made the peroneal nerve.

So it's got a three to 13 percent incidents of damage, and I felt like that should have been discussed specifically, because many people get so much information from a sophisticated -- the subject, that they can't really remember everything. So it's important that they remember the thing that could -- has the greatest chance of happening.

So I felt like that needed to be discussed and I didn't see that in the medical records themselves.

Q    Doctor, are you here to render any opinions as to whether or not these conversations or communications in fact took place?

A    No.  I just didn't see it stated in the medical

TESTIMONY OF DR. BRANDNER

records I reviewed.

Q    Your opinion, with respect to the discussions that are needed regarding the risk of damage to the specific nerve in this case, how would that be described? What are we talking about?

A    Well, you're talking about a nerve that supplies the muscles to the front of your leg and controls the top of your foot and the top of your toes. It also controls the sensation to your foot.

So what you want to tell an individual is that that nerve can be injured and it's unavoidable. Sometimes we don't know why it gets injured, but there is a three to 13 or 15 percent chance that this thing can be injured.

So, we want you to understand that, if you're going to decide to have this straightened out -- and I think you write down the name of the nerve, which won't mean much, but they can understand paralysis of your foot, where you can't bring the foot up and they can understand loss of sensation to the top of the foot and they can understand you might need to wear a brace for the rest of your life which can fit in your shoe and you walk with it, but -- and you wear a brace if that happens.

Now, that's a lot of information. And there has been some criticism of physicians that say, well, you should have mentioned this. And the answer is, well, it

TESTIMONY OF DR. BRANDNER

could happen. It could have nerve damage. And he said all the things. He even mentioned death. The dash dash dash we had an anesthesiologist and there could be accidents and stuff. There were a lot of things.

Q  Let me show you Page 99 and 100 of Mrs. ███ s prior deposition.

Question: One thing I forgot -- I swear to you it was here and I forgot to ask -- is there any doubt in your mind that the nerve injury occurred during Dr. Sharpe's surgery?

There's an objection.

The witness:  I think it happened because the leg had to be re-broken, and I think that it happened because it -- everything had to be moved around.

Question:  Did you talk to Dr. Sharpe about that?

Answer:  He had warned us prior to that, you know, movement of that bone, when he had to put it back in place could cause various things. And he went through a list of many things.

Have you ever been aware of that testimony?

A  I believe so. I can't recall exactly, but again, it's -- the reason I'm saying I can't recall is because it strikes me, as this lady, knowing a list or a laundry list of things, and not specifically addressing --

TESTIMONY OF DR. BRANDNER

it looks like she's talking about things that happened after the surgery and she understands it and she mentions it. But she doesn't specifically define that she knew the nerve could be stretched, before.

Q    I see. By any chance, have you discussed that testimony with Mr. Causey recently?

A    No.

Q    How about the stuff that got faxed up to you out of the blue four days a ago?

A    No, I did not.

Q    Do you agree with me, sir, that a doctor, when he sees a patient, he goes through lots of things, there is lots of things discussed.

Then when that visit is over, he prepares a note which, generally speaking, is a summary of the meeting?

A    Yes.

Q    And you do not expect a doctor to do a verbatim transcript of every single thing that is said during that meeting with a patient, do you, sir?

A    No.

Q    It's -- a note is supposed to be a summary?

A    Correct, a salient summary.

Q    In fact, if you, as doctors, tried to dictate a verbatim transcript of everything that was discussed with the patient during a visit, you wouldn't see very many

TESTIMONY OF DR. BRANDNER